IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | Criminal No. 4:22-cr-199<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL OF PRETRIAL RELEASE CONDITION |

Defendant Bradley Wendt appeals a condition of pretrial release that prohibits his possession of firearms and other dangerous weapons. Wendt asks the Court to remove the condition entirely or allow him to at least possess weapons in some circumstances. The Court should deny Wendt's appeal.

### BACKGROUND

Wendt is charged in a twenty-count indictment with conspiring to defraud the ATF, making false statements to the ATF, and unlawfully possessing a machine gun. *See* Indictment (Dkt. 2). Those charges stem from Wendt's yearslong abuse of his position as the Adair Chief of Police to obtain and possess fully automatic machine guns not available to the public. Indictment ¶ 3. By making false statements to the ATF, Wendt obtained dozens of machine guns and facilitated the transfer of dozens more, including for his friends and individuals in Florida, Alabama, and Nevada. *Id.* at ¶¶ 4-5, 22, 27-29, 41-42. Wendt has sold numerous machine guns that purportedly belonged to the Adair Police Department, he has let members of the public shoot machine guns in exchange for money, and he intended to later sell more machine guns at a significant personal profit. *Id.* at ¶ 4. By abusing his position as the Adair

1

Chief of Police, Wendt has personally profited tens of thousands of dollars through his scheme to unlawfully obtain and transfer machine guns. *Id.* at ¶¶ 27-28.

On January 5, 2023, Wendt and his codefendant Robert Williams appeared for their initial appearance and arraignment. (Dkt. 14, 21.) The government did not seek to have either defendant detained pending trial and asked that they be released on conditions. (Dkt. 18, 24.) Chief Magistrate Judge Helen Adams ordered the defendants released subject to various conditions. (Dkt. 19, 25.)

One of those conditions, which was imposed on each defendant and is often imposed in this district, requires that they "refrain from possessing a firearm, ammunition, destructive device, or other dangerous weapons." (Dkt. 19 at 2.) Wendt objected to this condition citing, among other things, the vastness of his personal firearms collection and his desire to go on an international hunting trip in late January.[1] Judge Adams overruled Wendt's objection, noting this is a standard condition in this district and citing the safety of the Probation Officers charged with supervising defendants on pretrial release. Judge Adams did, however, briefly stay the condition to allow Wendt to appeal it. (Dkt. 19 at 3.)

On January 6, 2023, Wendt filed an Emergency Appeal of Pretrial Release Condition, which asks the Court to remove the weapons condition in its entirety. (Dkt. 28 at 1-4.) Alternatively, Wendt asks the Court for various modifications of the

---

[1] At the hearing, Wendt indicated that he may go on the hunting trip even if he is not permitted to possess firearms, suggesting that he could perhaps hunt with a bow. Judge Adams correctly noted that the condition at issue extends to all "dangerous weapons." (Dkt. 19 at 2.)

condition. (*Id.* at 4-5.) The Court scheduled a hearing on the appeal for January 10 and directed the government to file a written response by January 9. (Dkt. 29.)

## LEGAL STANDARD

If the Court deems them necessary to assure the defendant's appearance or the safety of the community, the Court may impose a variety of release conditions. *See* 18 U.S.C. § 3142(c)(1). Among the enumerated conditions is a requirement that the defendant "refrain from possessing a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B)(viii). The only limitation upon this or other conditions of release is that they be the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B).

In imposing conditions of release, 18 U.S.C. § 3142(g) requires the Court to take into account the available information concerning "(1) the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person; (3) the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

3

**ARGUMENT**

Wendt's appeal raises two arguments. First, he contends the weapons condition should be removed entirely. (Dkt. 28 at 3-4.) Alternatively, he asks that the condition be modified "to allow him to hunt, protect himself, and perform his duties as the Adair Police Chief." (*Id.* at 4.) The Court should not remove the condition, primarily because Wendt stands accused of twenty felonies that arise from a deeply dishonest abuse of his position and a flagrant disrespect for the laws regulating firearms. As for the proposed modifications, the government has no objection to Wendt possessing a service weapon if he resumes police work for the City of Adair, and he can seek a modification if that happens. The Court should deny Wendt's other requested modifications, which seem designed to appease Wendt's personal desires and are at conflict with the gravity of the charged offenses.

## I. The Court should not remove the weapons restriction.

Wendt contends the weapons condition should be removed because he is not a flight risk and does not pose a danger to "his community." (Dkt. 28 at 3.) The weapons restriction is not related to the risk of nonappearance. But the government does contend that Wendt's unfettered release—and particularly his ongoing possession of firearms—poses a danger to the community.

