IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. 4:22-cr-199 |
| v. | ) BRIEF IN SUPPORT OF |
| | ) GOVERNMENT'S MOTION |
| BRADLEY EUGENE WENDT, | ) FOR IN CAMERA REVIEW OF |
| | ) ADAIR CITY COUNCIL MEETING |
| Defendant. | ) RECORDINGS |

The government offers this brief in support of its motion for *in camera* review of audio recordings of closed session meetings of the Adair City Council to determine whether Defendant Bradley Wendt's statements during those meetings were compelled within the meaning of *Garrity v. New Jersey*, 385 U.S. 493 (1967).

## INTRODUCTION

During at least two closed session City Council meetings, Wendt spoke with City officials about his alleged misconduct at issue in this case. The government obtained audio recordings of those two closed session meetings via a grand jury subpoena. Wendt's counsel has suggested that the government's use of Wendt's statements during these meetings may be barred by *Garrity*, which prohibits the use of a public employee's compelled statements in a later criminal proceeding. Out of an abundance of caution, the government seeks the Court's ruling on this issue, which Wendt is likely to raise regarding other evidence obtained in this case.

Wendt's statements during these meetings were not compelled under *Garrity*. Those statements were not made under any direct threat of termination. "Being afforded an opportunity to present one's side is not the equivalent of being compelled

1

to speak." *United States v. Hutley*, No. 1:10-CR-127-MHS, 2010 WL 4223741, at *10 (N.D. Ga. Oct. 20, 2010). And any "subjective fears" Wendt may have had about remaining silent are not "sufficient to bring him within *Garrity*'s cloak of protection." *United States v. Indorato*, 628 F.2d 711, 716 (1st Cir. 1980). Because Wendt's statements were not compelled, *Garrity* does not bar their use in this case.

## BACKGROUND

On August 31, 2022, law enforcement executed several search warrants related to the investigation of Wendt. One of those warrants was executed at the Adair Police Department, which is in the same building as Adair City Hall. Coincidentally, the City Council happened to be meeting at City Hall while agents executed the search warrant at the Police Department and interviewed Wendt.

At some point that day, Wendt signed a document in which he "request[ed] a closed session with the Adair City Council regarding discussion on my employment." GX 1. Wendt did, in fact, address the City Council that day to discuss the Adair Police Department's acquisition and transfer of machine guns.[1] *See* GX 2 at 3.

Wendt was placed on paid administrative leave following the execution of the August 31 search warrants. GX 3 at 3; GX 4 at 1. On October 26, however, the City

---

[1] The government provides information about the August 31 events because they provide context for Wendt's later meetings with the City Council, including those captured in the recordings at issue. For example, the fact that Wendt expressly demanded an audience with the Council on August 31 may shed light on whether his statements at later meetings were "compelled" under *Garrity*. Although he has not directly done so, Wendt will presumably argue that his statements to the Council on August 31 are also protected by *Garrity*. The government disputes that, for largely the same reasons as the two meetings at issue in this motion. The government is aware of no authority for Wendt's seeming position that any statements a public employee makes after learning he is under investigation are automatically deemed "compelled" statements within the meaning of *Garrity*.

2

Council voted to reinstate Wendt as police chief, albeit "with purchasing restrictions." GX 3 at 3; GX 4.

On November 1, 2022, FBI Special Agent Kevin Kohler interviewed Adair Mayor Joanne Byars.[2] *See* GX 4. According to Mayor Byars, Wendt initiated the October 26 reinstatement vote by requesting that the City Council reinstate him. *Id.* at 1. The status of Wendt's employment was then discussed in closed session, with the Council ultimately voting to reinstate him. GX 3 at 3; GX 4 at 1.

Through this investigation, the government learned that Adair City Council meetings are generally documented in written minutes. Closed sessions, however, are audio recorded. In November 2022, the government issued a subpoena to the City of Adair requesting all minutes and recordings of City Council meetings from January 2018 to present, which would encompass the entirety of Wendt's employment.

