IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | Case No: 4:22-cr-199<br><br>**DEFENDANT WENDT'S RESISTANCE TO GOVERNMENT'S MOTION FOR DISCOVERY AND PROTECTIVE ORDER** |

## I.  INTRODUCTION

Defendant Bradley Eugene Wendt ("Wendt") hereby resists the Government's Motion for Discovery and Protective Order. For the following reasons, Wendt requests that no such order be imposed at this time.

## II.  BACKGROUND

### A.  Timeline of Events

On August 31, 2022, the Government deployed dozens of agents and executed several search warrants and conducted numerous interviews in this case. Wendt immediately began seeking information from the Government. On December 14, 2022, after refusing to meet with Wendt, the Government charged him with what amounts to a false statement case. Defendants were summons into Court, and, on January 5, 2023 were arraigned. Prior to the arraignment, both Defendants filed Notices of Defendant's Rule 16 Discovery Request for discovery under Fed. R. Crim. P. 16(a)(1)(A) through (F). At the arraignment, the Court set a deadline of January 13, 2023 for the production of Rule 16 materials. In addition, on January 5, the Court issued the following Rule 5 Order:

> **Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to disclose to the defendant all exculpatory evidence-that is,**

1

> **evidence that favors the defendant or casts doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S.83 (1963) and its progeny, and ORDERS the United States to do so. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court.**

Prior to January 13, Wendt made it abundantly clear to the Government that he wanted copies of all Rule 16 materials.

Since the arraignment, the Government has continued to attempt to leverage Defendants into agreeing to the Stipulated Discovery and Protective Order ("SDPO"). While counsel for Wendt made clear that it was agreeable to a protective order, it raised issues with the standard order that the Government could not address. On January 25, 2023, by agreement of the parties, the Court entered an extensive Stipulated Protective Order in this case. Notably, that Stipulated Protective Order has all the protections and the same language as that which is typically entered in cases and that which the Government has included in its SDPO. Nonetheless, the Government has failed to produce copies of Rule 16 materials in a timely fashion let alone provide copies of other discovery materials.

### B. Government Admissions

The Government has admitted the following:

1. **The discovery in this case is voluminous.** This has been confirmed in email correspondence between the parties that Wendt will refrain from unnecessarily appending to this filing. We believe this point to be undisputed.

2. **The Government wants to provide copies of all the discovery, including materials beyond Rule 16.** *See* Govt's Mot. For Discovery And Protective Order, ¶ 12.

3. **The Government cannot discern what is required – not even what is required under Rule 16.** The Government failed to produce anything other than Wendt's interview and

2

his non-existing criminal history by the Rule 16 deadline. *See* Govt's Mot. For Discovery And Protective Order, ¶ 5. With respect to the rest of the Rule 16 materials, the Government told Wendt he would have to view them at the U.S. Attorney's Office. *Id*. Despite it not being the defendant's burden to identify what specific materials he is entitled to under Rule 16, Wendt made that effort in any event due to the Government's recalcitrance. While the Government finally produced more materials, the Government continued to complain that it cannot "discern" what materials are covered by Rule 16. *See* Govt's Mot. For Discovery And Protective Order, ¶ 10.

4. **The Government has no explanation for how the SDPO does not violate the Constitution**. Counsel for Wendt has raised some of the objections it has below with the Government as part of its discussions regarding discovery, including that the SDPO violates *Brady*. However, the Government had no explanation for why it does not. Wendt submits that it is incumbent on the Government to respond to the defendants' objection to the SDPO now.

5. **Nonetheless, the Government refuses to provide copies of discovery to the defense unless it agrees to the SDPO**. As explained below, the SDPO is unconstitutional and requires the defendant to waive several rights to discovery. However, the Government refuses to provide copies of discovery to Wendt unless he signs the SDPO. *See* Govt's Mot. For Discovery And Protective Order, ¶ 13. Indeed, the Government's explanation for the need for the SDPO is to "provide clarity and comfort to the parties and  . . . significantly reduce the litigation of future discovery matters." *Id*.

6. **The Court has authority to issue an order requiring the production of copies of all discovery**. The SDPO the Government submits to the Court requires the Government to

produce copies of materials beyond Rule 16 and states the Court has the authority to issue and enforce such an order. *See* Stipulated Discovery and Protective Order, ¶¶ 2, 13.

