IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:22-cr-199 |
| v. | GOVERNMENT'S REPLY TO DEFENDANT WENDT'S |
| BRADLEY EUGENE WENDT, | RESISTANCE TO MOTION FOR IN CAMERA REVIEW OF ADAIR |
| Defendant. | CITY COUNCIL MEETING RECORDINGS |

At the outset of this case, Wendt raised a dubious claim that *Garrity*[1] may bar the use of his statements at two City Council meetings. *See* GX 7. Wendt has since expressed an ever-expanding view of *Garrity* and its alleged impact on this case. *See* GX 8-10. Those complaints have reached the point that Wendt is effectively trying to put the government's case on hold until he decides—at some unknown time—to raise his concerns with the Court. *Id.* To address those concerns, the government asked the Court to do what Wendt suggested a month ago: give the Court "an opportunity to review [the recordings at issue] and rule on whether they are protected." GX 7 at 1.

But Wendt doesn't really want that—or at least not yet. Rather than defend his untenable position on the merits, Wendt raises a host of procedural objections to the government's motion seeking *in camera* review. None has merit.

Wendt claims that the government is seeking an improper "advisory opinion on what will happen if Wendt files a motion to suppress." Dkt. 79 at 2. The Constitution of course limits the Court's jurisdiction to "actual cases or controversies."

---

[1] *Garrity v. New Jersey*, 385 U.S. 493 (1967).

1

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). But Wendt cannot seriously claim that this issue presents no controversy for the Court's review. It has, after all, generated a seemingly endless stream of correspondence from Wendt's counsel seeking to dictate the government's handling of this case. *See* GX 7-10. Ironically, the thrust of those communications is that the Court needs to address Wendt's *Garrity* concerns. That's what the government has asked the Court to do.

Wendt asserts that the government "violated any sort of proper procedure for a *Garrity* review" by already reviewing these recordings. Dkt. 79 at 3. The government reviewed the recordings because—from what it knows about the circumstances of the Council meetings—the government did not see a scenario in which Wendt's statements were conceivably "compelled" under of *Garrity*. The government's position on that hasn't changed. *See* Dkt. 74-1. As a matter of caution, however, the government sought the Court's review after Wendt raised this issue and sought to command the course of the government's work. *See* GX 7-10. The Court's *in camera* review in this situation is an entirely reasonable course. *See, e.g., In re Grand Jury Subpoena dated Dec. 7 and 8*, 40 F.3d 1096, 1098 (10th Cir. 1994) (affirming ruling, after *in camera* review, that officer's statement was not protected by *Garrity*); *United States v. Kwiatkowski*, No. 14-CR-102-S, 2015 WL 13746401, at *3 (W.D.N.Y. Sept. 1, 2015) (rejecting *Garrity*-related motions after *in camera* review).

Wendt also asserts, without analysis, that the government's use of his statements in these meetings is a "clear violation of the Iowa Law Enforcement Officers Bill of Rights, Iowa Code Chapter 80F.1." Dkt. 79 at 3. Wendt apparently

misunderstands the statute. The protections in Chapter 80F are triggered by a "complaint" against an officer—meaning a "formal written allegation signed by the complainant." Iowa Code § 80F.1(1)(b). Only upon the filing of such a complaint is an officer is entitled to the statute's so-called "bill of rights." *See, e.g.,* Iowa Code § 80F.1(5), (7) (affording various protections to the officer "who is the subject of the complaint"). These City Council meetings were not convened to address a "complaint" within the meaning of the statute, so its procedural mechanisms are beside the point. Additionally, the statute by its terms "is not applicable to a criminal investigation of an officer or where other investigations pursuant to state or federal law require different investigatory procedures." Iowa Code § 80F.1(2). In short, the statute has nothing to do with this case, much less the *Garrity* issues before the Court.

