**Leemkuil, Ryan (USAIAS)**

| | |
|---|---|
| **From:** | Leemkuil, Ryan (USAIAS) |
| **Sent:** | Tuesday, March 7, 2023 9:59 AM |
| **To:** | Klinefeldt, Nicholas A.; Yaggi, Rachel A. |
| **Cc:** | Shotwell, Mikaela (USAIAS) |
| **Subject:** | RE: US v. Wendt - Returning Brad Wendt's phone |

Nick,

In light of your response, and really the lack thereof on many of the most salient issues here, we're going to seek relief from the Court on these matters. To the extent it isn't already clear, we'll seek your position before we file our motion.

Ryan

---

**From:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Sent:** Monday, March 6, 2023 4:21 PM
**To:** Leemkuil, Ryan (USAIAS) <RLeemkuil@usa.doj.gov>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <MShotwell@usa.doj.gov>
**Subject:** [EXTERNAL] RE: US v. Wendt - Returning Brad Wendt's phone

Ryan,

As an initial matter, we note that the Government does not have the right to conduct the privilege review in this case as it sees fit without a court order or consent of the Defendant. To help resolve this matter, we provide the following response:

1. **Hotmail Account**. We were not the ones who brought this evidence into the case. Now that the Government has done so, it needs to do it correctly. Regardless of whether the attorney-client privilege communications are with attorneys on this case or not, the Government has absolutely no right to have access to them and it is the Government's burden to fix the problem. You have confirmed that Government knew about matters in which Wendt was represented that occurred during the relevant time but nonetheless reviewed the email account without a privilege review or disclosing that to the court. We can provide contact information and search terms for a privilege review of this account if you can do the following:
    a. Identify by name and title who will conduct the review. This is necessary so we can confirm their lack of connection to this case as well as their ability to make privilege determinations.
    b. Confirm we will have the opportunity to review any potentially privileged emails found by the filter team before they are disclosed to the prosecution team.
    c. Confirm the filter team will also conduct the second stage of the SW seizure process by producing back to us the non-privileged emails that are responsive to the SW and that are in a reviewable format.

2. **Facebook Account**. As for the FB Messages, we will try to go through and see if we can identify them. Hopefully, this will be an easy problem to correct. However, the FB Account is about 45,000 pages so I don't know how long it will take. Until then, this account should be pulled from access by our Co-Defendant as well as the Prosecution Team.

3. **Phone (8/31/22)**. We were not provided this phone download until 2/27/22. We will do our best to review it and attempt to identify the scope of the problem here and get back to you. Until then, we request that you pull access of this device from our Co-Defendant and the Prosecution Team.

GOVERNMENT
EXHIBIT
**2**
4:22-cr-199

4. **Phone (1/11/23)**. It has been almost two months since Wendt's phone was downloaded a second time and we still have not received it. This device will contain Garrity protected information as well as attorney-client privileged communications. We are again requesting the Government produce it immediately. When we receive it, we will do our best to identify the scope of protected information on the device. Until we have had a chance to review it, it is impossible for us to identify what may be protected.

   Also, we wanted to clarify that our position on Garrity has not changed. We believe there could be Garrity protected information anywhere from 8/31/22 to the present and that it could include not just communications with Wendt but also internal communications among City Officials as well as interviews and testimony of City Officials. There will also be a taint issue here with respect to reliance on that information. We understand the Government's position is that there was no prospect of Garrity privilege in this case so it did not take any steps to avoid potentially protected communications in that regard. We disagree and again remind you that you have the facts wrong and don't appear to know all of the information. While we will need to litigate the exact parameters of this issue, we would like to continue to narrow it and right now we are just focused on information the Government has not reviewed.

   Lastly, we will not be able to bring the Garrity issue to the Court for resolution until we have been provided with copies of all of the discovery that we have previously identified.

5. **Computers**. We note that many of these issues will be present on Wendt's computers as well and request that we be notified prior to any review and that any review be done with either a process we have consented to or that has been judicially approved. Any process or agreements on the above items should not be used on the computers. However, we will not address this further and assume they are not being reviewed unless and until you notify us.

Please let us know.

Nick

---

**From:** Leemkuil, Ryan (USAIAS) <Ryan.Leemkuil@usdoj.gov>
**Sent:** Friday, March 3, 2023 4:29 PM
**To:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <Mikaela.Shotwell@usdoj.gov>
**Subject:** RE: US v. Wendt - Returning Brad Wendt's phone

**This Message originated outside your organization.**

---

Nick,

Thanks for your email. We appreciate you clarifying your views on the privilege and *Garrity* issues. We were admittedly taken aback by the apparent scope of some of the views you previously expressed on these topics. The government is certainly interested in addressing these issues in a collaborative fashion that burdens the Court as little as possible. To that end, it's helpful to have a better understanding of your views, and we appreciate you making the effort. I'll attempt to address the issues you've raised below, and I apologize in advance for the length of this email.

