IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 4:22-cr-199 |
| Plaintiff, | **DEFENDANT WENDT'S BRIEF IN SUPPORT OF WENDT'S MOTION TO COMPEL DISCOVERY AND REQUEST FOR SANCTIONS** |
| vs. | |
| BRADLEY EUGENE WENDT, | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ............................................................................................... 3

II.  BACKGROUND ............................................................................................... 3

   A.   The Government's Case ................................................................................. 3

   B.   Violations of Rule 16 and *Brady* ............................................................... 6

   C.   Violations of Fed. R. Crim. P. 26.2 ............................................................. 8

   D.   Violations of Privileges ................................................................................ 9

   E.   Unconstitutional Restrictions on Discovery ............................................... 10

   F.   Lack of Good Faith ....................................................................................... 13

III. ARGUMENT ..................................................................................................... 14

   A.   The Court's Authority ................................................................................... 15

   B.   The Government's Discovery Obligations ................................................... 15

      1.   The Law ................................................................................................... 15

      2.   DOJ Policy ............................................................................................. 16

      3.   ABA Report ............................................................................................ 18

      4.   Ethical Duty ............................................................................................ 18

   C.   Discovery Requests ....................................................................................... 19

      1.   Copies of All Discovery ......................................................................... 19

      2.   Phone Download ..................................................................................... 20

      3.   All Substantive Case-Related Communications ..................................... 21

      4.   Agent Notes ............................................................................................ 22

      5.   ATF NFA Division Communications and Documents ............................ 23

   D.   Request for Record and *In Camera* Review ............................................... 27

   E.   Sanctions ....................................................................................................... 27

IV.  CONCLUSION ................................................................................................. 28

## I.      INTRODUCTION

Defendant Bradley Eugene Wendt ("Wendt") submits this brief in support of his Motion to Compel and for Sanctions. The Government has committed a pattern and practice of flagrantly disregarding Wendt's rights and privileges in this case. In particular, the Government has violated Wendt's discovery rights. In addition, the Government has sought at every turn to deny Wendt the ability to properly address these issues with the Court by denying him the discovery to do so. Accordingly, Wendt requests that a proper record be made, sanctions be imposed, and discovery be compelled.

## II.     BACKGROUND

### A.      The Government's Case

The Government has been investigating this case for almost four years now. According to ATF Special Agent Kelly Etnier's Affidavit submitted in support of search warrants, the ATF came across Wendt when it was investigating Jonathan Marcum ("Marcum"). *See* Affidavit, Case No. 4:22-mj-323-326, ¶¶ 24-40. Wendt is the Adair Police Chief as well as the owner of BW Outfitters, which has stores in Anita, Iowa and Denison, Iowa. Marcum was one of the defendants in a Southern District of Indiana case in which apparently a police chief wrote law letters to gun dealers, of which Marcum was one, so the gun dealers could acquire them to resell them for profit and then provide a kickback to the police chief. Well, that did not happen here, but apparently, Marcum was cooperating with the Government to help himself out and tried to make it sound like it did. In any event, the ATF claims that in an interview on May 31, 2019, Marcum started attempting to implicate Wendt. The ATF then used Marcum to make recorded calls to Wendt about the machine guns on June 20, 2019 and September 24, 2019. In fact, the

first machine guns Wendt is alleged to have purchased are alleged to have come from Marcum – though there is no evidence Wendt was aware of Marcum breaking any laws to obtain them.

On August 31, 2022, the Government went public with its investigation by conducting a raid on the town of Adair and surrounding communities. Dozens of federal agents from the FBI and ATF executed search warrants at Wendt's home, his gun stores in Anita and Denison (both named BW Outfitters), and even the Adair Police Station. They interviewed not only Wendt, but friends and family, employees, fellow law enforcement officers, current and former Adair City Council members, and the Mayor of Adair. All of this caused the City of Adair to put Wendt on administrative leave immediately. Soon thereafter, we began contacting the Government and began requesting information and an opportunity to meet and discuss the matter. However, the Government refused our requests.

On December 14, 2022, the Government filed an Indictment charging Wendt and Co-Defendant Robert Allen Williams ("Williams"). The Indictment alleges 20 counts:

**Count 1: Conspiracy to Make False Statements to and Defraud the ATF (Wendt and Williams)**

The Government alleges Wendt and Williams conspired to unlawfully acquire machine guns in violation of 18 U.S.C. § 371. To accomplish this conspiracy, the Government alleges that Wendt made materially false statements to the ATF in law letters that were required for the acquisition of machine guns. The Government alleges Adair only has a population of 791, that it typically only has one officer on duty, and that during Wendt's tenure as Police Chief, at most, the Adair Police Department only had three-full time officers. The Government also makes allegations about the number of machine guns that were purchased or transferred, the suitability of the particular machine guns for law enforcement use, as well as other ways in which the machine guns were used, including a machine shoot. The Government alleges the purpose of the

4

conspiracy was to (1) unlawfully obtain and acquire machine guns for Defendants' personal enjoyment; (2) sell or transfer the machine guns for the defendants' personal profit; (3) rent the machine guns to private citizens in exchange for money; (4) allow private citizens to possess and shoot machine guns; and, (5) with respect to Wendt, to transfer machine guns to other FFL-SOTs.

