IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

|                              |   |                              |
|------------------------------|---|------------------------------|
| UNITED STATES OF AMERICA,    | ) |                              |
|                              | ) | Criminal No. 4:22-cr-199     |
| v.                           | ) |                              |
|                              | ) | GOVERNMENT'S RESPONSE        |
| BRADLEY EUGENE WENDT,        | ) | TO WENDT'S MOTION TO         |
|                              | ) | COMPEL DISCOVERY AND         |
| Defendant.                   | ) | REQUEST FOR SANCTIONS        |
|                              | ) |                              |

The United States responds to Defendant Wendt's Motion to Compel Discovery and Request for Sanctions, Dkts. 128, 128-1.

## I.    Status of discovery

The parties have discussed the status of discovery at length in prior filings and the government will not rehash that timeline here.  Wendt has been provided with copies of all discovery materials obtained by the government in this case other than: (1) investigative reports; (2) witness statements; and (3) grand jury transcripts.[1] *See* Dkt. 86 at 1-2.

Contrary to Wendt's statement, the government has not "[a]t every turn . . . fought to produce discovery"  Br. at 7.  The government has repeatedly offered to provide copies of all materials with a discovery and protective order and has filed a motion to that effect on February 1, 2023, which remains pending. Dkt. 73.  The government has also made available for in-office review the investigative reports,

---

[1] Wendt has not been provided with a copy of co-defendant Williams' email account, pending a privilege review.  The government has sought court-approval for its proposed review.  The government does not read Williams' email account to be the subject of Wendt's motion to compel.

witness statements, and grand jury transcripts – none of which Wendt is entitled to under Rule 16.  Where Wendt has identified an item that was inadvertently not copied or is subject to disclosure under Rule 16, the government has immediately corrected the error.[2]  The government has traded dozens of discovery-related emails and letters with Wendt's counsel.  *See, e.g.*, Def. Ex. C; Dkt. 114, Gov. Ex. 2.

The government has made a good faith effort to explain the basis for its discovery-related decisions and invited Wendt to provide the government with authority for his requests.  Wendt has largely provided no such authority, and he has again failed to do so here.  Rather, Wendt has made sweeping claims that the government has violated the discovery rules, department policy, ethical obligations, and his constitutional rights, while never contending with the law.

## II.    Wendt's complaints

The government will not recite and respond to each of Wendt's many alleged discovery violations.  It responds as necessary below.

### A.    The timing of disclosures

Wendt generally complains about the timeline of initial discovery disclosures. Because Wendt did not sign the standard stipulated and discovery order, discovery was made available to him in accordance with Rule 16.  As such, on January 13,

---

[2] For example, the government intended to produce Wendt's August 31 phone extraction on a thumb drive with his email account.  The extraction was inadvertently left off that drive, despite being included on the discovery inventory provided to Wendt's counsel. When the government learned that the phone extraction was inadvertently left off the drive, it was provided to Wendt the same day. The phone itself (from which the extraction had been taken) was previously returned to Wendt within days of its seizure.

Wendt was provided copies of his criminal history and statement to law enforcement, under Rule 16(a)(1)(A) and 16(a)(1)(D). All other discovery materials – including those well beyond what was required for Rule 16 disclosure – were made available to Wendt for review in-office that same day. That included materials governed by Rule 16(a)(1)(E), which were available for inspection and copying. Wendt was also provided with a discovery index, which included all materials being produced (including those in-office).

The government advised Wendt that it would copy any materials that he inspected and requested be copied, pursuant to Rule 16(a)(1)(E). Wendt declined to inspect any of the materials (except for a single visit on February 2 for 90 minutes), did not identify any materials he wanted copied by reference to the discovery index, and instead generically requested Rule 16 materials. On January 31 and February 2, the government provided Wendt copies of specific discovery materials the government inferred Wendt to be requesting based upon his generic demands.

On February 2, the government also produced a copy of the entire investigative file for an uncharged co-conspirator.[3] That disclosure – of which Wendt now complains – contained extensive materials to which Wendt would not be entitled under Rule 16, including nearly 60 investigative reports.

Finally, as discussed below, the government has not produced former city councilmember Jeremy Gettler's phone extraction because of Wendt's ongoing and vague suggestion that the phone may contain "privileged" materials.

