IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>  Defendant. | Case No: 4:22-cr-199<br><br>**REPLY IN SUPPORT OF WENDT'S MOTION TO COMPEL DISCOVERY AND REQUEST FOR SANCTIONS** |

Defendant Bradley Eugene Wendt ("Wendt") submits this reply to the Government's Response to Wendt's Motion to Compel Discovery and Request for Sanctions. In addition, Wendt hereby references and incorporates the related filings to this issue regarding the Government's request for discovery order (Dkt. #73 *et al.*); the privilege review (Dkt. #114 *et al.*); and suppression (Dkt. #127 *et al.*).

These filings, along with Wendt's motion here, highlight a clear and consistent pattern of the Government flagrantly disregarding Wendt's rights in this case. Something needs to be done immediately for Wendt to have any chance at a fair trial in this case. The Government's approach here has been to violate Wendt's discovery rights, execute unconstitutionally broad searches, and ignore any applicable privileges or protections. At a minimum, the resolution of these issues should begin with the production of discovery.

**I.   THE DISCOVERY PROBLEM**

There is a significant discovery problem in this case that is in desperate need of judicial intervention. Below, Wendt attempts to articulate the problem:

1

A.     **Scope Of Discovery**

As an initial matter, determining what is subject to discovery in a federal criminal case can be extremely difficult. However, the burden and responsibility is on the Government. It would be extremely problematic for the Government to attempt to withhold any discovery on the basis that it is not subject to production. Indeed, the Government has attempted to do so here and has proven it does not work.

The Government must produce evidence, regardless of its admissibility, that could be exculpatory either on its own or in the aggregate, or that is in any way inconsistent with the Government's theory of the case. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Court here has confirmed that *Brady* information includes "evidence that favors the defendant or casts doubt on the United States' case." *See* Rule 5 Order. In addition, the Government must produce impeachment information to the defense under *Giglio v. United States*, 405 U.S. 150 (1972). *Giglio* information is not just limited to impeachment information that is material to the defense. As the Department of Justice itself has acknowledged: "*It also includes information that either casts a substantial doubt upon the accuracy of any evidence – including witness testimony – the prosecutor tends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence.*" DOJ Justice Manual, *Giglio* Policy, 9-5.100 (emphasis in original). The Department of Justice also recognizes that the Government's *Giglio* obligations apply not just to law enforcement witnesses, but also to non-law enforcement witnesses and even Fed. R. Evid. 806 declarants. *Id*. The Government's *Giglio* obligations overlap with its obligations under the Jencks Act and Fed. R. Crim. P. 26.2 that obligate it to produce prior statements of a Government witness.

Rule 16 generally requires the Government to produce statements by the defendant and anything else that is material to preparing the defense except for law enforcement reports, witness statements, and grand jury transcripts. Fed. R. Crim. P. 16. As the Government has acknowledged, the Government's *Brady* and *Giglio* obligations trump any Fed. R. Crim. 16(a)(2) protections. Further, the Government must disclose that information, including specific language, in such a way as to allow the defendant to make "effective use of it." *See United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Such evidence is evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.") (internal quotations and citation omitted).

These obligations pertain to not just the U.S. Attorney's Office but to any law enforcement agency that is investigating or participating in the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). And they apply to not only what is in the U.S. Attorney's Office or law enforcement agency's possession or custody, but also to whatever is within its control. *Id.*

The Department of Justice has acknowledged this difficulty and accordingly set forth a policy that requires prosecutors to take a broad view of their discovery obligations and, essentially, produce everything that is not attorney work product unless there is a particularized special need to withhold a particular piece of evidence – in which case the DOJ then recommends the prosecutor consider submitting the material for in-camera inspection and/or seek a protective order. Many federal courts – up to and including the United States Supreme Court – cite DOJ policy as an authoritative reference. *See, e.g., Torres v. Lynch*, 136 S. Ct. 1619, 1629 n.9 (2016). Wendt previously set forth the details of that policy in his initial brief.