Wendt is a particularly irresponsible gun owner. He abused his position as a police officer to acquire dozens of fully automatic machine guns that he could not acquire or possess but for his police chief status. Wendt allowed members of the public to shoot those machine guns in exchange for money. Wendt helped his friends acquire

4

and sell machine guns by making false statements to the ATF. Wendt made tens of thousands of dollars by selling machine guns to far flung buyers and facilitating those transfers through false statements piled on top of false statements. In short, Wendt has spent years abusing a position of public trust and repeatedly lying to the very agency charged with regulating the transfer and possession of firearms.

Whistling past the graveyard, Wendt portrays himself as the trusted "protector of the community." (Dkt. 28 at 3.) Indeed, Wendt claims he is "so trust[ed]" by the community that he was reinstated as Police Chief even after the FBI "raid" (*i.e.*, the execution of judicially authorized search warrants). (*Id.*) Never mind, for a moment, that a town of 800 with a police force of two officers may have practical reasons to temporarily reinstate fifty percent of its manpower. More to the point, though, is Wendt's concession that he was later suspended without pay and remains on suspension. (*Id.*) While Wendt boastfully "expect[s] . . . to be reinstated," (*id.* at 4), the fact remains that he is now a suspended police officer. Notably, the government made clear at the arraignment that if Wendt returns to active police work, the government does not object to his possession of a service weapon while he is on duty. Thus, even if Wendt were reinstated, that would not justify the wholesale removal of the weapons condition at issue. *See United States v. Perez-Garcia*, No. 3:22-CR-01581-GPC, 2022 WL 4351967, at *7 (S.D. Cal. Sept. 18, 2022) (denying defendant's motion to modify weapons restriction but noting "the Court may reconsider whether he should be allowed to possess a firearm solely for the purpose of employment").

Relatedly, Wendt says he should be allowed to possess firearms because "law enforcement officers' safety is subject to increased risk due to the dangerous nature of their work." (Dkt. 28 at 4.) Again, the government has no objection to Wendt carrying a service weapon if he is performing official police duties for the City of Adair. Wendt may seek a modification of the condition if that happens.

Wendt also suggests he's in danger even when he's off-duty because of "increasing threats" to police officers and the "polarization among our citizens regarding the role of police in our communities."[2] (*Id.*) Wendt then invokes the Second Amendment, claiming "there is no reason he should be denied that right." (*Id.*)

Wendt's constitutional argument is misplaced. Wendt stands charged with twenty felony offenses. A grand jury found probable cause that he repeatedly lied to obtain machine guns under false pretenses and then sold or otherwise profited from those weapons. "As a person who has been charged with a crime based on a finding of probable cause, [Wendt] would not be considered a 'law-abiding' or responsible citizen, so he is outside the plain text of the Second Amendment." *Perez-Garcia*, 2022 WL 4351967, at *6 (rejecting constitutional challenge to pretrial release weapons condition). "Persons with criminal charges pending are routinely subject to significant restrictions on their constitutional rights once probable cause has been shown." *Id.* (collecting cases). "The restriction on [Wendt's] ability to possess a firearm while charges are pending against him is a temporary restriction that will be lifted if

---

[2] Wendt does not identify a single instance in which his physical safety was endangered—whether on or off-duty—because of the "polarization" about policing in society. *Cf. Perez-Garcia*, 2020 WL 4351967, at *7 (rejecting defendant's claim that he needed to possess a firearm to work as a security guard where claim was "premature and speculative").

the charges are resolved in his favor." *Id.* "Restrictions on pretrial release liberty, even those as severe as detention, are necessary regulatory measures that do not violate either the Constitution or the presumption of innocence." *Id.*

Wendt also claims, quite remarkably, that the charged offenses "have nothing to do with the improper or dangerous use of weapons." (Dkt. 28 at 3.) The charges have a lot to do with that. All firearms—and especially machine guns—are inherently dangerous. That's why machine guns are strictly regulated and generally unavailable to anyone other than law enforcement and the military. *See* 18 U.S.C. § 922(o). Wendt flagrantly disregarded the law by personally facilitating the transfer of machine guns to himself and others. Wendt allowed private citizens to handle and fire fully automatic weapons, including a belt-fed .50 caliber machine gun mounted to his personal Humvee. And he did these things seemingly for one reason: money.