In response to that subpoena, the City's attorney gave the government audio recordings of closed session Council meetings held on September 14, 2022, and October 26, 2022. The recordings of these meetings are identified as Government Exhibit 5 and 6, respectively, and will be provided to the Court for *in camera* review.

After receiving these recordings, the prosecution team reviewed them. Specifically, Special Agent Kohler listened to the recordings of both meetings.

---

[2] Exhibit 4 has been redacted to remove references to statements allegedly made by Wendt during the October 26 meeting. The government provides this redacted report to provide context for that meeting, specifically Mayor Byars' report that Wendt initiated the reinstatement vote by requesting that the Council reinstate him. That Wendt initiated this interaction, like he seemingly did when he demanded a meeting with the Council on August 31, seems to significantly undercut his position that his statements to the Council were compelled by threat of job loss and therefore protected by *Garrity*.

Assistant United States Attorney Ryan Leemkuil listened to the recording of the October 26 meeting only. No other member of the prosecution team has listened to either recording. Special Agent Kohler later prepared a report documenting his review of the recordings and their contents. No other member of the prosecution team has reviewed that report pending the Court's resolution of the issues raised in this motion.

During a January 10 hearing before Judge Locher, the government referenced one of the recordings at issue. After the hearing, Wendt's counsel sent the government a letter asserting that "any communications directly or indirectly with Mr. Wendt about the impact of the Government's investigation on his job as police chief, or that incorporate those communications, are protected by *Garrity*." GX 7 at 1. Accordingly, Wendt's counsel asked the government to secure the closed session recordings and not further review them "until the Court has had an opportunity to review them and rule on whether they are protected."[3] *Id.* The government has since segregated these

---

[3] To date, Wendt's counsel has not asked the Court to review these recordings. Wendt's counsel has, however, continued to assert an ever-expanding interpretation of *Garrity*, suggesting that *Garrity* may preclude the government's use of *any* information it obtained after August 31, 2022. *See* GX 8. Indeed, Wendt's counsel has demanded the government not use "any information" obtained after that date "[u]ntil these issues can be resolved by the Court." *Id.* Wendt's expansive view of *Garrity* continues to grow. *See* GX 9 (requesting the government agree to not review various "devices or accounts" belonging to Wendt and current or former city officials "until we can address it with the Court"). Most recently, Wendt's counsel has asserted that "*anything* from August 31, 2022 onward could contain *Garrity*-protected information" and therefore "*any* investigation conducted after [that date] could be tainted." GX 10 at 1 (emphases added). Wendt has demanded that the government effectively cease its work on this case until his counsel can "fully address" these amorphous claims. *Id.* at 2. The government has invited Wendt's counsel to provide legal authority to support this sweeping understanding of *Garrity*. GX 9. To date, none has been provided. Nor has Wendt sought relief from the Court on these matters. Until then, the government cannot meaningfully comply with Wendt's facially overbroad requests that the government not use "any information" it obtained after August 31 or cease reviewing unspecified "devices and accounts." The most recent correspondence from Wendt's counsel also raises grievances about the handling of discovery in this case. *See* GX 10. The government will address the status of discovery in a separate filing.

recordings, and Special Agent Kohler's report documenting them, from the rest of the discovery materials. Those materials are unavailable to the prosecuting attorneys pending the Court's resolution of this alleged *Garrity* issue.

## LEGAL STANDARD

"The Fifth Amendment privilege against self-incrimination extends to statements a government employee is compelled to make under threat of removal from public office." *United States v. Moten*, 551 F.3d 763, 766 (8th Cir. 2008) (citing *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967)). Thus, the "Amendment is violated when public employees are compelled to testify by employers who require the employees to either incriminate themselves or to forfeit their jobs." *Hill v. Johnson*, 160 F.3d 469, 471 (8th Cir. 1998).

A public employee's statement is compelled within the meaning of the Fifth Amendment if the statement is procured by threat of job loss. *Garrity*, 385 U.S. at 500. *Garrity* is not implicated, however, when there is no "threat that [the employee] will be fired simply for invoking" his Fifth Amendment privilege. *Diebold v. Civil Serv. Comm'n of St. Louis Cty.*, 611 F.2d 697, 701 (8th Cir. 1979); *see Hill*, 160 F.3d at 471 (holding Fifth Amendment not violated where employee "was neither forced to answer incriminating questions under threat of termination nor required to relinquish immunity from the use of his answers in criminal proceedings").