**III.   ARGUMENT**

    **A.   Scope of the Government's Discovery Obligations**

Wendt has a right to discovery in this case based on several sources. First, he has a right to discovery pursuant to the Federal Rules of Criminal Procedure and certain federal statutes. *See* Fed. R. Crim. P. 16, 26.2; 18 U.S.C. § 3500. Second, Wendt has certain Constitutional rights to discovery, including as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), for any information that could be exculpatory for the defendant or is in any way inconsistent with the Government's theory of the case; and *Giglio v. United States*, 405 U.S. 150 (1972), for any information that could be used to impeach a law enforcement officer or any other witness for the Government. Lastly, a prosecutor in the State of Iowa has an ethical duty to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense. . . ." Iowa R. Prof. Conduct 32:3.8. Importantly, these rights pertain to anything in the possession, custody, or control of not just the United States Attorney's Office but the entire ***prosecution team***, including but not limited to any law enforcement agency or task force that assisted the Government in this case. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). In sum, it is axiomatic that the Government's obligations to produce discovery in a criminal case are so broad that federal prosecutors are directed by the Department of Justice not only to produce essentially everything in possession, custody, or control of the prosecution team, but to do a thorough job reviewing a law enforcement agencies investigative files to ensure the prosecution team is meeting its obligations. *See* DOJ Justice Manual, 9-5.000.

It is the Government's burden to duty to determine what materials are subject to disclosure under its discovery obligations. *United States v. Mazzulla*, 932 F.3d 1091, 1100 (8th Cir. 2019). "[I]f the government fails to disclose relevant material, it acts at its own peril." *Id*. (internal quotations omitted). In short, "the duty to produce such material arises even if the defense request is non-specific or if there is no request at all." *United States v. Pou*, 953 F.2d 363, 366 (8th Cir. 1992) (quoting *United States v. Agurs*, 427 U.S. 97, 107 (1976)).

B.     **Objections to the Government's Proposed Discovery and Protective Order**

Wendt's objections to the Government's Proposed Discovery and Protective Order are as follows[1]:

1.     ***Government's Rule 16(a) Discovery and other Physical Evidence***. The problems with this paragraph include the following:

*First*, Rule 16(a) speaks for itself and there is no reason for the Government or the Court to try to rephrase it or summarize it. Only harm and confusion can come from doing so, which is certainly the case here.

*Second*, the Court already issued an order with a Rule 16 deadline and this paragraph contradicts that order by changing the date to "[u]pon execution and approval by the Court of this Order."

*Third*, this paragraph does not accurately track the Government's obligations under Rule 16(a). For example, it limits the scope of Rule 16 materials to those "gathered during the investigation." This is narrower than the stated scope of Rule 16, which is materials "within the government's possession, custody, or control."

---

[1] By identifying these objections Wendt in no way intends to waive other objections. Rather, the intention here is to provide a non-exhaustive, but sufficient, list of reasons why the Court should deny the Government's motion.

*Fourth*, Defendants are entitled to copies of this discovery. It is not up to the Government's discretion as to when or how those copies are provided. Nor is the cost provision relevant any longer as almost all discovery is provided electronically. In fact, the only reasonable modern interpretation of this obligation should be to provide electronic copies of all such materials by the Rule 16 deadline.

*Fifth*, for items that cannot be copied, the paragraph leaves out the ability of the defense to inspect and photograph items. Rather, it limits the defense's rights to simply reviewing them.

*Sixth*, it limits the rights to view Rule 16(a) materials to "Defendant's counsel" as opposed to the "defendant" as provided in Rule 16(a).

2. ***Government's Witness Statements/Information and Brady Material***. The problems with this paragraph include the following:

*First*, as a general matter, this paragraph purports to identify the Government's obligations with respect to providing witness statements and *Brady* materials but it both severely limits those rights as well as fails to mention related rights. By identifying only certain discovery rights and excluding related rights, the SDPO could be interpreted as limiting a defendant's rights to discovery. Ordinarily, specific terms prevail over general terms. *See, e.g.*, *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 341 (1805). Also, there is the interpretation principle of *ejusdem generis* "where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *Dole v. United Steelworkers of America*, 494 U.S. 26, 36 (1990). Similarly, under the principle of *noscitur a sociis*, "words grouped in a list should be given related meaning." *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 588 (1980). This is especially dangerous here because law enforcement agencies often come up with their own interpretations of discovery obligations and court orders

and have disputes with the U.S. Attorney's Office over discovery. If a law enforcement agency were to read the SDPO as limiting discovery in any way, then the U.S. Attorney's Office may never know the discovery existed. Regardless, counsel respectfully submits that any order identifying a subset of rights while purporting to be comprehensive in nature is dangerous and inadvisable.