Wendt also notes that the government gave him copies of the recordings at issue. Dkt. 79 at 4. The significance of this fact isn't apparent, but it seems Wendt just wants a forum to air his discovery grievances. *See* Dkt. 73 (reciting the status of discovery). For example, Wendt says he hasn't had what he calls "reasonable access" to discovery. Dkt. 79 at 5. But all discovery materials have been available to him since January 13—three days after he first raised his *Garrity*-related concerns. The government also informed Wendt's counsel—repeatedly—that the government will provide copies of Rule 16 materials upon request.[2] Indeed, the government has

---

[2] Wendt asserts that the recordings "clearly fall under Rule 16." Dkt. 79 at 4. It's not clear what he means by this. The recordings are not statements within the meaning of Rule 16(a)(1)(A). To the extent they're covered by Rule 16(a)(1)(B), Wendt has known about the recordings since at least January 10, the discovery materials have been available for his review in the U.S. Attorney's Office since January 13, and he has since been given copies of the recordings. *See generally* Dkt. 73.

already given Wendt copies of most of the discovery in this case. *See* Dkt. 86 at 1-2. If Wendt's counsel signs the standard stipulated discovery and protective order—or if the modified version the government asked the Court to enter is approved—the government would be happy to provide Wendt copies of all discovery materials. Until then, those materials are (and have been) available to Wendt's counsel since January 13.[3] And if Wendt thinks the Court needs more information to rule on the government's motion for *in camera* review, he can provide it.

Wendt next circles back to his advisory opinion notion. This time, Wendt says the government just wants his and the Court's help to "unravel the problem" the government created. Dkt. 79 at 4. To be clear, the government doesn't think there's a problem. *See* Dkt. 74-1. But Wendt sure seems to think there is, and he is attempting to use this perceived problem to hijack the government's evidence and investigation. *See* GX 7-10. The government sought the Court's *in camera* review to address Wendt's perceived problem. Frankly, the government did not expect Wendt to oppose that request. It was Wendt, after all, who demanded a month ago that the Court be given "an opportunity to review [the recordings] and rule on whether they are protected." GX 7 at 1. That's all the government has asked the Court to do.

Wendt also complains that the government has not provided a "proper record" to resolve his *Garrity* concerns. Dkt. 79 at 4. Again, if Wendt thinks the Court needs more information, he can provide it. He'd seemingly be in a good position to do so,

---

[3] Notably, Wendt's counsel first reviewed discovery at the U.S. Attorney's Office on February 2, after the government filed a motion noting his failure to do so and after his counsel sent no fewer than four letters and emails complaining about these perceived *Garrity* issues. Dkt. 73 at ¶ 4; GX 7-10.

4

since he was at these Council meetings. In that regard, the Court should convene an evidentiary hearing if it thinks one is necessary to resolve the government's motion.

Finally, Wendt says that the "only way" his *Garrity* concerns are "properly before the Court" is via a motion to suppress filed by him. Dkt. 79 at 5-6. Wendt cites no authority for this contention, and there appears to be none. It's also a practically unsound approach. Trial in this case is currently set for February 27, but defendants have moved to continue it to an unknown date. It's unknown when Wendt would file any motion to suppress based on his *Garrity* concerns. But a typical pretrial motions deadline would probably let Wendt wait to do so until shortly before trial. *See* Dkt. 16. The government, meanwhile, would be left to grapple with Wendt's seemingly limitless and shapeshifting understanding of *Garrity*.[4] It's in the parties' interests to have the Court address these issues now, and Wendt offers no good reason not to. The Court should review the recordings *in camera* and determine that Wendt's statements in them were not compelled within the meaning of *Garrity*.

        Respectfully submitted,

        Richard D. Westphal
        United States Attorney

By:   /s/ *Ryan W. Leemkuil*
       Mikaela J. Shotwell
       Ryan W. Leemkuil
       Assistant United States Attorneys

---

[4] *See, e.g.,* GX 7 at 1 (demanding that the government not review "any communications directly or indirectly with Mr. Wendt about the impact of the government's investigation on his job as police chief, or that incorporate those communications"); GX 10 at 1-2 (suggesting that "any investigation after August 31, 2022 could be tainted," including City Council meetings, devices and accounts belonging to Wendt and unidentified "city officials," and "interviews and testimony of city officials").

U.S. Courthouse Annex, Suite 286  
110 E. Court Avenue  
Des Moines, Iowa 50309  
Tel: (515) 473-9300  
Fax: (515) 473-9292  
Email: Ryan.Leemkuil@usdoj.gov  
Mikaela.Shotwell@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

\_\_\_\_U.S. Mail _____ Fax \_\_\_\_\_Hand Delivery

\_X\_ ECF/Electronic filing \_\_\_Other means

UNITED STATES ATTORNEY

By: */s/ Ryan W. Leemkuil*