**Accounts/Devices**. You've correctly identified the four accounts/devices at issue. In our view, only the phone seized on January 11, 2023 could conceivably contain compelled statements under *Garrity*. It appears you agree that the other accounts and devices do <u>not</u> contain compelled *Garrity* statements. Regarding attorney-client privileged materials in

2

these accounts/devices, the government has not conducted any review of the phone seized on January 11. As noted in previous emails, the government intends to employ a filter team to review that phone to remove any material covered by the attorney-client privilege. Regarding alleged *Garrity* statements contained in the January 11 phone, if you provide more information about those alleged statements, including the individual(s) to whom they were made, the date they were made, and form in which they were made (e.g., emails, text messages, etc.) we're happy to consider that issue further. Identifying that information does not strike me as an overly burdensome task, particularly considering the phone has been returned to your client so that information is accessible to you. Regarding the other three accounts/devices, the government previously reviewed them without employing a filter team because (1) they could not possibly contain *Garrity* statements and (2) the government had no reason to believe they would contain attorney-client privileged communications (because they were seized prior to your representation of Mr. Wendt). As we noted in a prior email, your suggestion that the government should have employed a filter team in these circumstances would logically require the government to employ a filter team every time it seizes a phone, email account, or social media account in any investigation of any sort simply to determine if the owner of the phone or account had at some unknown point in time communicated with an unidentified lawyer about some unrelated legal matter. Is that in fact your position? I am aware of no authority to support that view, but if you are we would like to see it. As a practical matter, the government has not reviewed Mr. Wendt's email account, Facebook account, or the phone seized on 8/31/2022 in quite some time. That's not necessarily because of your privilege concerns, but due to the fact that we have other work to do. As a matter of good faith, we will commit to not further reviewing these devices/accounts for the very near term in hopes of coming to an agreement on how to best resolve your attorney-client privilege concerns for those items. To date, the prosecution team has not encountered any privileged material on the phone or accounts seized on or before 8/31/2022.

**Garrity**. Again, we appreciate you clarifying your position on this. I think it's fair to say we disagree with your views on this topic. The law is clear that *Garrity* does not extend to all statements a public employee makes simply because his conduct is under scrutiny or he fears losing his job. *Garrity* is much more limited than that, as the Eighth Circuit and other courts have explained. So far as I know, Mr. Wendt was never told he would be terminated if he did not answer the Council's questions. In fact, the evidence indicates quite the opposite—that Mr. Wendt eagerly met with and made statements to the Council, and in fact demanded an audience with them on multiple occasions. If you have evidence to the contrary, please provide it, as it would be highly pertinent to the government's efforts to avoid encountering compelled *Garrity* statements. In a similar vein, I'm intrigued by your suggestion that Mr. Wendt continues to make compelled *Garrity* statements "to this day." Is Mr. Wendt now employed under a standing *Garrity* warning? Is he communicating with the City Council or individual council members about his machine-gun-related conduct? If so, that would give the government significant concerns given the pretrial release condition prohibiting his contact with City officials about the subject matter of this case. Regarding your views of Iowa Code 80F, which appear to be shared by City Attorney Fichter, I explained in a filing why those views are wrong and irreconcilable with the text of the statute. As for your "understanding this process was always intended to be protected by . . . *Garrity*," I admittedly don't know what this means. *Garrity* is not triggered by a government entity's "intent." It's triggered by the particular circumstances in which a statement is made, and whether those circumstances support a conclusion that the statement was "compelled" as that concept has been developed by *Garrity* and later decisions. You also say you need to "review the discovery to find out what else may support [your] position," and the "sooner [you] can get that discovery, the sooner [you] can accomplish this task." To be clear, you have copies of the vast majority of the discovery in this case, and the balance of the discovery is freely available for your review in our office. In other words, you have access to *all* of the discovery (with the exception of the phone seized on January 11, which I will address below). Aside from the January 11 phone, we are simply puzzled by your continued suggestion that there is discovery being withheld from you. If there is particular discovery you think you don't have access to, please identify it with specificity. It is not productive to make sweeping complaints about "the discovery" when you have copies of most of it and the rest has been and remains available for your review.