### Counts 2-3: False Statements to the ATF – Purchase Law Letters (Wendt)

On the purchase law letters, the Government alleges that Wendt made the materially false statement to the ATF that the machine guns would be used to carry out the duties of the Adair Police Department and that they were not being acquired for the purpose of resale or transfer, when in fact Wendt was acquiring them for his personal gain and profit.

### Counts 4-16: False Statements to the ATF – Demonstration Law Letters (Wendt)

On the demonstration law letters, the Government alleges that Wendt made the materially false statements to the ATF that the machine guns were requested for demonstration for future potential purchase by the Adair Police Department, when in fact Wendt was acquiring the machine guns for his personal gain and profit and to facilitate the transfer of the machine to other FFL-SOTs.

### Counts 17-19: False Statements to the ATF – Demonstration Law Letters (Wendt and Williams)

Regarding the demonstration law letters to Williams, the Government alleges that Wendt made the materially false statements that the machine guns were requested for demonstration for future purchase by the Adair Police Department, when in fact the machine guns were being acquired for Williams's personal gain and profit.

**Count 20: Illegal Possession of Machine Gun (Wendt)**

In Count 20, the Government simply alleges that Wendt "knowingly possessed a machine gun" and aided and abetted the same. It identifies the machine gun, which Wendt purchased for the use of the City of Adair Police Department, and the date, which seems to refer to a machine gun shoot in Adair. However, it provides nothing more and the discovery does not elaborate on it either. The Government does not explain why or how the exceptions to that statute, 18 U.S.C. § 922(o)(2), do not apply here, but it will have to prove at trial why Wendt did not have legal authority to possess it and how and to whom he allegedly aided and abetted the illegal possession of the machine gun. When Wendt requested additional information from the Government on this count regarding a bill of particulars, the Government pointed us to paragraphs 23, 31, and 32 of the Indictment and three ATF reports. Those paragraphs of the Indictment simply allege that the machine gun in question was purchased on a law letter for official use and responsibilities of the Adair Police Department and yet Wendt charged members of the public to shoot it on a machine gun shoot on April 16, 2022. Wendt does not have copies of the ATF reports.

### B.     Violations of Rule 16 and *Brady*

On January 5, 2022, Defendants appeared pursuant to a summons at their initial appearances and arraignments. Prior to the arraignment, both Defendants filed Notices of Defendant's Rule 16 Discovery Request for discovery under Fed. R. Crim. P. 16(a)(1)(A) through (F). At the arraignment, the Court set a deadline of January 13, 2023 for the production of Rule 16 materials and issued the following Rule 5 Order:

> **Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to disclose to the defendant all exculpatory evidence-that is, evidence that favors the defendant or casts doubt on the United States' case, as required by *Brady v. Maryland,* 373 U.S.83 (1963) and its progeny, and ORDERS the United States to do so. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to,**

**exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court.**

Prior to the deadline, Wendt made it abundantly clear to the Government that he was requesting copies of all Rule 16 materials. On January 25, 2023, by agreement of the parties, the Court entered an extensive Stipulated Protective Order that more than protects all the discovery in this case.

At every turn, the Government has fought to produce discovery to which Wendt is entitled without any valid justification. Specifically, the Government has committed the following Rule 16 violations:

1.  The Government failed to produce copies of any additional Rule 16 materials until January 31, 2023. This is despite Wendt being entitled to copies of the discovery, Wendt's requests confirming he wanted copies, the Government having the materials for several months, and it being easy for the Government to produce the copies. The Government's only excuse was that it could not identify what constituted Rule 16 materials and wanted to be an obligation on Wendt to request the specific materials. However, this was clearly disingenuous because not only is that not the law, *see infra*, but the Government refused to produce anything beyond Wendt's interview and his non-existent criminal record.

2.  The Government did not produce copies of the search warrant documents until February 2, 2023.

3.  The Government did not produce the case materials of the cooperating witness against him until February 2, 2022.

4.  The Government did not produce recordings of the Adair City Council meetings until February 2, 2022.

5.      The Government did not produce Wendt's phone download from August 31, 2022

until February 27, 2023.