---

[3] This witness is not a "cooperator," as Wendt describes, because the witness has not received any benefit.

## B.     The government's statements at January 10 hearing

Wendt takes issue with the government's reference to an agent affidavit and grand jury testimony during the January 10 hearing on his release conditions. Wendt's complaint appears to be that the government referenced materials that were not provided to him during the hearing, purportedly in violation of Federal Rule of Criminal Procedure 26.2. First, Wendt assumes that Rule 26.2 applies to proffered information.  Rule 26.2(a) states, in relevant part: "*After a witness other than the defendant has testified on direct examination*, the court . . .  must order an attorney for the government . . .  to produce . . . any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Thus, the rule is expressly conditioned on witness testimony.  No witness testified at the January 10 hearing—the government simply proffered information to the Court.  The government could find no authority for Wendt's position that the government must provide witness statements on which it based proffered information.

Even assuming Rule 26.2 applies to a party's proffered statement, the rule didn't apply to the January 10 hearing.  Wendt's description of the January 10 hearing as "pursuant to detention proceedings set forth in 18 U.S.C. § 3142" is a plain attempt to bring Rule 26.2 into play.  *See* Fed. R. Crim. P. Rule 26.2(g)(4) (applying this requirement to a detention hearing under Rule 46(j)).  But the January 10 hearing was not a detention hearing.  Wendt had already been released on conditions; the January 10 hearing was held on an appeal of the release condition that prohibited him from possessing guns.  Rule 26.2 did not apply.

## C.    Purported privilege violations

Wendt accuses the government of *Garrity* and attorney-client privilege violations. The former will be addressed at length in response to Wendt's Motion to Suppress, Dkt. 127. The latter have been addressed at length in the government's Motion for Privilege Protocol (Dkts. 114, 114-1) and reply to that motion (Dkt. 121). A few salient points are worth repeating.

First, Wendt claims that the government has "fail[ed] to produce discovery in a timely manner so that Wendt can adequately address the violations." Br. at 9. This is a complaint Wendt has repeated throughout his filings and correspondence. But the government has disclosed all discovery materials currently in its case file. Wendt is simply unhappy about how he must review a narrow swath of those materials (the investigative reports and witness statements).

Second, where the potential for attorney-client protected information pertinent to this case has existed, the government has taken steps to conduct a privilege review. That was only applicable to the January 11 phone extraction, for which the government has requested the Court approve a privilege protocol. Wendt's Facebook, email, and August 31 phone extraction were all obtained before he knew about this investigation. They could not contain attorney-client communications about this case. Wendt has taken the incredible position that where it is possible that a target was previously represented in some unrelated capacity, a filter review for those possible communications – with unknown attorneys about unknown matters – must be conducted on any email account, social media account, or phone extraction.

Despite that unorthodox position,  the government told Wendt it would happily filter out any such communications if he provided the names, domain addresses, and phone numbers of any attorneys with whom he had communications.  Dkt. 114-1; GX 2. Since that request over two months ago, Wendt has continued to refuse to identify any attorney with whom he has had privileged communications.  Nonetheless, even without a showing of any kind that the Facebook account, for example, contains attorney-client communications, the government has asked the Court to approve a filter review protocol and ceased any review of the Facebook account, email account, or August 31 phone extraction. That's hardly a "flagrant disregard" of Wendt's rights. Br. at 27.

Finally, Wendt alleges the government "callous[ly]" gave Wendt a copy of Williams' email account. Br. at 10.   The government never provided a copy of Williams' email account to Wendt.  This false allegation has been repeatedly made, and the government has repeatedly set the record straight.  *See, e.g.*, Dkt. 122, p. 2.

### D.    Unconstitutional restrictions on discovery

It is true: the U.S. Attorney's Office has business hours.  It is located downtown.  It requires visitors to sign in.  But contrary to Wendt's hyperbole, these are not "unconstitutional restrictions" on his ability to review materials not even subject to disclosure under Rule 16.