Lastly, a defendant cannot be expected to be able to identify what is subject to discovery. The United States Supreme Court has acknowledged this predicament by way of its admonition

that it is not the defendant's burden to identify *Brady* information; rather, it is the Government's constitutional duty to search out, identify, and produce this information. *See United States v. Bagley*, 473 U.S. 667, 681-82 (1985) (explaining it is the Government's burden to identify and produce *Brady* information whether the defendant makes a specific request, general request, or no request for it); *see also* Court's Rule 5 Order. The defendant does not have access to everything the Government has access to, has not been investigating the case as long as the Government, and does not know how exactly the Government plans to prove its case. It would be next to impossible for a defendant to determine what is exculpatory before trial. This is especially true when a defendant has to determine that in the aggregate. The defendant would be forced to determine not just whether one piece of evidence could make the difference, but whether different pieces of evidence together might make the difference. Even one piece of evidence may lead to a different defense or a different line of questioning with a particular witness. This predicament is compounded in a case such as this one where the volume of information is extensive and the Government refuses to provide copies of discovery.

   **B.**  **The Consequences Will Be Dire If Discovery Is Not Produced**

  The consequences of the Government failing to turn over discovery would be dire. To put it simply: If the Government gets it wrong, a defendant will likely have almost no way of knowing. Unlike in a civil case, there are no depositions where a party can ask questions of the relevant witnesses and double-check that it has received all discovery. Further, almost all criminal cases are resolved before trial. And even at trial, it is difficult to adequately explore whether all discovery has been provided because the defendant is questioning the witness in front of a jury. All of this means that there is no adequate mechanism for a defendant to find out whether they have received all the discovery to which they are entitled. And the stakes could not

be higher – unlike a civil case that is just about money, criminal cases involve a person's Constitutional rights and the real prospect of having their liberty taken away and being falsely imprisoned.

### C. The Government Has Already Committed Numerous Discovery Violations

The Government has already committed numerous discovery violations in this case. First, the Government has refused to produce discovery to which it admits Wendt is entitled by the deadlines imposed by Court order. Wendt has previously identified those seven violations in his initial brief. Since that time, the Government committed an eighth violation of Wendt's discovery rights: On April 24, 2023, the Government produced videos and pictures of a machine gun shoot (on which Count 20 is based) that it had for over a year and that it was required to produce on January 11, 2023. These are clear and blatant violations of the Court's orders.

The Government claims it did not produce Gettler's phone because it thought Wendt was asserting that it contained attorney-client privileged information. The Government misstates the communications to the Court. As the Court can see from the email exchange the Government cites, Wendt never claimed Gettler's phone contained attorney-client privileged information. Dkt. #114-2, Govt. Ex. 2, at 4, 8, 12. Wendt was very clear that he was only claiming Gettler's phone could contain *Garrity*-protected information if such information was shared with him by a current council member. The only attorney-client privilege claims Wendt made concerned Wendt's accounts and devices. *Id*. It makes no sense why Wendt would claim he was entitled to Gettler's phone if it contained attorney-client privileged information. Further, the Government's explanation is belied by litigation in this case over the privilege review protocol where it is clear Wendt was not claiming attorney-client privilege review for Gettler's phone. *See, e.g.*, Dkt. #119.

The Government has not produced a copy of a single piece of discovery on the basis of either *Brady* or *Giglio* (collectively referenced with their progeny simply as "*Brady*"). Yet there is a strong basis to believe that *Brady* materials, as well as additional Rule 16 materials, have not been disclosed. First, the Government's investigation of this case began based on a false and abandoned theory that Wendt was taking bribes to provide law letters. Second, the Government clearly was not initially aware that the City approved Wendt's purchase of machine guns. Third, the Government appears to not be aware of the ATF NFA Division's numerous communications with Wendt about the law letters. Fourth, as a matter of fact, even during the pendency of the Government's investigation, the ATF NFA Division granted Wendt a license to manufacture machine guns. Despite the Government's assertion to the Court on January 10th, this was not a license for which the ATF somehow had no right to deny. Fifth, the Government attempted to intimidate the witnesses in this case. However, Wendt should not be required to present every aspect of his defense to the Government to obtain the discovery to which he is nonetheless entitled. Nor is Wendt required to identify the specific documents that are being unlawfully withheld. The whole point is that Wendt does not know what the Government possesses. Further, the Government apparently does not even know what is in its possession, custody, and control with respect to the ATF NFA Division, and to the extent it does know, it misunderstands what it is obligated to disclose. Neither the Government nor Wendt know what could end up making the difference in his case.