When agents searched Wendt's residence in August 2022, this military grade machine gun was found laying on the floor of an unsecured outbuilding. *See* GX 1; GX 2. This flippant treatment of a machine gun is consistent with Wendt's charged conduct, which demonstrates a deep-seated disrespect for the law. Facebook messages from Wendt's account, for example, show the gleeful manner in which he abused his position for personal gain. *See* GX 3. Wendt bragged that he was "building [a] machine gun aresensal [sic]" and that his position as chief allowed him to "[s]end machine guns to my own gun store lol." *Id.* Wendt boasted about his ability to profit from this scheme, explaining he could buy a machine gun for $4,000 and sell it for $20,000. *Id.*

That Wendt would so brazenly exploit a position of trust to profit from the acquisition and sale of machine guns should give the Court great pause in deciding whether to authorize his continued possession of firearms. This is particularly true, as Judge Adams recognized, when the United States Probation Office will be interacting with Wendt and visiting his residence that is presently stockpiled with firearms. Tellingly, Wendt downplays the risk to the Probation Office while simultaneously invoking his own alleged fear of attack due to "polarization" about policing. (Dkt. 4.) "Pretrial Services Officers are required to visit with defendants at their home and workplace, and unfettered firearm access by defendants under supervision places them at risk of harm when doing so." *Perez-Garcia*, 2022 WL 4351967, at *3. The Court should not remove an otherwise typical weapons restriction simply because Wendt "has been a police officer for over twenty years." (Dkt. 28 at 4.) That is particularly true when he is charged with abusing that position to unlawfully obtain and transfer machine guns.

## II. The Court should not modify the weapons restriction at this time.

Alternatively, Wendt asks the Court to modify the restriction so he can "hunt, protect himself, and perform his duties as Adair Police Chief." (Dkt. 28 at 4.) Again, the government has no objection to Wendt possessing a service weapon while performing police duties for the City of Adair. If Wendt's suspension is lifted, he can seek a modification to allow that.

Wendt offers no persuasive reason for the other proposed modifications. At bottom, Wendt contends he should be treated differently because he has "served his

community not only as a police officer but the Police Chief." (Dkt. 28 at 5.) Wendt ignores, of course, that the Indictment alleges he betrayed the public's trust by using that very position to enrich himself through the acquisition and sale of machine guns. There may be cases where the charged offenses or the defendant's character would warrant a variance from this common weapons restriction. This is not it.

Wendt also asks the Court for special treatment because he "has a vault in his basement with a passcode." (Dkt. 28 at 5.) Wendt requests that he be allowed to retain his firearms provided they are secured in this residential vault with a passcode he does not know. (*Id.*) Considering the depths of Wendt's dishonesty and illegal arms dealing, even this proposal gives the government pause. The government would welcome the views of the Probation Office on this proposal, as its Officers will be responsible for enforcing the condition. Subject to considering the Probation Office's views, however, the government does not believe Wendt should receive special treatment simply because he happens to have a passcode-protected vault in his home. If the Court ultimately orders Wendt to remove all firearms in his possession, the Court should impose a specific deadline to aid the Probation Office in enforcing this condition.

Finally, Wendt demands that the restriction be modified to remove "other dangerous weapons" and ammunition. (Dkt. 28 at 5.) The former change is needed, we're told, so that Wendt can hunt with a bow and arrow. (*Id.*) The latter, meanwhile, should be allowed because "ammunition in and of itself does not pose a threat." (*Id.*) It's not clear why Wendt would need to possess ammunition if he is prohibited from

9

possessing firearms. Of course, the government has no objection to Wendt possessing ammunition for his service weapon if he is performing police work. Aside from that, there is no reason to remove ammunition from the restriction.[3] As for the bow and arrow and other untold "dangerous weapons," the government believes this is a nebulous road to go down but ultimately leaves it to the Court's discretion.

## CONCLUSION

The Court should deny Wendt's Emergency Appeal of Pretrial Release Condition and impose a specific deadline for Wendt's compliance with that condition.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:    /s/ *Ryan W. Leemkuil*
Mikaela J. Shotwell
Ryan W. Leemkuil
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Ryan.Leemkuil@usdoj.gov
       Mikaela.Shotwell@usdoj.gov

---

[3] Although Wendt doesn't say it, one reason he may want to remove ammunition from the condition is the sheer amount of ammunition he possesses at his residence. During the August 2022 search of Wendt's home, for example, agents found numerous pallets of .50 caliber ammunition. *See* GX 4 through 7. That it may be practically burdensome for Wendt to comply with a condition is not a persuasive reason to omit it.

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

____U.S. Mail _____ Fax _____Hand Delivery

  X  ECF/Electronic filing ___Other means

UNITED STATES ATTORNEY

By:  /s/ Ryan W. Leemkuil