## ARGUMENT

Wendt's statements during these closed session meetings were not compelled within the meaning of *Garrity*. In *Garrity*, the defendant police officers were

5

questioned after each was warned that "if he refused to answer he would be subject to removal from office."[4] 385 U.S. at 494. It does not appear that any such warning was issued to Wendt prior to his statements in these meetings. Indeed, to the government's recollection, Wendt was simply given an opportunity to speak during the October 26 closed session meeting and chose to do so.[5]

The Eighth Circuit, like many courts, has taken a narrow view of what it means for a statement to be compelled under *Garrity*. In *Diebold*, for example, a public employee claimed that requiring his participation in an administrative hearing before the conclusion of a related criminal case violated the Fifth Amendment. The Court held that this scenario, while certainly "undesirable" for the employee, presented "an entirely different factual situation" than the compulsion present in *Garrity*. 611 F.2d at 701. The Court explained there was no "impermissible sanction" in *Diebold* because there was "no showing that Diebold must either answer questions which might incriminate him in future criminal proceedings or forfeit his job." *Id.*

Similarly, in *Hill*, a police officer sued when he was fired after refusing to answer questions or show up for a polygraph concerning his alleged misconduct. 160 F.3d at 470. The Eighth Circuit found no Fifth Amendment violation, because the officer "did not face the choice of either forfeiting his job or making a statement that could be used to prosecute him." *Id.* at 471.

---

[4] This warning was based on a New Jersey statute that provided that a public employee would be removed from office if he refused to answer questions based the privilege against self-incrimination. *Garrity*, 385 U.S. at 494 n.1. Iowa does not appear to have any comparable statute.

[5] As noted above, neither Assistant United States Attorney on this matter has listened to the recording of the September 14 meeting.

The same is true here. Wendt was not admonished that he must answer the Council's questions or be fired. "Clearly, to evoke a *Garrity* response, something more is required than an employer's persistent request that questioning ensue." *United States v. Najarian*, 915 F. Supp. 1460, 1478 (D. Minn. 1996). And it doesn't appear that these meetings involved even a persistent request to question Wendt. Rather, it appears Wendt was merely given—and perhaps even demanded—an opportunity to address the City Council regarding his alleged misconduct.

"Being afforded an opportunity to present one's side is not the equivalent of being compelled to speak." *United States v. Hutley*, No. 1:10-CR-127-MHS AJB, 2010 WL 4223741, at *10 (N.D. Ga. Aug. 27, 2010). And even if Wendt subjectively desired to explain his conduct to the Council, *Garrity* is not invoked "solely because a public employee is faced with the uncomfortable choice of attempting to explain his conduct or remain silent, thereby risking that the government employer might terminate or discipline him based on independent evidence of wrongdoing." *Id.* at *9; *see also United States v. Naggs*, No. 18-CR-130, 2020 WL 10458572, at *9 (E.D. Wis. June 1, 2020) ("'Compulsion' must mean more than that unpleasant consequences—perhaps even very unpleasant ones—might flow from one's exercise of the right to remain silent.") Put simply, the government is aware of no facts to support a finding that Wendt's statements during these meetings were compelled under *Garrity*.[6]

---

[6] If the Court believes additional facts are needed to resolve this issue, it may be appropriate to hold an evidentiary hearing.

7

## CONCLUSION

For these reasons, the Court should conduct an *in camera* review of the recordings at issue and determine that Wendt's statements in them were not compelled within the meaning of *Garrity*.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:   /s/  *Ryan W. Leemkuil*
Mikaela J. Shotwell
Ryan W. Leemkuil
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Ryan.Leemkuil@usdoj.gov
            Mikaela.Shotwell@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail  _____ Fax  _____Hand Delivery

  X  ECF/Electronic filing  ____Other means

UNITED STATES ATTORNEY

By:  */s/ Ryan W. Leemkuil*