*Second*, this paragraph violates *Brady*. First, in paragraph 3, the SDPO provides: "The Government will also provide copies of any *Brady* or Jencks Act materials (other than grand jury transcripts) *of which the United States Attorney's Office is aware and possesses*." SDPO, ¶ 3 (emphasis added). This is clearly less than the obligation the USAO has under *Brady*, which requires the office to seek all exculpatory and impeachment information from all members of the prosecution team (including federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution). *See Kyles v. Whitley*, 514 US 419, 437 (1995). In other words, the office has a duty to inquire of other prosecution team members and produce anything in their possession as well. Further, the Justice Manual underscores this interpretation and requires prosecutors to take a broad view of the requirement. *See* 9.5.001(B) & (C).

Then, in paragraph 10, the SDPO appears to carve out grand jury transcripts for production ten days before trial (or later based solely on the Government's discretion for "other reasons") – even if they happen to be *Brady* materials. *See* SDPO ¶ 10. But to the extent the grand jury transcripts constitute *Brady* materials, they would be required earlier and in time for the defendant to take advantage of them at trial. This may not just be cross-examination but could include the decision to subpoena a witness as well as other investigatory steps and trial preparation. Nowhere does the SDPO clarify that the defendant is not forgoing these other *Brady*

7

materials – *i.e.,* materials the United States Attorney's Office is not aware of and materials that it is aware of but does not possess.

*Third*, this paragraph violates *Giglio*. A defendant's rights are *Giglio* are broad and *Giglio* is the progeny of *Brady*. However, this paragraph completely leaves it out and subsequent paragraph that addressing *Giglio* is plainly deficient. As example of the complexities of *Giglio* information, the Court need look no further than the DOJ policy itself:

> The exact parameters of potential impeachment information are not easily determined. Potential impeachment information, however, has been generally defined as impeaching information which is material to the defense. *It also includes information that either casts a substantial doubt upon the accuracy of any evidence – including witness testimony – the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence.* This information may include but is not strictly limited to: (a) specific instances of conduct of a witness for the purpose of attacking the witness' credibility or character for truthfulness; (b) evidence in the form of opinion or reputation as to a witness' character for truthfulness; (c) prior inconsistent statement; and (d) information that may be used to suggest that a witness is biased.

DOJ Justice Manual, 9-5.100.

*Fourth*, this paragraph limits Jencks Act materials to what the Government is "aware of and possesses." It also fails to mention Fed. R. Crim. P. 26.2 which applies these rights to proceedings other than trial. Yet, ironically, the SDPO calls out both the Jencks Act and Rule 26.2 with respect to a defendant's reciprocal obligations.

*Fifth*, this paragraph violates the Court's Rule 5 Order both with respect to scope and timing. It articles a scope far less than the Court's Rule 5 Order. It also states that additional materials will be provided when they "become available." This is inconsistent with the timing required by *Brady* and the Rule 5 Order. It is especially concerning given the other language in the SDPO, such as the Government only providing materials that the "United States Attorney's Office is aware and possesses."

materials – *i.e.,* materials the United States Attorney's Office is not aware of and materials that it is aware of but does not possess.

*Third*, this paragraph violates *Giglio*. A defendant's rights are *Giglio* are broad and *Giglio* is the progeny of *Brady*. However, this paragraph completely leaves it out and subsequent paragraph that addressing *Giglio* is plainly deficient. As example of the complexities of *Giglio* information, the Court need look no further than the DOJ policy itself:

> The exact parameters of potential impeachment information are not easily determined. Potential impeachment information, however, has been generally defined as impeaching information which is material to the defense. *It also includes information that either casts a substantial doubt upon the accuracy of any evidence – including witness testimony – the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence.* This information may include but is not strictly limited to: (a) specific instances of conduct of a witness for the purpose of attacking the witness' credibility or character for truthfulness; (b) evidence in the form of opinion or reputation as to a witness' character for truthfulness; (c) prior inconsistent statement; and (d) information that may be used to suggest that a witness is biased.

DOJ Justice Manual, 9-5.100.

*Fourth*, this paragraph limits Jencks Act materials to what the Government is "aware of and possesses." It also fails to mention Fed. R. Crim. P. 26.2 which applies these rights to proceedings other than trial. Yet, ironically, the SDPO calls out both the Jencks Act and Rule 26.2 with respect to a defendant's reciprocal obligations.

*Fifth*, this paragraph violates the Court's Rule 5 Order both with respect to scope and timing. It articles a scope far less than the Court's Rule 5 Order. It also states that additional materials will be provided when they "become available." This is inconsistent with the timing required by *Brady* and the Rule 5 Order. It is especially concerning given the other language in the SDPO, such as the Government only providing materials that the "United States Attorney's Office is aware and possesses."

*Sixth*, this paragraph limits the Government's obligations to its "discovery file." This is particularly dangerous because it in now way reflects any proper standard for discovery. Further, when read in context with the rest of the paragraph, it significantly limits the Government's discovery obligations.