**Attorney/Client Privilege**. As noted above, it seems to us that the only device or account that could conceivably contain attorney-client privileged communications about this case is the phone seized on January 11, 2023. That's why we haven't reviewed that phone, and that's why we have always intended to employ a filter review of that phone. Regarding the other phone, email account, and Facebook, it seems to me that the only potentially privileged communications on those would be between Mr. Wendt and other (still unidentified) lawyers about legal matters

unrelated to this case. If you think that's incorrect, please explain why. And again, please provide us the names, email addresses, phone numbers, or other identifiers for any and all attorneys you believe Mr. Wendt may have communicated with via the phone seized on 8/31/2022, his Hotmail account, or his Facebook account. This frankly should not be a difficult task. You say you "need to be able to review the accounts and devices to ensure we have it right." Relatedly, you say you "need to be able to have adequate access to the accounts and devices to help identify those aspects." To be clear: (1) you have the phone extraction for the 8/31/2022 phone; (2) you have the entire Hotmail account; and (3) you have the entire Facebook account. In other words, you have precisely what you claim you need to accomplish this task. I'm at a loss to understand why you still have not provided any names of these attorneys. This kind of delay is why we will ask the Court for relief if these issues are not resolved soon.

**Your Proposal**. I respond to each of these below in red.

The bottom line is this:

1. Regarding the devices/accounts seized on or before 8/31/2022, we're open to running targeted searches to exclude potentially privileged materials, and we need more information from you to do that. But because any potentially privileged material on these devices and accounts would not be with attorneys representing Mr. Wendt in connection with this case and would pertain to legal matters unrelated to this case, it frankly seems unnecessary to launch some massive undertaking to exclude things that seemingly have no bearing on this case.

2. Regarding the phone seized on January 11, 2023, we think a fairly standard filter review—perhaps with an assist from technology—is sufficient. If you provide more detail about any alleged *Garrity* statements on this phone we'll further consider that aspect. We'd like to proceed with this process soon, so please let us know your position.

Thanks,
Ryan

---

**From:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Sent:** Wednesday, March 1, 2023 3:19 PM
**To:** Leemkuil, Ryan (USAIAS) <RLeemkuil@usa.doj.gov>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <MShotwell@usa.doj.gov>
**Subject:** [EXTERNAL] RE: US v. Wendt - Returning Brad Wendt's phone

Ryan,

I think we may be talking past each other a little bit. We are really just trying to identify issues when we see them to try to help prevent or minimize problems and, where problems exist, work through them as collaboratively as possible.

**Accounts/Devices**. It sounds like we are just talking about four accounts/devices with privilege materials: (1) the Hotmail account; (2) Wendt's FB account (messenger); (3) Wendt's phone (8/31/22 download); and (4) Wendt's phone (1/11/23 download). However, I believe there would be privileged materials on the computers as well but we can address those if and when you end up processing them.

**Garrity**. We believe Garrity may protect some communications between Wendt and the Adair City Officials as soon as 8/31/22 and continue to this day. We are not claiming the scope starts before 8/31/22 nor are we claiming that it includes every single communication between Wendt and the Adair City Officials. However, it is our understanding that termination was being considered as soon as the day the agents executed the SW's and that Adair City Officials may have started obtaining information from Wendt that day. Further, it is our understanding this process was always intended to be protected by Iowa Code 80F and Garrity. There is some evidence we cannot disclose to you yet because we need to figure out the privilege aspect to them and whether to disclose them to you or the filter team. We need to review the discovery to find out what else may support our position, and then have the Court make the determination

about the proper scope of the privilege. However, our goal is to be able to put the complete record before the Court as soon as possible. The sooner we can get that discovery, the sooner we can accomplish this task.

**A/C Privilege**. In terms of attorney-client privilege, we believe that process can be complicated in any case but may be especially so here. While Wendt only communicated with us and the Braum/Rudd law firm since 8/31/22 or after, there are many other lawyers he communicated with before and after that date. It appears these communications took many forms. We are trying to compile a list of complete contact information, but need to be able to review the accounts and devices to ensure we have it right. Further, there may need to be a determination about whether certain communications are actually privileged and/or what else may be privileged (e.g., because it was prepared for the attorney). We need to be able to have adequate access to the accounts and devices to help identify those aspects. There really just is no way to adequately do this in the blind, and with the case already being charged we don't believe there is a reason to do so.

**Proposal**. Accordingly, we propose that we work together to narrow these privilege issues by taking the following steps:

1. **First Step**: The Government confirm what has happened and help get us what we need to weigh in here. Specifically:
    a. Confirm no one on the prosecution team (i) was aware of a matter in which it should have known Wendt might have had counsel or (ii) has come across any potentially privileged communications.
    <span style="color:red">Regarding the prosecution team's awareness of "a matter in which it should have known Wendt might have had counsel," I don't know what you mean by "should have known." The government is aware in a very general sense that Mr. Wendt over the years has had legal matters having nothing whatsoever to do with the subject matter of this case (e.g., a dispute with the DNR and a dispute with the City of Denison). I can confirm that no one on the prosecution team has come across any potentially privileged communications on any of Mr. Wendt's accounts or devices.</span>
    b. Provide Wendt's phone download from 1/11/23. (Note: this is Rule 16 regardless if the Government has run a privilege review.)
    <span style="color:red">We will get you a copy of this extraction, which will necessarily include any potentially privileged material on the phone. As discussed below, we intend to proceed with a filter team review of this phone.</span>
    c. Provide copies of the rest of discovery, including the remaining discovery currently available for in-office review only;
    <span style="color:red">As I explained above, you have copies of the vast majority of the discovery. Once we get you the January 11 phone, the only materials you do not have copies of are: (1) law enforcement reports; (2) witness statements; and (3) grand jury transcripts. These materials are not discoverable under Rule 16. *See* Fed. R. Crim. P. 16(a)(2)-(3). Despite them not even being discoverable, we have made them available for your review in our office. If the Court enters the order we've asked for, or you simply sign the SDO, you will get copies of these materials like you have the rest of the discovery.</span>
    d. The download of Gettler's phone;
    <span style="color:red">By requesting a copy of Jeremy Gettler's phone, it appears you would agree the phone does not contain privileged communications? Additionally, considering that Mr. Gettler has not been on the City Council since well before this investigation was known, I assume you'd also agree Mr. Gettler's phone could not possibly contain compelled statements under *Garrity*? Please confirm and we may be able to get you a copy of this.</span>
    e. The texts and communications the Government and its Agents have had with the Mayor and other City officials;
    <span style="color:red">The agents were instructed to preserve their text messages, consistent with Judge Adams's order. Under what authority do you think you're entitled to this?</span>
    f. The GJ subpoena and communications the Government has had with the City Attorney; and
    <span style="color:red">For what purpose and under what authority?</span>
    g. Any other discovery not identified in the Government's discovery index that Wendt is entitled to under the Government's obligations.

5

<span style="color:red">The government has and will continue to comply with its discovery obligations, *Brady*, etc. Again, if there is particular discovery that you believe has not been made available to you, please let us know and we'll look into it.</span>

2. **Second Step**: We will then provide the search terms we believe are appropriate for A/C privilege review, the items we believe are privileged, the materials we think are protected by Garrity, and the further basis for our Garrity claims to your filter team (so long as it consists of DOJ attorneys outside of this jurisdiction, though preferably Main Justice).

   <span style="color:red">This seems unnecessarily complicated and burdensome considering that the only device or account that could possibly contain *Garrity* statements or attorney-client privileged communication about this case is the phone seized on January 11, 2023. You concede that Mr. Wendt could not have made *Garrity* statements prior to August 31, 2022, so it's not clear to me why we would review accounts or devices seized on or before that date—*i.e.*, everything except the January 11 phone—for nonexistent "Garrity claims." Regarding attorney-client privileged communications, if you would simply provide us names and identifiers for the alleged attorneys involved we'd be happy to discuss our options on that. For example, the Hotmail account is loaded into a review platform for the government's review. If we had identifiers for these attorneys, I believe we could simply have DOJ's litigation support team run searches for those identifiers and exclude any responsive materials from the material that is available to the prosecution team. This approach seems more than sufficient for the three devices/accounts that contain, at best, attorney-client privileged communications between Mr. Wendt and other attorneys about other matters unrelated to this case. Regarding the phone seized on January 11, again, the government plans to employ a filter team—likely consisting of an uninvolved agent and an AUSA from another district. Step one of that process may be to have the FBI generate an extraction that specifically excludes communications with you/your firm and any other attorneys you identify. The filter team would then simply confirm the potential privileged materials have in fact been excluded and then provide the filtered extraction to the prosecution team. Regarding alleged *Garrity* statements in the January 11 phone, again, if you provide additional details about those alleged statements (as I described above) we will further consider that issue and how to approach it. If there are ultimately disputes about what may or may not be a compelled statement under *Garrity*, we could present that dispute to the Court. Please advise if you object to this process. If so, we'll probably file a motion with the Court.</span>

3. **Third Step**: We can then go to Court and litigate whatever differences that remain.

We believe this process will significantly reduce what we have to ask the Court to rule on and would be necessary in any event. Please let us know.

Nick

---

**From:** Leemkuil, Ryan (USAIAS) <Ryan.Leemkuil@usdoj.gov>
**Sent:** Monday, February 27, 2023 4:28 PM
**To:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <Mikaela.Shotwell@usdoj.gov>
**Subject:** RE: US v. Wendt - Returning Brad Wendt's phone

**This Message originated outside your organization.**

---

Nick,

We plan to file a motion with the Court regarding our proposed plan for the review of the phone seized on January 11. We may also seek relief in the motion regarding the phone seized on 8/31/2022 and the Facebook and email accounts seized prior to the investigation being known to Mr. Wendt.