6.      The Government did not produce Wendt's phone download from January 11,

2023 until March 9, 2023.

7.      The Government still has not produced Former Councilman Gettler's phone

download despite imaging it over two and a half months ago.

Likewise, the Government continues to fail in its obligations under *Brady*. Additional

examples of these violations are set forth below in the specific requests for discovery.

**C.      Violations of Fed. R. Crim. P. 26.2**

On January 10, 2023, pursuant to detention proceedings set forth in 18 U.S.C. § 3142, we

had a hearing before the Court. The Government had filed an affidavit of Special Agent Kohler

in support of its position. In addition, the Government relied on numerous proffers of testimony

during that hearing. Yet, the Government failed to provide any discovery at all to Mr. Wendt in

connection with those proceedings despite our requests. The Government also proffered to the

Court what other witnesses as well, and without providing their prior statements. Mr. Wendt was

entitled to discovery under Rule 26.2 including on any declarants under Fed. R. Evid. 806.

In particular, the Government revealed that there is a significant difference between the

testimony of one witness and what Special Agent Kohler reported in his 302 interview

memorandum. However, that 302 was not provided to us nor were Special Agent Kohler's notes,

text, emails, or other prior statements. In fact, the witness even brought up the issue of the notes

with the Government and the Government indicated that Special Agent Kohler's notes had been

destroyed.

In addition, the Government proffered to the Court that Wendt had lied about making any money on the firearms transactions to the Mayor and that was how he got reinstated. That was a complete misstatement of what occurred in that meeting. Moreover, the Government did not provide the discovery of that hearing to the Defendant until three weeks later. And the Government was not even supposed to have access to that hearing under *Garrity*.

### D.     Violations of Privileges

The Government has violated attorney-client privilege as well as his privilege under *Garrity*. Specifically, the Government accessed and reviewed Wendt's email account and phone despite knowing he had counsel in other matters. In addition, despite knowing termination was a possibility for Wendt, the Government refused to take any precautions whatsoever and accessed and listened to closed-door City Council meetings on the status of Wendt's employment, in clear violation of Iowa Code 80F and *Garrity*. Even after listening to these recordings, the Government still failed to identify the issue.

Nonetheless, again, the Government fails to produce discovery in a timely manner so Wendt can adequately address these violations. To this day, the Government continues to refuse to produce discovery of critical evidence to determining the scope and nature of the *Garrity* violation. The Government even tried to preempt a proper determination by the Court on this issue by filing a premature motion to allow the Government to review materials it had already reviewed before providing appropriate discovery to Wendt.

In addition, the Government has violated the Search Warrant process by failing to identify privilege issues and obtain approval for a filter process. Instead, the Government has completely forsaken any obligation to do either a review for what is actually responsive to the search warrant within the device or account as well as any sort of privilege review. The

9

Government's disregard for Defendants' rights then continued with the Government disclosing Wendt's and Williams's email accounts to one another before Williams's counsel alerted them to the problem. This was especially callous given the Government knew Williams's email account had not only privileged material on it but privileged communications between Williams and his counsel on this very case.

###    E.    Unconstitutional Restrictions on Discovery

While committing these discovery violations, the Government has also imposed unconstitutional restrictions on discovery to leverage Defendants into signing an order that, on its face, restricts Defendants' discovery rights.

First, the Government has attempted to restrict Defendant's discovery rights by trying to impose a Stipulated Discovery and Protective Order ("SDPO"). A recent case has caused counsel to have concerns about the SDPO. Specifically, the concerns in that case included whether the Government was identifying and producing all the discovery it was obligated to produce in discovery from fellow members of the prosecution team. Hence, counsel conducted further analysis of the SDPO and attempted to address those concerns with the Government. The Government either failed to or refused to address those concerns, and so counsel did not sign the SDPO in this case. However, counsel did agree to, and the Court entered, an order with all the protective order provisions that exist in the SDPO. Nonetheless, the Government continued to seek to impose with SDPO over the objection of counsel. Counsel's concerns with the SDPO have now been confirmed by the Government's actions.

Second, one of the ways the Government has attempted to force Defendants into signing the SDPO is by refusing to provide copies to Defendants and only allowing them to review

discovery in the U.S. Attorney's Office under significant restrictions. Those restrictions include the following:

8.     Defense counsel must make an appointment in advance to review discovery that the Government has the unilateral ability to permit or deny.

9.     Appointments are limited to hours the U.S. Attorney's Office is open which are standard government office hours ending at 5:00 p.m. and excluding weekends and holidays.