At this time, Wendt must review investigative reports, witness statements, and grand jury transcripts at the U.S. Attorney's Office.  He has copies of everything

else.[4]  These materials – investigative reports, witness statements, and grand jury transcripts – are not even subject to disclosure under Rule 16(a)(2)-(3), barring other legal obligations like *Brady*, *Giglio*, or the *Jencks* Act.  *See United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993) ("Fed. R. Crim. P. 16(a)(2) authorizes the government to refuse discovery of reports, memoranda or other government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case prior to trial.") (cleaned up); *United States v. Robinson*, 439 F.3d 777, 779-80 (8th Cir. 2006) ("Reports, memoranda, or other internal government documents created by a government agent in connection with the investigation or prosecution of the case are immune from discovery.") (cleaned up). Further, in 2013, Rule 16(a)(2) was specifically amended to "make[] it clear that a defendant's pretrial access to books, papers, and documents under Rule 16(a)(1)(E) remains subject to the limitations imposed by Rule 16(a)(2)." Fed. R. Crim. P. 16, advisory committee note 2013.

Not once in his 28-page brief does Wendt acknowledge Rule 16(a)(2)-(3).  It is not unconstitutional to require Wendt to review these materials at the U.S. Attorney's Office when he is not entitled to them at all.  The government finds it hard to believe that these restrictions are so burdensome that Wendt's counsel has only been able to spend 90 minutes on one occasion to review the in-office materials.

### III.   Wendt's discovery requests

Wendt makes numerous discovery requests beyond the government's disclosure of the entire, current case file.  Br. at 19-28. At the outset, the government

---

[4] As discussed above, Wendt has not been provided with Williams' email account, pending a privilege review.

reiterates its knowledge of and compliance with discovery obligations under Rule 16, *Brady*, *Giglio*, and the *Jencks* Act.[5]   However, Wendt often interprets these obligations more broadly than the law provides.  For example, Wendt says that "much of this discovery[6] could be considered *Brady* material" and therefore he is entitled to it.  Br. at 19.  He is wrong.  *Brady* is not a rule of discovery.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."); *United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012).  And Wendt's "right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  So, to the extent Wendt argues that he should have unfettered access to, for example, the NFA Division's internal documents or the agents' emails, he is mistaken.  *Id.*  ("Defense counsel has no constitutional right to conduct his own search of the [government's] files to argue relevance.").

Further, while Wendt generally discusses the law and rules governing discovery, he rarely bothers to apply this law to any specific request.  Instead, the government is left to anticipate – and the Court is left to discern – on what authority

---

[5] Wendt also extensively cites Department of Justice policies in support of his discovery requests.  But internal DOJ policies "confer[ ] no substantive rights on a criminal defendant." *United States v. Larsen*, 427 F.3d 1091, 1094 (8th Cir. 2005). Wendt's interpretation of DOJ policy, even assuming it is correct, is not relevant here.

[6] As he has in many other filings and correspondence, Wendt repeatedly uses the phrase "this discovery" or "the discovery" without specifically identifying the materials he is referring to.  In this context, the government understands the phrase "this discovery" to refer to all requested materials that Wendt identifies in pages 19 through 28 of his brief.

Wendt relies for his broad discovery requests. The government has done its best to identify this authority and respond below.

### A.      Copies of all discovery materials

Wendt requests "*copies* of all discovery materials to which Wendt is entitled." Br. at 19 (emphasis original). But, again, he doesn't grapple with Rule 16(a)(2)-(3). He is not "entitled" to the investigative reports, witness statements, or grand jury transcripts at all under Rule 16, let alone copies of them.

To the extent any of the in-office discovery contains *Brady* or *Giglio* material, the government has complied with those disclosure obligations by simply disclosing these materials to Wendt. Wendt points to no authority that dictates the manner of disclosure of these materials or suggests that the government must provide copies of these materials to satisfy its obligations under *Brady* or *Giglio*.

To the extent any of the in-office discovery contains materials subject to Rule 26.2 and 18 U.S.C. § 3500 (*Jencks* Act), copies will be provided to Wendt at the appropriate time – that is, after the witness testifies on direct examination about information contained in the prior statements. *See* Fed. R. Crim. P. 26.2 (requiring disclosure after a witness testifies on direct examination); 18 U.S.C. § 3500(b) (same). Wendt's complaint that the timing of that disclosure doesn't give him adequate opportunity to prepare for a witness, impeach a witness, or refresh a witness's recollection is a complaint about the law – not about the government's manner of disclosure. And, in any event, the Court may grant Wendt a recess at trial so he can "examine the statement and prepare for its use." Fed. R. Crim. P. 26.2(d).