### D. The Government Has Demonstrated A Strong Likelihood Of Continued Discovery Violations

The Government has indicated that it will continue to violate Wendt's discovery rights in multiple ways. First and foremost, the Government continues to misidentify its obligations. It attempts to portray the scope of its discovery obligations as being limited to Rule 16 and material already in the possession of the U.S. Attorney's Office. *See* Govt.'s Response, Dkt. #132, at 1 (describing the status of discovery as being that "Wendt has been provided with copies of *all discovery materials obtained by the government in this case* other than: (1) investigative reports; (2) witness statements; and (3) grand jury transcripts") (emphasis added). But the Government's discovery obligations go far beyond Rule 16 and extend to *Brady*, *Giglio*, *Kyles*, the Jencks Act, Fed. R. Crim. P. 26.2, and the Iowa ethical rules. Yet, the Government never addresses what it is obligated to provide under these other obligations. The Government does admit that *Brady*, *Giglio*, and the Jencks Act trump any exemptions to discovery provided by Rule 16(a)(2). *See* Govt.'s Response, Dkt. #132, at 7.

Second, the Government has continued to impose unconstitutionally restrictive limitations on reviewing any discovery in the U.S. Attorney's Office. These limitations amount to a failure to produce discovery because they do not allow Wendt to make "effective use of it." *See United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Such evidence is evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.") (internal quotations omitted). The Government has not attempted to refute or deny a single one of those restrictions. In fact, the Government has doubled down on these limitations by confirming that it is indeed tracking Wendt's review of the discovery. *See* Dkt. #133, at 11 n.3. Further, Wendt should not be obligated to review discovery twice: once to identify how the Government has violated his discovery rights, and once more when he receives

copies so he can use the discovery to defend himself (*e.g.,* printing it out, highlighting it, comparing with other notes and discovery, discussing it with his counsel in a private setting, using it in filings and court proceedings, etc.). More importantly, Wendt should not have his review of discovery monitored in this fashion. In other words, given the limitations the Government has placed on the discovery and the monitoring it is doing, it is not reasonable for Wendt to review it at the U.S. Attorney's Office.

   Third, the Government attempts to unconstitutionally shift the burden onto the defendant. Specifically, the Government continues to attempt to force Wendt to identify the discoverable information (even though this is clearly against the law) and then, if it does produce it, the Government produces it late in violation of the Court's Rule 16 deadline and Rule 5 Order in which the Court orders the Government to produce it. There can be no credible argument that any delay in producing discovery will significantly jeopardize Wendt's ability to prepare a defense.

   If the Court is going to allow the Government to play this dangerous and unnecessary game with Wendt's rights, then Wendt asks it to enforce serious consequences on the Government when the Government gets it wrong. Instead, the better approach is to acknowledge the difficulty and complexity of criminal discovery, make appropriate orders to ensure a defendant's rights are not violated, and then provide close monitoring of it – especially, where there is a record of abuse.

## II.     THE SOLUTION

The solution in this case is simple. The parties both agree that the Court has the authority to issue an order regarding the management and production of discovery, including the production of copies of discovery. Accordingly, Wendt proposes the following:

### A.     Modifications To The SDPO

The Government does not object to providing copies – and has provided a proposed order for the Court to order copies. *See* Dkt. #73. Wendt has previously identified how the Government's proposed order violates the law. *See* Dkt. #82. As such, the Court should simply make the necessary clarifications and issue the order. Specifically, the Court should issue an Order that does the following:

1. Provides the protective order protections requested by the Government;
2. Orders the Government to produce copies of all discovery;
3. Clarifies the Government's discovery obligations where it has gotten them wrong; and
4. Does not otherwise seek to modify either party's discovery obligations or rights.

As outlined in Wendt's previous filing, any additional unnecessary attempt to explain the nuances of discovery obligations or restate them is fraught with peril.

### B.     Additional Discovery

In addition to what the Government has already put into its "discovery file," the Court should order the production of documents from the ATF NFA Division. These documents are not protected by Rule 16(a)(2) because they were not "made . . . in connection with investigating or prosecuting the case." To the extent they are part of the prosecution team, they are deemed to be in the Government's possession. Regardless, to the extent they are not part of the prosecution

team, they are still within the possession, custody, and control of the prosecution team. In particular, the Government has the practical ability to obtain them and has acknowledged that fact.