3. **_Restrictions on Use and Disclosure_**. This paragraph is unnecessary because all the language in it and protections afforded by it are already in the Stipulated Protective Order. Further, Wendt notes that this provides extensive and onerous protections that he has already agreed to in this case. <u>Importantly, any concerns the Government has about the improper use or disclosure of discovery are already provided in the existing Stipulated Protective Order</u>.

4. **_Redacted or Withheld Information_**.

*First*, this paragraph is contrary to the procedure laid out in Rule 16(d)(1) in that it flips the burden to the defense to prove that certain discovery should not be withheld. Similarly, this paragraph fails to address discovery on an item by item basis the way Rule 16 contemplates. It is the Government's burden to demonstrate why a particular piece of discovery should be withheld or access to it restricted in any way.

*Second*, this paragraph violates the Iowa ethical rules with respect to when and how a prosecutor may withhold discovery. Under the Special Responsibilities of a Prosecutor in the Iowa Rules of Professional Conduct, a prosecutor must "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, *except when the prosecutor is relieved of this responsibility by a protective order of the tribunal*." **Iowa R. Prof.**

Conduct 32:3.8 (emphasis added). In short, a prosecutor cannot have a blanket order to withhold discovery and it certainly may not flip the burden to the defense to the prosecutor disclose it.

5. **Defendants' Reciprocal Discovery Obligations**. The problems with this paragraph include the following:

*First*, it is inconsistent with Rule 16. As an initial matter, the paragraph requires production within 14 days of the SDPO regardless of whether the Government has complied with Rule 16 or when it complies with Rule 16. Additionally, it expands the scope of Rule 16(b) by redefining the standard from evidence the defendant "intends" to use in its case-in-chief to items the defendant "may offer into evidence during its case-in-chief." Similarly, it requires a defendant to produce reports of examinations and tests as well as summaries of expert witnesses regardless of whether the defendant intends to use them at trial. See Rule 16(b)(1)(B), (C).

*Second*, there is no need to attempt to reiterate the requirements of Rule 16. As mentioned with respect to the Government's duty to produce discovery under Rule 16(a), attempting to articulate a defendant's duty with respect to Rule 16(b) presents similar problems. This should be avoided and reserved for particular contested or specific issues.

6. **Giglio Information**. As mentioned above, this paragraph is inconsistent with *Giglio*. In addition, it unnecessarily restricts discovery in that it prevents a defendant from being able to use a document at trial or prepare with it in defense counsel's office – despite the already extensive Stipulated Protective Order in place.

7. **Grand Jury Testimony**. As mentioned above, this paragraph unduly restricts the scope of why grand jury testimony may be subject to discovery. It is certainly not limited to the Jencks Act or Rule 26.2.

8. ***Expert Witnesses***. The problem with this paragraph is that it requires simultaneous disclosure of expert witnesses. Further, it requires the defendant to produce the report 28 days before trial. This set up would be inconsistent with Rule 16(a)(1)(G)(ii)'s requirement that the Government provide its disclosures in time for the defendant to "meet the government's evidence." It is also inconsistent with the practice in civil cases of staggered expert disclosures.

9. ***Materials Obtained by Trial Subpoena (Mutual Obligation)***. This paragraph unnecessarily restricts one of the few means for a defendant to obtain information and can be dealt with on a subpoena-by-subpoena basis.

10. ***Continuing Obligation***. For the same reasons that the previous paragraphs are deficient, this paragraph unjustly and unlawfully restricts the scope and timing of the Government's discovery obligations. In addition, the odd sentence at the end unduly restricts a defendant's access to and possibly the ability to identify new discovery: "Opposing counsel will be notified when additional discovery materials are added."

11. ***Resolution of Disputes***. This paragraph is redundant with the obligation of Local Rule 7.

12. ***Applicability***. This language of the paragraph is already in place in the Stipulated Protective Order.

13. ***Authority and Scope***. Two points are noteworthy about his paragraph. First, by presenting this proposed SDPO to the Court, the Government concedes that the Court has the authority to issue and enforce an order requiring the Government to produce discovery. Second, the SDPO is binding not just on defense counsel but on the defendant himself – in other words, it makes clear that it is about a defendant's rights to discovery and not just counsel's access to it.

## IV. CONCLUSION

In conclusion, the Court should deny the Government's request to impose its proposed Discovery and Protective Order.

Dated: February 10, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *Nick.Klinefeldt@Faegredrinker.com*
*Rachel.yaggi@faegredrinker.com*

**ATTORNEY FOR DEFENDANT WENDT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Paulette Ohnemus*

US.355651450.01