One of the (numerous) issues with your assertions of attorney-client privilege and *Garrity* concerns to date is your failure to provide any detail about those alleged concerns. For example, despite expressing your attorney-client privilege concerns for over a month, you have not provided a single name of an attorney or law firm with whom Mr. Wendt allegedly had privileged communications via these phones or accounts. In your email last night, you asserted that there are "a dozen or so persons with whom Wendt had attorney-client privileged communications prior to August 31, 2022." Yet your email did not identify any of them. It would seemingly not be difficult for Mr. Wendt to give you the names of attorneys he has communicated with via these phones and accounts, and that information would be helpful to the government in ensuring it does not inadvertently encounter privileged materials. Similarly, regarding your *Garrity* concerns, you have been repeatedly raising them for over six weeks. We asked you over a month ago to explain how accounts seized before this investigation was known to Mr. Wendt could possibly contain "compelled" statements within the meaning of *Garrity*. We also asked you to explain your *Garrity* concerns regarding the phone seized on January 11. To date, you've provided no information in this regard and instead have simply used these amorphous concerns to effectively pause the government's work on this case.

Simply put, we cannot address your concerns if you do not provide information as basic as the names of the attorneys with whom Mr. Wendt has communicated. Please provide this information, and please explain how Mr. Wendt could make compelled *Garrity* statements about an investigation that was not known to him.

We will follow up with you to get your position on our motion before we file it.

Thanks,
Ryan

---

**From:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Sent:** Sunday, February 26, 2023 6:48 PM
**To:** Leemkuil, Ryan (USAIAS) <RLeemkuil@usa.doj.gov>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <MShotwell@usa.doj.gov>
**Subject:** [EXTERNAL] RE: US v. Wendt - Returning Brad Wendt's phone

Ryan,

It is our understanding from your email correspondence with us up to this point that there are basically two issues: (1) whether any privileged information is contained within Wendt's email, FB, phone and other items seized on or prior to August 31, 2022; and (2) what privileged information is located on Wendt's phone as it was seized on 1/11/23.

As to the first issue, it is our understanding that Government has already accessed and reviewed that information. As such, we likely have no choice but to address that in a motion to suppress/dismiss regarding these issues. However, we request the Government cease review of these materials until a privilege analysis is conducted. We are still assessing the scope of privileged information contained in those materials. However, at this time, we have identified a dozen or so persons with whom Wendt had attorney-client privileged communications prior to August 31, 2022. We are still identifying more details, including complete contact information. Also, note that some of these matters overlap with this matter. Further, the Government has not yet produced even the initial download of the phone to us. It was not provided on USAfx or on a separate drive as far as we can tell.

As to the second issue, we believe there will be both attorney-client privilege communications as well as Garrity privileged communications on the phone. We have previously told you the potential scope of Garrity privileged communications. However, that will need to be the subject of a motion to suppress and we don't have a complete record yet. This is in part due to the Government's continued refusal to produce discovery to us. This is not limited to the discovery that you continue to restrict access to at the US Attorney's Office, but includes other discovery not previously disclosed at all. The sooner you can provide us discovery the sooner we will be able to resolve this issue. Also, as mentioned above, the scope of the attorney-client privilege is broad here as it does not just include our law firm and

the Braum law firm but other lawyers Wendt communicated with before and after 8/31/22. Any attorney-client privilege review is complicated but this one will be especially so.

Our concerns here include the following: the Government performing this review without a court-approved filter protocol; the Government making the privilege determinations by itself and without our ability to review a privilege log before the materials go to the prosecution team; the Government's failure to identify by whom or how the privilege review will take place; the Government's previous position that having an AUSA within their own office who is part of the Office's management team conduct the review; the Government's execution of a SW for a Defendant's phone several months after the investigation was overt and a month after indictment without any mention or protocol for privilege review in the SW; the Government's failure to even conduct a two-step review for relevant ESI that may be seized aside from privilege issues; as well as the problems we have previously identified.

Accordingly, we request the following:

1. Produce a complete copy of the most recent download of Wendt's phone (seized 1/11/23) for an initial review of privileged matters – this will allow us to properly identify what has been captured and what is privileged.
2. In addition, produce the discovery we need to address these issues:
    a. The previous download of Wendt's phone (seized 8/31/22);
    b. The remaining discovery currently available for in-office review only;
    c. The download of Gettler's phone;
    d. The texts and communications the Government and its Agents have had with the Mayor and other City officials;
    e. The GJ subpoena and communications the Government has had with the City Attorney; and
    f. Any other discovery not identified in the Government's discovery index that Wendt is entitled to under the Government's obligations.

Let us know the Government's position so we can file a motion for a protective order if necessary.