10.     The office is located downtown Des Moines at the courthouse annex adjacent to the federal courthouse.

11.     There are only two rooms made available for the review of discovery and they are multi-purpose rooms that are also used for witness interviews.

12.     These rooms are inside the U.S. Attorney's Office are accessible from the lobby through one door and the rest of the interior of the U.S. Attorney's Office through another door. While in the room it is possible to hear what is going on outside the room, including specific words; as such, it is presumed people outside the room could hear what is being said inside the room under certain circumstances. Counsel is not suggesting anyone from the U.S. Attorney's Office would eavesdrop, but it could certainly be possible for someone passing by the room to accidentally hear something said in the room.

13.     The Government requires all people reviewing discovery to sign in and sign out and, as such, keeps a record of everyone who is reviewing discovery, when they are reviewing it, and the specific times they reviewed it.

14.     The Government creates a record of what discovery is reviewed by the defense. This is done by a function of the Government's computer provided for the review of discovery maintaining recent folder and document memories whereby the Government could readily see what defense counsel is looking at during each visit. While this is likely unintentional, it still exists and is difficult to avoid seeing. In fact, the memories make it possible for subsequent defense counsel to not only see what was accessed but also access the document itself.

15.     The Government has informed defense counsel that they may not make copies of the discovery, take pictures or images of it, or even take verbatim notes of it.

*See* Declaration of Attorney Nicholas A. Klinefeldt, **Exhibit A**.

The practical effect of these restrictions imposed by the Government includes, but is not limited to, the following:

16.     The Government controls when, where, and how defense counsel reviews discovery.

17.     When defense counsel reviews discovery, it must do so in the Government's office where it keeps track of who is reviewing the discovery, when they are reviewing it, how long they are reviewing it, what they are reviewing.

18.     Defense counsel cannot privately discuss the discovery nor may they meet with their client with complete privacy while reviewing it. In addition, to the extent the defendant has counsel from out of the state involved, as he does here, that counsel may not review the discovery at all.

19.     Defense counsel may not review the discovery or use it in any way to prepare its case or any conduct any motion practice during nights or weekends – or without

advanced approval from the Government – and must then travel down to the U.S. Attorney's Office to do so.

20.    Defense counsel may not use the discovery in court in any way. For example, defense counsel cannot use the documents at hearings or trial to conduct cross-examination, refresh a witness's recollection, or address an issue with the Court.

21.    Defense counsel may not use the discovery in any filings as exhibits or even be able to cite the relevant verbatim text.

*Id*.

### F.    Lack of Good Faith

Wendt has attempted to address these issues with the Government since the beginning of this case. The most recent correspondence between counsel is attached. *See* **Exhibits B, C**. In addition, also attached is the Government's most up to date discovery index showing what it states has been provided and when. *See* **Exhibits D, E**. As demonstrated, the Government continues to refuse to meaningfully engage and respond to these issues.

It is not the defendant's burden or obligation to be making discovery requests. It is the Government's burden to duty to determine what materials are subject to disclosure under its discovery obligations. *United States v. Mazzulla*, 932 F.3d 1091, 1100 (8th Cir. 2019). "[I]f the government fails to disclose relevant material, it acts at its own peril." *Id*. (internal quotations omitted). In short, "the duty to produce such material arises even if the defense request is non-specific or if there is no request at all." *United States v. Pou*, 953 F.2d 363, 366 (8th Cir. 1992) (quoting U*nited States v. Agurs*, 427 U.S. 97, 107 (1976)). Yet the Government consistently fails to produce discovery and attempts to shift its obligations onto the Defendant.

The Government has committed numerous discovery violations, has done so to its advantage, has doubled down on this problem with privilege violations, and continues to try to make the problem worse by trying to strong arm Wendt into signing a discovery agreement that would further restrict his right to discovery. Wendt hereby incorporates the many issues addressed in his recent filings.

## III.    ARGUMENT

The Government's approach to discovery in this case violates the law, DOJ policy, the recommendations of the American Bar Association, and the prosecutors' ethical duties under the Iowa Rules of Professional Conduct.

Fortunately, the question of what is ultimately produced by the Government in discovery is up to the Court. This is important because what we are ultimately talking about is Wendt's Fifth and Sixth Amendment rights under the United States Constitution. Further, it is tremendously difficult – if not impossible – to figure out what is subject to production prior to trial. As recognized by the DOJ policy, it is extremely difficult if not impossible to discern precisely what a Defendant's theory of defense will be at trial or what may end up being potentially exculpatory or impeachment information. And the case law addressing these issues do so after the fact. Moreover, it is difficult to identify discovery that was not disclosed, especially after the case is over. Lastly, another reason why case law does not exist on discovery management issues, such as providing copies, is because the DOJ policy – and practice of most U.S. Attorney's Offices – is not to play games with it. *See generally United States v. Jones*, 620 F.Supp. 2d 163 (D. Mass. 2009) (addressing discovery issues and collecting cases).