Again, the government has repeatedly offered to provide copies of these materials immediately – over three months ago – with the district's standard discovery and protective order.  Wendt has declined.

### B.      Gettler phone download

Wendt requests the download of former city councilman Jeremy Gettler's phone, seized on January 11.  Br. at 20-21.  Wendt represents that the government's explanation for not previously producing this phone extraction is "because Wendt has asserted it may contain information protected by *Garrity*."  Br. at 21.  This is not accurate.  During prior correspondence, Wendt has vaguely alleged materials on the phone may be "privileged."  The government did not know – and repeatedly asked – whether Wendt was alleging there was some attorney-client communications on the phone or whether the allegations of privilege were confined to the purported *Garrity* issue.  *See* DX C, p. 2; Dkt. 114-2, GX 2 p. 5.  Until now, Wendt never clarified.

Because the government believed Wendt was alleging there were protected attorney-client communications between Gettler and an unknown attorney, the government has not accessed the phone extraction nor provided it to Wendt.  Wendt now appears to contend only that the Gettler phone may include *Garrity*-protected communications.  Given this stated position, the government will provide a copy of the phone extraction to Wendt (and codefendant Williams).

Even if the Court were to find Wendt made *Garrity*-protected statements, the government is dubious that the Gettler phone contains *Garrity*-protected information.  Wendt's example – that a current councilman may have heard a

*Garrity*-protected statement from Wendt and relayed that via text message to Gettler – is pure speculation. Nonetheless, in yet another gesture of good faith, the government will not review the Gettler phone extraction pending the Court's resolution of the *Garrity* issues. *See* Dkt. 127. Should the Court find Wendt made *Garrity*-protected statements, the Court can provide further guidance on how the government should review the Gettler phone extraction. The burden should be on Wendt to show any communications are, in fact, privileged.[7] *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020) ("[T]he party seeking to assert the privilege . . . has the burden of showing that the privilege applies.").

## C.   Substantive case-related communications and agent notes

Wendt requests production of all "substantive case-related communications, including but not limited to: (1) communication between agents; (2) communication between agents and prosecutors; and (3) communications between agents and/or prosecutors and potential witnesses." Br. at 21. He also requests "all notes of Special Agents Kohler and Etnier in connection with the interviews they have conducted in this matter." *Id.* at 22.

Initially, there is no question these communications and notes have been preserved.[8] The Court has ordered as much (Dkt. 62), while also recognizing that

---

[7] Because Wendt will have the Gettler phone extraction prior to the Court's ruling on the *Garrity* issue, Wendt should specifically identify to the Court the date, time, participants, and content of any communications that Wendt believes is subject to *Garrity* protection.

[8] Investigative notes were never destroyed, nor did the government ever indicate to any witness that they were. *See* Br. at 8.

"much of the requested information would likely fall outside the discovery parameters" under Eighth Circuit precedent. Dkt. 62, at 4.[9]  Notably, the Court *denied* defendants' request to make agent notes part of the government's discovery file. *Id.* Rather, the Court appears to have been ordering these materials to "be preserved in the event that a legitimate dispute arises in the future and the Court would need to review the preserved information to determine whether it may be discoverable." *Id.*  No legitimate dispute has arisen.

As with most of Wendt's requests, these are overly broad and not grounded in the law.   Wendt's expansive request regarding agent-to-agent and agent-to-prosecutor communications undoubtedly encompasses protected work product.  *See, e.g., Am. Oversight v. U.S. Dep't of Justice*, 45 F.4th 579, 591 (2d Cir. 2022) (collecting cases and noting that, in the FOIA context, prosecution memoranda, FBI reports, and investigator notes are protected by work-product privilege).  That's why Rule 16 expressly "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16 (a)(2); *see United States v. Fort*, 472 F.3d 1106, 1115  (9th Cir. 2007) (explaining that "Rule 16(a)(2) is often referred to as a 'work product' rule" and "extends beyond the work product privilege as defined in the civil context").  As the Eighth Circuit explained, Rule 16(a)(2) makes these internal government documents

---

[9] The Court noted at least one Eighth Circuit judge suggested that retaining handwritten notes is "the better practice."  (Dkt. 62 at 3, quoting *United States v. Leisure*, 844 F.2d 1347, 1360 n. 10 (8th Cir. 1988)).