The Eighth Circuit does not appear to have settled on a precise definition of "possession, custody, or control" but has defined it as either a "legal right" or a "practical ability" to obtain the information. *See In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *4 (D. Minn. Mar. 31, 2022); *see also Acosta v. La Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018) (deciding control without engaging in "legal right" or "practical ability" analysis). The Northern District of Iowa has used the terms interchangeably:

> Federal Rule of Civil Procedure 34(a) imposes an obligation on each party to produce requested materials that are within its "possession, custody, or control." Materials are "deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (emphasis added) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995)). For purposes of Rule 34, "[a] party does not need to have legal ownership or actual possession of documents, 'rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'" *New Alliance Bean and Grain Co. v. Anderson Commodities, Inc.*, No. 8:12–cv–197, 2013 WL 1869832, at *3 (D. Neb. May 2, 2013) (quoting *In re Hallmark Capital Corp.*, 534 F.Supp.2d 981, 982 (D. Minn. 2008)); *accord Wells v. FedEx Ground Package Sys., Inc.*, No. 4:10–cv–2080–JAR, 2012 WL 4513860, at *1 (E.D. Mo. Oct. 1, 2012); *Comas v. Schaefer*, No. 10–04085–CV–C–FJG, 2010 WL 2927280, at *2 (W. D. Mo. July 21, 2010).

*F.D.I.C. v. Dosland*, No. C13-4046-MWB, 2014 WL 1347118, at *5 (N.D. Iowa Apr. 4, 2014).

This case is part of a national effort by the DOJ, it uniquely falls within the ambit of the ATF NFA Division, and, regardless, the Government has charged Wendt with making false statements that are material to the ATF NFA Division's decision-making process. The Government cannot call the very agency that is taking the lead on investigating this case a victim; readily obtain and use documents from that agency; and then when it comes time to turn

over discovery, claim it does not have access. Further, this case was not an outgrowth of a report from the ATF NFA Division regarding concerns with Wendt. Rather, it was an outgrowth of a defendant in another case, Jonathan Marcum, cooperating with the Government and falsely claiming that he was in a scheme with Wendt to bribe Wendt for law letters – a theory that the Government has since abandoned.

### C. In-Camera Review

Lastly, the Government claims that it has reviewed all texts and emails with witnesses and that all discoverable information has been disclosed; it claims that all internal communications are flat-out immune from discovery; and, lastly, the Government claims it has reviewed all agent notes and that there are "no natural inconsistencies" and therefore nothing subject to discovery. However, the Government's duty to disclose goes beyond mere natural inconsistencies, and it is clear the Government is otherwise applying the wrong standard to its discovery determinations. The Government's obligation to produce discovery includes any exculpatory or other impeachment information, including any information that "favors the defendant or casts doubt on the United States' case." Court's Rule 5 Order. Likewise, to the extent internal communications contain exculpatory or impeachment information, that information must be disclosed as well. For texts and emails with witnesses, it is hard to imagine how those are not subject to discovery. Accordingly, based on the complete record of the Government's continued discovery violations and overall approach to discovery in this case, Wendt asks that this Court order these materials produced to the Court to create a record and for purposes of conducting an *in-camera* review.

### III. CONCLUSION

In conclusion, the Court should do the following:

1. Issue a modified version of the Government's proposed discovery order that:

    a. Provides the protective order protections requested by the Government;

    b. Orders the Government to produce copies of all discovery;

    c. Clarifies the Government's discovery obligations where it has gotten them wrong; and

    d. Does not otherwise seek to modify either party's discovery obligations or rights.

2. Order the Government to produce the ATF NFA documents, including but not limited to those previously identified by Wendt.

3. Order the Government to produce to the Court to make a record and for in-camera review the following: (a) all substantive case-related communications; (b) all texts and email communications with witnesses; and (c) all agent notes.

Dated: May 10, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
*Nick.klinefeldt@faegredrinker.com*
*Rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR DEFENDANT WENDT***

## **CERTIFICATE OF SERVICE**

 I hereby certify that on this 10th day of May, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Paulette Ohnemus*

US.357417700.01