Nick

---

**From:** Leemkuil, Ryan (USAIAS) <Ryan.Leemkuil@usdoj.gov>
**Sent:** Thursday, February 23, 2023 9:15 PM
**To:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <Mikaela.Shotwell@usdoj.gov>
**Subject:** RE: US v. Wendt - Returning Brad Wendt's phone

**This Message originated outside your organization.**

---

Nick,

We intend to proceed with a filter team review of the phone seized from Mr. Wendt on January 11. We're aware of no binding authority that would require the use of privilege logs, *in camera* review, or a special master in these circumstances. It appears you also are not aware of any such authority, as you didn't provide any in your email below. Of course, if you think *in camera* review, a special master, or some other process is required in these circumstances, you may file a motion asking the Court to mandate your preferred process. Please let us know by the end of the day on Monday, February 27, if you intend to file a such a motion and, if so, when you intend to file it. Otherwise, we will proceed with the filter review process.

We wanted to address a few of your more specific complaints and correct the record. First, as it relates to alleged attorney-client communications in Mr. Wendt's email account, I will reiterate again that the government obtained that account long before this investigation was known to Mr. Wendt and long before he retained you. The account therefore could not contain privileged communications with you or your firm or any other attorney regarding this investigation or prosecution. To the extent you're claiming the email account contains preexisting privileged communications between Mr. Wendt and other unidentified attorneys regarding matters unrelated to this investigation or prosecution, I am not aware of those communications. We did not employ a filter review process on Mr. Wendt's email account because when we obtained that account we had no reason to believe it contained attorney-client privileged communications. Absent any such belief, your suggestion that we should have employed a filter team to review Mr. Wendt's email account would seemingly require the government to employ a filter review process for every phone and email account it obtains in any investigation simply to determine if the owner of the account or phone at any time communicated with some unidentified attorney about some unidentified legal matter at any time in the history of the account's or phone's usage. I'm aware of no authority for such a requirement. If you are, please do pass it on.

Second, you assert that the government has "accessed and disclosed to [you] privileged communications between Williams and Stowers (which [you] have not reviewed)." If you provide additional information about this vague assertion we'd be happy to look into it and take any appropriate measures.

Third, you claim that it "appears [the government] may have produced to [you] Williams's phone analysis (which would also contain privileged material) but not Wendt's phone analysis." This is incorrect. The Williams phone extraction provided in discovery specifically *excluded* communications between Mr. Williams and Mr. Stowers. If you have reason to think otherwise, of course let us know. Regarding the analysis of your client's phones, we have provided you the extraction of the phone seized from Mr. Wendt on August 31, 2022. We have not provided an extraction of the phone seized from him on January 11 because it has not been reviewed yet, in part because of your ongoing complaints about the manner in which we intend to review it to exclude potentially privileged communications. Once that review is complete we will provide the extraction in discovery.

Finally, regarding your email today asking what process the government used to review the email accounts for privileged materials, Mr. Williams' email account to date has not been reviewed by the government at all and we're in the process of implementing procedures for that review to filter potentially privileged communications (since the account was obtained after this investigation was overt and after Mr. Stowers' representation commenced). Regarding Mr. Wendt's email account, which again was obtained prior to this investigation being known to Mr. Wendt and prior to your representation of him, I addressed this above.

Again, please provide the names, phone numbers, email addresses, or other identifiers of any individuals with whom you believe Mr. Wendt had privileged communications via the phone seized from him on January 11. Also, please provide any additional insight into your suggestion that the phone may contain compelled statements within the meaning of *Garrity*. This information will assist the government in its filter review and help ensure that privileged and/or compelled communications are not inadvertently reviewed. Thank you.

Ryan

---

**From:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Sent:** Wednesday, February 22, 2023 4:26 PM
**To:** Leemkuil, Ryan (USAIAS) <RLeemkuil@usa.doj.gov>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <MShotwell@usa.doj.gov>
**Subject:** [EXTERNAL] RE: US v. Wendt - Returning Brad Wendt's phone

Ryan,

We will be filing motions regarding the *Garrity* and privilege issues in this case after we get copies of the discovery. In the interim, we object to any further review by the Government for two reasons:

***First***, courts have recognized the risk that filter teams pose to the attorney-client and work-product privileges and have enjoined their use altogether or employed strong safeguards to protect against potential abuse.

The Fourth and Sixth Circuits have favored using privilege logs and in-camera judicial review or reliance on special masters to protect the attorney-client and work product privileges. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) ("*In re Search Warrant*"); *In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006) (enjoining the filter team protocol and mandating a special master perform the initial review).

Several district courts have also denied the use of filter teams due to concerns regarding the protection of applicable privileges. *See United States v. Castro*, 2020 WL 241112 at *6 (E.D. Mich. Jan. 16, 2020) (denying use of filter team and appointing a special master to screen recordings of prison phone calls for privilege); *United States v. Sullivan*, 2020 WL 1815220 at *5-6, 8-10 (D. Hawaii Apr. 9, 2020) (ordering suppression of **all** files obtained from the defendant's Apple iCloud account after the filter team negligently disclosed privileged photographs to the prosecution—even though the prosecution never viewed the privileged photographs); *United States v. Chavez*, 423 F. Supp. 3d 194, 207 n.6 (W.D.N.C. 2019) (recognizing the use of a filter team may be unlawful).