### A.      The Court's Authority

The Court has broad authority to remedy these violations and put measures in place to prevent further violations. The Court has broad authority to address discovery disputes per Rule 16 and Rule 5. As set forth in the Court's Rule 5 Order, and per Rule 16, the Court has broad authority to resolves discovery disputes. The Court has authority to hold hearings, conduct *in-camera* reviews of potentially discoverable information, and require the production of discovery. As the Government has previously conceded, this authority includes ordering copies of materials beyond Rule 16. *See* Govt.'s Proposed Stipulated and Discovery Order, ¶¶ 2, 13.

### B.      The Government's Discovery Obligations

#### 1.      The Law

Wendt has a right to discovery in this case based on several sources. First, he has a right to discovery pursuant to the Federal Rules of Criminal Procedure and certain federal statutes. *See* Fed. R. Crim. P. 16, 26.2; 18 U.S.C. § 3500. Second, Wendt has certain Constitutional rights to discovery, including as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), for any information that could be exculpatory for the defendant or is in any way inconsistent with the Government's theory of the case; and *Giglio v. United States*, 405 U.S. 150 (1972), for any information that could be used to impeach a law enforcement officer or any other witness for the Government. Importantly, these rights pertain to anything in the possession, custody, or control of not just the United States Attorney's Office but the entire ***prosecution team***, including but not limited to any law enforcement agency or task force that assisted the Government in this case. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

2.      **DOJ Policy**

It is axiomatic that the Government's obligations to produce discovery in a criminal case are so broad that federal prosecutors are directed by the Department of Justice not only to produce essentially everything in their possession, custody, or control of the prosecution team, but to do a thorough job reviewing a law enforcement agencies investigative files to ensure the prosecution team is meeting its obligations. *See* DOJ Justice Manual, 9-5.000. Further, not only is DOJ policy an appropriate reference authority but it is the Government's own policy and certainly the Government cannot take the position that it may violate its own policy. Simply put, the Government's discovery obligations are so vast and complex that it is essentially impossible to attempt to slice and dice what it may withhold and what it must produce – and the DOJ policy is a recognition of that fact. Moreover, because there are no depositions in a federal criminal case and trials occur less than 5% of the time, the need for a proper record and vigorous judicial oversight is paramount.

Specifically, DOJ policy requires the following:

First: "The policy explicitly requires the disclosure of exculpatory and impeachment information beyond that which is constitutionally and legally required. Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999)." *Id*. at 9-5.001(C).

16

Second: A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime." *Id*. at 9-5.001(C)(1).

Third: "A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence – including but not limited to witness testimony – the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime." *Id*. at 9-5.001(C)(2).

Fourth: "Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." *Id*. at 9-5.001(C)(3).

Fifth: "While items of information viewed in isolation may not reasonably be seen as meeting [these] standards [], several items together can have such an effect. If this is the case, all such items must be disclosed." *Id*. at 9-5.001(C)(4).

In addition, the DOJ policy recognizes "due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial." *Id*. at 9-5.001(D).

Also, "[w]here it is unclear whether evidence or information should be disclosed, prosecutors are encouraged to reveal such information to defendants or to the court for inspection

*in camera* and, where applicable, seek a protective order from the Court. By doing so, prosecutors will ensure confidence in fair trials and verdicts." *Id*. at 9-5.001(F).

Finally, nowhere does DOJ policy allow for the type of severe restrictions employed in this case for routine discovery. Quite the opposite: DOJ policy only recognizes that restrictions on discovery would be appropriate for information such as "classified or otherwise sensitive national security material." *Id*. at 9-5.001(D).

### 3.   ABA Report

Recently, the American Bar Association released a report entitled, "2023 Plea Bargain Task Force Report." *See* https://www.americanbar.org/groups/criminal_justice/committees/ taskforces/ plea_bargain_tf/. One of the Task Force members was Jonathan Wroblewski, Director of the Office of Policy and Legislation, Criminal Division, U.S. Department of Justice. That report contained 14 Principles and Principle 9 was as follows: "Defendants should receive all available discovery, including exculpatory materials, prior to entry of a guilty plea, and should have sufficient time to review such discovery before being required to accept or reject a plea offer." The report further provides: "To promote the integrity of guilty pleas and ensure that such pleas are constitutionally sound, defendants should receive and have time to review all available discovery, including both inculpatory and exculpatory information." *Id*. It confirms: "Defendants must also have sufficient time to review discovery materials with counsel." *Id*. And it underscores "the right to receive *Brady* material should never be waivable." *Id*.