"immune from discovery." *United States v. Robinson*, 439 F.3d 777, 780 (8th Cir. 2006) (quotation omitted).

The government reviewed the text and email communications between agents, agents / prosecutors, and agents / witnesses.  Where substantive, discoverable communications occurred, they were documented in a report and disclosed.[10]  Wendt concedes that the government disclosed an investigative report regarding text messages between Special Agent Etnier and a potential witness but contends "that is not sufficient."  Br. at 22.  He does not explain why.  The government also reviewed the notes taken by Special Agents Etnier and Kohler during interviews with potential witnesses.  *See* Br. at 22-23 (requesting production of these notes).  Based on the government's review, there are no material inconsistencies between the agents' notes and the investigative reports they generated for these interviews.

These disclosures are sufficient.  Where typewritten summaries are provided, and there is no material difference between the notes or communications and the typewritten summaries, there can be no requirement to disseminate the notes under *Jencks* or *Brady*.  *See United States v. Gruenewald*, 987 F.2d 531, 535 (8th Cir. 1993) (trial court conducted *in camera* review); *see also United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997) ("A defendant is not entitled to an agent's notes if the agent's report contains all that was in the original notes;" *in camera* review conducted.); *United States v. Brown*, 303 F.3d 582, 589-598 (5th Cir. 2002) (similar);

---

[10] Wendt alludes to an email exchange between the government and the Adair City Attorney.  Br. at 22.  That was a procedural back and forth about the city's compliance with a grand jury subpoena.  It is not apparent why Wendt believes these emails would be discoverable.

*but cf. United States v. Jewell*, 614 F.3d 911, 925-26 (8th Cir. 2010) (district court did not abuse discretion in failing to conduct *in camera* review of interview and field notes where defendant "did not present anything other than speculation that the documents he wanted the district court to inspect contained *Brady* material.").

To the extent Wendt implies that the agents' notes are subject to the *Jencks* Act with respect to the witness interviewed, he is wrong. The Eighth Circuit has concluded that an investigator's notes made during an interview with a witness do not qualify as a "statement" of the witness for purposes of the *Jencks* Act. *United States v. Wright*, 654 F.3d 833, 841-42 (8th Cir. 2008); *see also United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (declaring that *Jencks* "Act does not require disclosure of memoranda or general notes of witness interviews."). This means that an agent's notes of an interview are not *Jencks* Act material ("a statement made by said witness") unless there is a showing that the witness signed or otherwise approved them—a circumstance that is lacking here. *See United States v. Bolden*, 545 F.3d 609, 623 (8th Cir. 2008); *see also United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (similar). This is because "the purpose of the disclosure requirement is to assist the defense in cross-examining the witness who made the statement, not with questioning some other witness." *Id.* (quoting *United States v. New*, 491 F.3d 369, 377 (8th Cir. 2007)).

Wendt's apparent claim that communications and agent notes will qualify as *Brady* is unsubstantiated, if not sheer speculation.[11]   *United States v. Pou*, 953 F.2d

---

[11] Wendt's claim that there is a "clear record of witnesses disagreeing with government reports" (Br. at 22) is similarly unsubstantiated. Wendt's "clear record"

363, 366-67 (8th Cir. 1992) ("[m]ere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection."). Nonetheless, should the Court wish to conduct an *in camera* comparison of the notes, communications, and the typewritten summaries that have been made available to Wendt in discovery, the government has no objection.

### D.     ATF NFA Division[12]

Wendt requests production of "any and all communications and documents possessed by the ATF NFA Division related directly or indirectly to Wendt." Br. at 23. Again, this sweeping request is overbroad.  For example, throughout this request, Wendt requests asks for materials that are "related" to him, or even "indirectly related" to him.  *Id.* pp. 23, 26.  The government does not know what this means or what that would include.  So, as an initial matter, the government declines to make vague, undefined requests to of the NFA Division that would clearly encompass privileged work product, protected internal documents, or irrelevant and undiscoverable information.  *See, e.g.*, Br. at 26, ¶¶ 22, 23, 25-31.  The Court should similarly decline to issue a subpoena that includes these requests.