These methods provide increased protection at the outset, rather than allowing the government filter team unrestricted access to review potentially privileged documents before the court can rule on any privilege assertion. As held by a Pennsylvania federal district court ruling on the same issues "it is always better to put procedures in place to avoid such an error before it occurs." *United States v. Vepuri*, 585 F. Supp. 3d 760, 764 (E.D. Pa. 2021) (appointing a special master, at the government's expense, to review materials for privilege).

In *In re Search Warrant*, federal agents obtained a warrant to search a law firm. The protocol there (approved by the magistrate judge) approved the use of a filter team from the same U.S. Attorney's Office that was investigating the firm. *Id.* at 165.

Under the protocol, once the filter team removed privileged materials, it was allowed to forward nonprivileged materials directly to the investigative team and reserve potentially privileged materials for adjudication by the court. *Id.* at 166.

The Fourth Circuit preliminarily enjoined the filter-team protocol, holding that "the Filter Team and its Protocol are legally flawed." *Id.* at 176. The court found:

> In approving the Filter Team and its Protocol, the magistrate judge made several legal errors by, inter alia: (1) assigning judicial functions to the Filter Team; (2) authorizing the Filter Team and its Protocol in ex parte proceedings that were conducted prior to the search and seizures at the Law Firm; and (3) failing to properly weigh the foundational principles that protect attorney-client relationships.

*Id.* at 176. Additionally, the Fourth Circuit noted, "[t]here is the possibility that a filter team — even if composed entirely of trained lawyers — will make errors in privilege determinations and in transmitting seized materials to an investigation or prosecution team." *Id.* at 177.

Here, the Government's protocol leaves "the government's fox in charge of guarding the [defendant's] henhouse." *Id.* at 178. The Government has identified a search protocol, not approved by this Court, which poses a high risk to the attorney-client and other applicable privileges.

Here, the Government explained: "[o]nce [the DOJ's Litigation Technology Service Center] excludes any communications with your firm, a filter AUSA will be given access to the review platform to confirm no privileged material is included. If the filter AUSA confirms that's the case, the prosecution team will be given access to the contents of your client's email account minus any excluded communications with your office." E-mail from Ryan Leemkuil, Assistant United States Attorney, to Dean Stowers, et al. (Jan. 20, 2023, 1:56 PM CST).

Such a review is exactly the type enjoined in *In re Search Warrant*. As noted by the Fourth and Sixth Circuits, filter team errors can "arise from differences of opinion regarding privilege," "mistake," and "neglect." *Id.* at 177 (citing *In re Grand Jury Subpoenas*, 454 F.3d at 523).

**Second**, the Government has already made several missteps in the review of privileged materials that cause us heightened concern. We will be addressing the *Garrity* issue in a motion when we have the discovery, but it will be clear that there was a violation and that you have accessed and used protected information. Further, the Government did not even have a filter team review this issue. The sooner you can provide us the rest of the discovery the sooner we will be able to address this issue properly. It is important for the Court to determine not just the scope of the *Garrity* protected information, but also what evidence could have been impacted by the access of that information. In terms of attorney-client privilege, the Government has accessed attorney-client privileged communications between Brad and other counsel that occurred prior to August 31st, accessed and disclosed to us privileged communications between Williams and Stowers (which we have not reviewed). Now, it appears you may have produced to us Williams's phone analysis (which would also contain privileged material) but not Wendt's phone analysis.

We request that you please start correcting these issues by producing copies of the remainder of the discovery to us. We don't even have the search warrants and returns to assess the proper scope of what the Government is authorized to access. Also, please identify a review process to address our concerns. In the meantime, we will collect the names and information of other counsel as well as the scope of potential *Garrity* information.

Nick

**From:** Leemkuil, Ryan (USAIAS) <Ryan.Leemkuil@usdoj.gov>
**Sent:** Wednesday, February 22, 2023 11:06 AM
**To:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>; Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>
**Cc:** Shotwell, Mikaela (USAIAS) <Mikaela.Shotwell@usdoj.gov>
**Subject:** FW: US v. Wendt - Returning Brad Wendt's phone

**This Message originated outside your organization.**

Nick,

As I noted below, an extraction was done on Mr. Wendt's phone that was seized on January 11. To date, the prosecution team has not reviewed the contents of that extraction. We intend to employ a filter team to review the extraction for privileged attorney-client communications and remove any privileged material before the extraction is made available to the prosecution team. That review will be conducted by agents and government attorneys who are not involved in this investigation or prosecution. To assist with that process, please provide the names, phone numbers, email addresses, or other identifiers of any individuals with whom you believe Mr. Wendt had privileged communications via that phone.