### 4.   Ethical Duty

Lastly, a prosecutor in the State of Iowa has an ethical duty to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense. . . ." Iowa R. Prof. Conduct 32:3.8.

### C.      Discovery Requests

Wendt requests the immediate production of *all* the discovery identified below:

#### 1.      Copies of All Discovery

We request the production of *copies* of all discovery to which Wendt is entitled, including but not limited to all the discovery currently in the possession, custody, and control of the prosecution team. Wendt notes that it is not a defendant's burden or obligation to make these requests. *See infra*. By doing so here, Wendt is in no way waiving any discovery rights or the entitlement to discovery that is not identified below. Nor does Wendt waive the right to identify additional discovery in the future. Further, to the extent the Government believes materials may contain potential exculpatory or impeachment information, it is incumbent it to seek a protective order. Alternatively, the Court should allow Wendt to make copies of the discovery made available at the U.S. Attorney's Office.

First, much of this discovery could be considered *Brady* material, and the restrictions the Government has placed on it are untenable. As set forth above, it is next to impossible to determine prior to trial what could be potentially exculpatory or lead to exculpatory evidence. That is why the DOJ policy is to simply provide it all unless there is a good reason to withhold a particular piece of discovery and then to apply proper measures such as *in-camera* review or a protective order. Further, the limitations the Government has put on the discovery prevents its effective use at trial and renders any disclosure insufficient. For example, the limitations prevent Defendants from using any of the discovery as exhibits either at trial or in hearings leading up to trial; and they prevent the use of any investigative reports or grand jury transcripts on cross-examination for purposes such as refreshing a witness's recollection, asking any sort of specific questions about it, referencing it to see if the testimony was consistent, etc. Frankly, this is the

same type of burden-shifting the Government attempted with Rule 16 materials – i.e., making the Defendants prepare their own disclosures. However, even then, the Government engages in petty gamesmanship that prevents an adequate disclosure of relevant information. Providing the disclosures is ultimately the Government's duty and any sort of restriction on copying the precise wording is insufficient and inconsistent with DOJ policy.

Second, the case is already rife with examples of why having copies of discovery matters. One example is the Garrity issue Wendt is addressing in a separate filing. Another recent example just came up. Wendt recently requested the Government to provide a bill of particulars for Count 20 and, in the event the Government believed the discovery provided sufficient notice, to identify that discovery. The Government responded that it believed paragraphs 23, 31, and 32 of the Indictment and ATF ROIs 14, 15, and 69. However, the ATF ROIs are among the discovery the Government has not provided us copies of in this case. Hence, Wendt literally must go down to the U.S. Attorney's Office to obtain proper notice of the charges against him. Simply put, there is no real or meaningful way Wendt can prepare for trial with all of the restrictions the Government has placed on the most significant discovery in this case.

Third, this is a simple issue with a simple solution to provide copies of discovery. The Government has already offered to provide copies and has submitted the matter to the Court for a determination of the manner in which to do so. Defendants have already agreed to a very onerous protective order the Government requested, and the Court has already acknowledged that the Government cannot limit the Defendants' discovery rights. Now, there is simply no excuse.

## 2. Phone Download

We request the production of the download of Former Councilman Gettler's phone. This phone is subject to Rule 16 as well as *Brady*. The Government's explanation for not producing

this phone is because Wendt has asserted it may contain information protected by *Garrity*. While

Former Councilman Gettler was not on the Adair City Council at the time of the raid, it is

possible that he could have information on his phone that is protected – for example, if a current

City Council member relayed to him something Wendt told the Council in response to its

inquiries. It is impossible to know without seeing it. Regardless, the fact that the Government

may not be able to view it yet is not a valid basis to withhold it. Wendt is entitled to it and it is

within the Government's possession, custody, or control.

### 3.   All Substantive Case-Related Communications

We request the production of all substantive case-related communications, including but

not limited to: (1) communications between agents; (2) communications between agents and

prosecutors; and (3) communications between agents and/or prosecutors and potential witnesses.

DOJ policy expressly recognizes that "'[s]ubstantive case-related communications may contain

discoverable information. "'Substantive' case-related communications include factual reports

about investigative activity, factual discussions of the relative merits of evidence, factual

information obtained during interviews or interactions with witnesses/victims, and factual issues

relating to credibility." DOJ Justice Manual *Id*. at 9-5.002, Step 1 (B)(5). Further, DOJ policy

emphasizes that these communications are discoverable regardless of their format, including

conversations. *Id*.