---

appears to refer to the unsubstantiated statement of a single witness that Special Agent Kohler managed to get the entire point of a short interview wrong.  Special Agent Kohler's notes of that interview – which the government has reviewed – indicate otherwise.

[12] Wendt repeatedly asserts that the ATF NFA Division is part of the "prosecution team."  The ATF NFA Division is the regulatory branch of the ATF, which operates independent of the enforcement branch.  The government does not address Wendt's assumption that the ATF NFA Division is part of the "prosecution team" because the response to Wendt's discovery requests does not depend on whether that's the case.

Wendt requests "any communications between Wendt and the NFA Division regarding machine guns." Br. at 26, ¶ 24. The government disclosed copies of all applications, law letters, and transfer paperwork regarding the machine guns that it alleges are part of the scheme. Where the ATF NFA Division supplied email communications between Wendt and the NFA Division as part of those transfer packets, copies were disclosed. The government does not understand the NFA Division – the entire regulatory branch – to have the ability to search its global email servers for communications with Wendt. The government will ask the individual examiners who reviewed, approved, or denied transfer paperwork to search for and provide any communications with Wendt.[13] If the government receives any materials responsive to that request, copies will be provided to Wendt (and Williams). The government notes that any email communications between Wendt and the NFA Division would have necessarily included Wendt's email accounts. Wendt, of course, has access to his own email accounts and has copies of the search warrant returns on those accounts. In other words, any communications that the NFA Division produces after a burdensome search is likely to simply produce duplicate emails to those Wendt already has.

Several of Wendt's requests ask for general information, guidance, or knowledge held by the NFA Division collectively. These requests are, again, overbroad. It is, for example, unclear how the government would obtain and disclose the general "knowledge" of the NFA Division. And, again, Wendt cites no specific

_____

[13] The government's request of the NFA Division is not a concession that he NFA Division is part of the prosecution team.

authority for these requests. *Brady* does not give Wendt the authority to rifle around in the annals of the NFA Division for unidentified exculpatory information. *Ritchie*, 480 U.S. at 59. To the extent any of these materials would be subject to disclosure under the *Jencks* Act, they will be disclosed at the appropriate time. 18 U.S.C. § 3500(a) (requiring disclosure after a witness testifies on direct examination at trial). To the extent Wendt contends these materials – assuming he can specifically identify them – are subject to disclosure under Rule 16, he should explain why. *See United States v. Jean*, 891 F.3d 712, 715 (8th Cir. 2018) (the defendant must show why requested documents are "material to the preparation of his defense" and this showing is "not satisfied by a mere conclusory allegation" (cleaned up)).

As to Wendt's request for "information held by the Government regarding the ownership or use of machine guns in local police departments" (Br. at 26), he already has that information. Special Agent Etnier conducted a survey of machine guns used in surrounding agencies and documented those findings in an investigative report, which was disclosed. When asked, the government specifically pointed Wendt to that report. Dkt. 128-4, DX C, p. 2. To the extent Wendt is requesting documentation of any and all machine guns owned or possessed by any "local" law enforcement office in the country, that request is overbroad and irrelevant.

Wendt requests "[a]ll impeachment information including, but not limited to, Marcum and the counts and allegations concerning him." Br. at 27. Wendt was provided a copy of the entire case file for that prosecution, far beyond what he would be entitled to under Rule 16, *Giglio*, or the *Jencks* Act. To the extent Wendt believes

there is something missing from that file or other discoverable impeachment information at this time, the government would gladly consider a specific request.

## IV.   Conclusion

Despite Wendt's claims, the government has produced copies of everything to which Wendt is entitled and made available for his review discovery materials beyond those required by Rule 16 or the *Jencks* Act, and it has complied with its obligations under *Brady*.  The government has also in good faith worked to resolve privilege concerns and discovery disputes short of court intervention.  Wendt's requests for additional discovery are overbroad and unsupported by the law.  The Court should deny his motion to compel and request for sanctions, consistent with the government's positions herein.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:   /s/  *Mikaela J. Shotwell*
Mikaela J. Shotwell
Ryan W. Leemkuil
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Mikaela.Shotwell@usdoj.gov
          Ryan.Leemkuil@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2023, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

___X__ECF/Electronic filing ____Other means

UNITED STATES ATTORNEY

By:  _/s/ Mikaela J. Shotwell_____