You have also suggested that Mr. Wendt's phone may contain compelled statements within the meaning of *Garrity*. Admittedly, that strikes me as unlikely given my understanding of *Garrity* and what is required to deem a statement compelled. Are you able to provide any additional information about what kind of compelled statements you believe might be on the phone? For example, would these allegedly compelled statements be in emails, text messages, or something else? To whom would Mr. Wendt have made these allegedly compelled statements? We obviously do not intend (or want) to review compelled statements, but without additional insight into what exactly you think is on the phone that might be a compelled statement I'm having a hard time envisioning just what that could be. We may, of course, include within the scope of the filter review potentially compelled *Garrity* statements, but I'd rather not waste the filter agents' and attorneys' time looking for things that do not exist.

Thanks,
Ryan

---

**From:** Leemkuil, Ryan (USAIAS)
**Sent:** Monday, January 23, 2023 3:56 PM
**To:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Cc:** Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>; Shotwell, Mikaela (USAIAS) <MShotwell@usa.doj.gov>; Kohler, Kevin T. (OM) (FBI) <ktkohler@fbi.gov>
**Subject:** RE: US v. Wendt - Returning Brad Wendt's phone

Nick,

Regarding the phone that was seized from Mr. Wendt on January 11, the contents of the phone have been extracted but have not been reviewed by the government. Given the potential presence of attorney-client privileged material on the phone, the government will employ a filter team to ensure any privileged material is removed prior to the prosecution team reviewing the phone extraction. Regarding potential *Garrity* issues, is there something in particular you're aware of that may be on the phone that is a coerced statement within the meaning of *Garrity*? I'm aware of no authority for the proposition that any statement a defendant makes after he knows he is being investigated for potential misconduct is *ipso facto* a coerced statement under *Garrity*. If you're aware of such authority, please share it. Short of that, however, if there is something in particular on the phone that you think is protected under *Garrity* we would be happy to discuss that further and take any appropriate measures in reviewing the phone. We will hold off on reviewing the phone until we hear from you.

Regarding your client's "other devices/accounts," those were all obtained prior to the City becoming aware of Mr. Wendt's alleged misconduct. Thus, any statements your client made on those devices and accounts could not possibly be protected by *Garrity*. I'm happy to consider any legal authority that you think says otherwise. These devices and accounts have been reviewed (at least in part) by the prosecution team and we will not agree to cease that review based on your below objections.

Thanks,
Ryan

---

**From:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Sent:** Friday, January 20, 2023 2:47 PM
**To:** Leemkuil, Ryan (USAIAS) <RLeemkuil@usa.doj.gov>
**Cc:** Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>; Shotwell, Mikaela (USAIAS) <MShotwell@usa.doj.gov>; Kohler, Kevin T. (OM) (FBI) <ktkohler@fbi.gov>
**Subject:** [EXTERNAL] RE: US v. Wendt - Returning Brad Wendt's phone

Ryan,

I would request that it just be delivered to my office and I will coordinate the return of it to Brad. In terms of privilege, as you know, there are numerous issues with the review of my client's devices and accounts, especially the phone you recently seized.

In particular, we are concerned with both attorney-client privilege and Garrity issues. As you know, I am not the only attorney with whom Mr. Wendt communicates about this matter. Further, it is my understanding Mr. Wendt has counsel in other matters. Likewise, as we have previously explained, there may be Garrity-protected information on Mr. Wendt's devices as well as other current or former city officials' devices.

Accordingly, we object to any review of Mr. Wendt's phone (or other devices/accounts) or current or former city officials' devices or accounts by the DOJ or any law enforcement agency unless and until we can address it with the Court.

Can you please confirm your agreement to our request and explain what review has been completed thus far on any of the above items?

Thank you.

Nick

---

**From:** Leemkuil, Ryan (USAIAS) <Ryan.Leemkuil@usdoj.gov>
**Sent:** Thursday, January 19, 2023 9:33 PM
**To:** Klinefeldt, Nicholas A. <nick.klinefeldt@faegredrinker.com>
**Cc:** Yaggi, Rachel A. <rachel.yaggi@faegredrinker.com>; Shotwell, Mikaela (USAIAS) <Mikaela.Shotwell@usdoj.gov>; Kohler, Kevin T. (OM) (FBI) <ktkohler@fbi.gov>
**Subject:** US v. Wendt - Returning Brad Wendt's phone

**This Message originated outside your organization.**

---

Nick,

The FBI has finished processing Brad Wendt's phone and would like to return it to him. Kevin Kohler is copied. Please feel free to make arrangements directly with Kevin to return the phone to your client. Thank you.

Ryan Leemkuil
Assistant United States Attorney
Southern District of Iowa
515-473-9267
ryan.leemkuil@usdoj.gov