These communications are subject to production under Rule 16, Rule 26.2, *Brady*, and

*Giglio*. Without waiving any objections and without having access to them or certain other

discovery, we assert that these are subject to production because they are critical to the

preparation of a defense, they were implicated by the Government's assertions in the January

10th hearing, and we believe they would be important exculpatory and impeachment information

to the extent they are inconsistent with law enforcement reports and/or the Government's theory
of the case.

The Government has recently acknowledged that Special Agent Etnier has been
exchanging text messages with the Mayor. While the Government has provided a limited
disclosure of those text messages, that is not sufficient. Moreover, one of the prosecutors has
exchanged email communications with the City Attorney, though there has been no disclosure
from the Government of those communications. Specifically, it is our understanding this
occurred as part of obtaining *Garrity*-protected information. Additionally, there is a clear record
of witnesses disagreeing with Government reports and the Government intimidating witnesses. It
would therefore seem likely that email or text communications exists between prosecutors and
agents regarding contemporaneous recitations of the facts. Likewise, there are likely email
communications with the ATF NFA Division regarding Wendt. Given all that has occurred in
this case, it is imperative that any refusal to provide texts and emails themselves should be
monitored via *in-camera* review. Moreover, it would only be logical that the agents are
exchanging emails or texts with other witnesses.

### 4.    Agent Notes

We request all notes of Special Agents Kohler and Etnier in connection with the
interviews they have conducted in this matter. DOJ policy explicitly requires: "Agent and
prosecutor notes and original recordings should be preserved." DOJ Justice Manual *Id*. at 9-
5.002, Step 1 (B)(8). Further, the Court has now ordered that such notes be preserved. Dkt. #17.
First and foremost, there has already been much disagreement about the facts and what was
actually said in interviews versus what was reported by the agents. In fact, even one of the grand
jury witnesses testified that he questioned what was in the agent's notes. Further, the

Government has attempted to intimidate witnesses in this case. As such, not only are there critical disagreements about what has been said in interviews, but there is evidence that the Government is attempting to shape the witnesses' statements going forward. The Agent's notes could be critical in determining what was actually said in these interactions and the evolution of any version of what the Government now purports to be their statements. These notes should be produced now as they may lead to other evidence and/or be exculpatory or impeachment information in and of themselves. In the alternative, and at a minimum, the notes should be subject to an *in camera* review. However, Wendt would respectfully submit that the only real way to discern what the notes say is to allow counsel to question the Agent about it on the stand.

### 5.    ATF NFA Division Communications and Documents

We request any and all communications and documents possessed by the ATF NFA Division related directly or indirectly to Wendt. These communications and documents should include, but not be limited to, any knowledge of the ATF concerning the facts or representations that the Government claims were relevant to the approval of machine gun transfers in this matter; the approval or denial of machine gun transfers related to Wendt; and communications with or related to Mr. Wendt.

The prosecution team here includes the ATF NFA Division. *U.S. v. Laden*, 397 F. Supp. 2d 465, 481 (S.D.N.Y. 2005) ("[I]t is clear that the investigating case agents on a particular prosecution are part of the prosecution team; their possession of producible material is imputed to the prosecutor regardless of his actual knowledge.") (citation omitted); *U.S. v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001) (finding the U.S. Marshal's Service was part of the prosecution team "even if the role of the Marshal's Service was to keep the defendants in custody rather than to go out on the streets and collect evidence.").

Further, "[a]lthough the Government's disclosure obligations are most frequently discussed in terms of a prosecutor's duty, [. . .], other agencies involved in the criminal justice system bear substantial responsibility for mandated disclosures." *U.S. v. Laden*, 397 F. Supp. 2d 465, 483-84 (S.D.N.Y. 2005) (citing *United States v. Bufalino*, 576 F.2d 446 (2d Cir. 1978) (strongly criticizing the FBI for destroying tapes containing conversations between witness and defendant and finding sanctions will normally be imposed where the destruction of evidence is deliberate).

In addition, "[a]s a matter of law, the prosecution is 'deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.'" *United States v. Bundy*, 968 F.3d 1019, 1037 (9th Cir. 2020) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (holding that a *Brady* violation occurs "when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor' "); *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (explaining that prosecutors are responsible for turning over "information known to other agents of the government" of which the prosecutor did "not know but could have learned")); *Smith v. State of Florida*, 410 F.2d 1349, 1351 (5th Cir. 1969) (stating "it makes no difference if the withholding is by the prosecutor or by officials other than the prosecutor").

In *United States v. Bundy*, the Ninth Circuit dismissed the defendant's indictment where the government failed to turn over *Brady* information in discovery, rejecting the government's argument that the information was only in the possession of the FBI. *Bundy*, 968 F.3d at 1039. "[T]he FBI's decisions not to provide the information are imputed to the prosecution" *Id.* at 1040-41. The Fourth Circuit also addressed this issue in *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964):

Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure.

[. . .] The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused.

*Id.*; *see also Liggins v. State*, No. 3-885 / 12-0399, at *8 (Iowa Ct. App. Nov. 6, 2013) (quoting *People v. Gennardo,* 539 N.E.2d 400, 409 (Ill. Ct. App. 1989) ("*Brady* imposes a continuing duty on the prosecutor to furnish defense counsel with information favorable to the defendant and that duty is in no way altered by the prosecutor's ignorance of such information in the possession of officers involved in the investigation and prosecution of the case against the defendant.")).

Here, the duty to disclose is on the Government is broad and certainly includes the ATF NFA Division. It is a member of the prosecution team and, even it was not, the U.S. Attorney's Office and ATF clearly have the practical ability to obtain the information. Alternatively, Wendt hereby requests the Court's permission to issue a Rule 17 duces tecum subpoena to the ATF NFA Division for the production of documents and a custodian witness for a hearing on this issue prior to May 15, 2023. A FOIA request would be denied under 5 U.S.C. § 552(c)(1) as the information is the subject of a criminal investigation and impractical given the time limitations any way.

The Government cannot be allowed to obtain information from NFA, use them as a resource, have them testify at trial, act like they are a member of the prosecution team, and then totally deny Wendt the opportunity to obtain information from them. Further, this is a unique case because it puts the regulatory system on trial to demonstrate the materiality of the alleged

false statements. In addition, the case is even more unique because (1) Wendt was in a unique situation as dealer and chief and (2) the allegations here occurred while Wendt was being investigated by the ATF. Further, with respect to Count 20, the Government's theory appears to be that even as Police Chief and for machine guns he purchased for the police department, it would be illegal for Wendt to allow members of the public to shoot them. We believe this to be contrary to the law as well as ATF guidance and practice.

At a minimum, the Government should be required to produce the following:

22.     All documents from the ATF including but not limited to any branch, division, field office, office, etc. regarding Wendt;

23.     The ATF NFA Division's guidance regarding machine gun transfers;

24.     Any communications between Wendt and the ATF NFA Division regarding machine guns;

25.     Any internal communications within the ATF NFA Division or between the ATF NFA Division and a third party that related directly or indirectly to Wendt;

26.     Any guidance or knowledge of the ATF NFA Division regarding machine gun shoots or the ability of police departments or law letter holders to allow others to fire the machine guns;

27.     Information held by the Government regarding the ownership or use of machine guns in local police departments;

28.     Information held by the Government, including the ATF NFA Division, of any FFL SOT other than Wendt also being a law enforcement official authorized to write law letters;

29.     The denial by ATF of any transfer of machine guns based on the ATF
        determining that the machine gun was not appropriate for use by the requesting
        law enforcement agency, the size of the town, the number of law enforcement
        officers;

30.     Any benefit received by Wendt regarding machine guns and the ATF NFA
        Division's knowledge or approval of that benefit as well as its knowledge or
        approval of other FFL SOTs receiving similar benefits; and

31.     All impeachment information including, but not limited to, Marcum and the
        counts and allegations concerning him.

**D.      Request for Record and _In Camera_ Review**

Given the Government's pattern of discovery violations and flagrant disregard for
Wendt's rights and help to ensure justice is carried out here, the Government should be required
to answer questions and appear at an evidentiary hearing. Further, to the extent there is any
question about whether the Government is obligated to produce the requested discovery, it
should be submitted in camera for the Court to determine whether it should be produced. This is
also necessary for any appeal record in this case.

**E.      Sanctions**

Finally, the Government should be sanctioned for its conduct in this case. To be clear,
Wendt is not requesting that any individual prosecutor be personally sanctioned. Rather, Wendt
is simply requesting the enforcement of Rule 5. Specifically, Wendt requests that the Court hold
an evidentiary hearing, order the production of discovery, and, where appropriate, impose
evidentiary sanctions or dismiss this case depending on its findings. Immediate judicial oversight
of this process is very much needed.

## IV. CONCLUSION

In conclusion, Wendt respectfully requests that the Court: (1) hold a hearing and make an appropriate record with the Government; (2) impose any appropriate sanctions; and, if the case is not dismissed, (3) order the Government to produce the above-identified discovery.

Dated: April 19, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
*Nick.Klinefeldt@faegredrinker.com*
*Rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR DEFENDANT WENDT***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of April, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Paulette Ohnemus*

US.356855277.01