IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:22-cr-199 |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEY EUGENE WENDT, and | ) | GOVERNMENT'S RESPONSE TO |
| ROBERT ALLEN WILLIAMS, | ) | DEFENDANTS' MOTION TO |
| | ) | SUPPRESS |
| Defendants. | ) | |
| | ) | |

The United States responds to Defendant Bradley Wendt's and Defendant

Robert Williams' Motion to Quash, to Return, and to Suppress. (Dkts. 135, 139).

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................. 2

   I.   The Facebook and email warrants satisfy the Fourth Amendment's
particularity requirement. ............................................................................ 2

      A.  The Fourth Amendment's particularity requirement................................. 2

      B.  Argument. ....................................................................................... 3

      1.     Attachments A and B are part of the warrants. ................................... 3

      2.     The warrants authorized the search and seizure of exactly what the
warrants said. ............................................................................ 5

      3.     The warrants particularly described the place to be searched and the
items to be seized. ...................................................................... 6

   II.  The execution of the Facebook and email warrants did not violate the Fourth
Amendment. .............................................................................................. 10

      A.  The government's use of the two-step execution procedure is proper under
Rule 41............................................................................................. 11

      B.  The government's current retention of materials from the email and
Facebook search warrants is not unreasonable............................................. 14

   III.  The Facebook and email search warrants authorized the disclosure and
seizure of contents of communications. ....................................................... 17

   IV.  Williams' Facebook warrant was supported by probable cause...................... 19

V.   Even if there are defects in the search warrants, good faith applies. ............ 22

VI.  The government has not recklessly and callously disregarded Williams'
attorney-client privilege by not reviewing his email account and asking the Court
to approve a filter review protocol. ......................................................................... 24

EVIDENTIARY HEARING ......................................................................................... 26

CONCLUSION............................................................................................................... 29

## INTRODUCTION

Williams asks the Court to suppress evidence obtained from two search warrants on his Facebook and email accounts, alleging a variety of purported defects with those warrants. Wendt joined.[1]

The search warrants – which incorporate the Attachments – particularly describe the information to be seized and were supported by probable cause. They plainly authorized the disclosure and seizure of communications. And they also implemented a recognized and routinely used two-step procedure for obtaining and reviewing electronically-stored information. The Court should deny the motion.

---

[1] Wendt specifically joined the motion with respect to Williams' argument about the Stored Communications Act. He also joined "to the extent the same issues arise in the search warrants pertaining to Wendt." That leaves the government with little direction about what – specifically – Wendt challenges and whether he joins in the arguments Williams makes in support of his motion. The government has done its best to discern what Wendt takes issue with and respond accordingly.

## ARGUMENT

**I.    The Facebook and email warrants satisfy the Fourth Amendment's particularity requirement.**

### A.    The Fourth Amendment's particularity requirement.

Search warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const., amend. IV. "The Fourth Amendment . . . does not set forth some general 'particularity requirement.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006). Rather, "[i]t specifies only two matters that must be 'particularly describe[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *Id.* The Supreme Court has "rejected efforts to expand the scope of this provision to embrace unenumerated matters." *Id.* The Court has, for example, rejected the notion that "search warrants also must include a specification of the precise manner in which they are to be executed." *Id.* (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)).

"Particularity prohibits the government from conducting general, exploratory rummaging of a person's belongings." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (quotation omitted). "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *Id.* "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010) (quotation omitted). "Whether a warrant fails the particularity requirement cannot be decided in a vacuum." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quotation and

alteration omitted). "The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *Id.*

### B.    Argument.

Williams raises multiple arguments attacking the particularity of the search warrants. These arguments, although distinct in some ways, largely proceed from the flawed premise that Attachments A and B are not part of the warrants. Accordingly, the government starts there before moving on to Williams' more specific arguments.

### 1. Attachments A and B are part of the warrants.

Williams declares it "obvious" that Attachments A and B "were not the warrant nor were they judicial orders." Williams Br. at 1 n.1. This is obvious, we're told, because the attachments "did not become Orders merely by being attached and oddly referenced in the warrant itself."[2] *Id.* In addition to being conclusory, circular, and without citation to legal authority, these statements are just wrong.

---

[2] Williams goes on to muse that the issuing Magistrate Judge acted as a "rubber stamp" and perhaps signed the warrants "without even reading the warrants" or "comprehending" them. William Br. at 1 n.1. These are just things Williams' counsel says. He appears to have no evidence to support them or a good faith basis to assert them. In connection with these baseless theories, Williams' counsel has previously issued subpoenas to the prosecutors on this case, and he later demanded via email to "interview" the issuing Magistrate Judge. (Dkt. 164.) As discussed below, the Court should not dignify these unfounded accusations with an evidentiary hearing.

Warrants can—and usually do—incorporate other documents by reference.[3] *See Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004). The particularity requirement, for example, "can be satisfied by including the items to be seized in an affidavit or attachment that is adequately referenced in the search warrant." *United States v. Hamilton*, 591 F.3d 1017, 1024 (8th Cir. 2010). That's precisely what these warrants did. The Yahoo warrant, for example, authorized the search of "the person or property described above," which in turn stated, "See Attachment A." The warrant then identified the property to be seized by stating, "See Attachment B."

This is standard incorporation language. The Eighth Circuit, for example, has specifically described the phrase "see attached affidavit" as "suitable words of reference" to incorporate an affidavit into a search warrant. *United States v. Curry*, 911 F.2d 72, 77 (8th Cir. 1990). If "see attached affidavit" is sufficient to incorporate an affidavit, then "See Attachment A" (or B) was sufficient here to incorporate those attachments into the warrants. *See Hamilton*, 591 F.3d at 1027 (describing "See Attached Affidavit" as "clear" language of incorporation). In short, "[t]here is no question that Attachment B was incorporated by reference in the search warrant." *United States v. Towne*, 997 F.2d 537, 548-49 (9th Cir. 1993) (addressing warrant

---

[3] To highlight the absurdity of this argument, it should be noted that this district's standard search warrant form is a fillable PDF document with a predefined amount of space to describe the property to be searched and the items to be seized. Williams' argument would seemingly require the government to include those items—in ever-decreasing font size—in their entirety, on the district's fillable PDF form. That makes no sense, of course, and that's why the warrants—and countless others issued by judges in this district and others on a routine basis—incorporate the attachments to which they refer.

that described the property to be seized as "See Attachment B"); *Sigillito*, 759 F.3d at 922 ("The search warrant described the property to be seized by reference to 'Attachment A.'"); *see also United States v. Beal*, 730 F. App'x 30, 33 (2d Cir. 2018); *United States v. Hanes*, 336 F. App'x 690, 692 (9th Cir. 2009). What's obvious, it seems, is that Williams is wrong. Attachments A and B are part of the warrants, and they must be read accordingly.

### 2. The warrants authorized the search and seizure of exactly what the warrants said.

With that out of the way, Williams' particularity arguments largely fall by the wayside. He says the warrants are invalid because Attachment B "was unsigned." Williams Br. at 4. It's true; the issuing Magistrate Judge did not personally sign every document incorporated by reference into the warrant. It's also irrelevant. As Williams' brief makes clear, there's no legal authority (he cites none) for the proposition that a magistrate judge must sign every piece of paper presented to her in connection with a warrant application. Williams repeats his claim that Attachment B "was not a judicial order." William Br. at 4. But again, he doesn't say why. It was plainly incorporated into the warrant, as courts have routinely held. To borrow Williams' terminology, he obviously doesn't like that, but that's the law.

Williams riffs on some ideas about the warrant being executed by an agent (correct, and normal) and Attachment B being an "unsigned description of items" (technically correct, but legally irrelevant). Williams Br. at 4. These statements, while true, have no apparent legal significance. The warrants were signed by a

Magistrate Judge, and the warrants incorporated the attachments. This is both normal and legal.

Williams pivots to perceived execution sins. The warrants, he says, were served on the service providers with Attachment B while "passing [them] off as a judicial order" when they were in fact "not a signed judicial order." Williams Br. at 5. Williams says that these were "bad warrants" and even the "model of incompetency." *Id.* The legal import of this isn't clear, as Williams doesn't provide legal authority. The Court should not "fix these bad warrants", (*id.*), because there is nothing to fix. The warrants are also described as a "mess" and "folly." (*Id.*)  The government doesn't think they're either of those things. But even if those were accurate characterizations, the Fourth Amendment doesn't turn on Williams' conceptions of competence. As relevant here, the Constitution speaks to particularity, and these warrants satisfied that requirement.

### 3. The warrants particularly described the place to be searched and the items to be seized.

Williams asserts that the government improperly seized "all of the emails." Williams Br. at 6. In doing so, Williams suggests that the government should have asked Yahoo for "remote access" to its email servers so the government could "search it remotely" and only access "a relevant portion" of the account and "seize targeted items." *Id.* True to form, Williams offers no legal authority for these contentions.

The warrants satisfied the Fourth Amendment's particularity requirement. Again, the amendment "specifies only two matters that must be 'particularly describe[ed]' in the warrant: 'the place to be searched' and 'the persons or things to

be seized.'" *Grubbs*, 547 U.S. at 97. There is no free-floating "particularity requirement," and warrants do not need "a specification of the precise manner in which they are to be executed." *Id.* But even if they did, the warrants here passed muster.

Take the Yahoo warrant, for example. It described the property to be searched as Williams' email account. *See* GX 1 at Attachment A. Attachment B, meanwhile, specified the items to be seized. *Id.* at Attachment B. Section I of that attachment listed the information to be disclosed by Yahoo. *Id.* And Section II listed the items to be seized by the government, including various items that constitute evidence of specified crimes like conspiracy (18 U.S.C. § 371), false statements in required records (18 U.S.C. § 924(a)(1)(A)), false statements to the government (18 U.S.C. § 1001), and illegal possession or transfer of a machine gun (18 U.S.C. § 922(o)). The attachment listed, for example, documents or communications about the purchase or transfer of machine guns, federal firearms licensees, law letters, invoices, and firearm demonstrations. The attachment also limited this information to a date range of January 1, 2018, to the present.

This warrant, and the others challenged by the defendants, "must be given a practical, rather than a hypertechnical, interpretation that is cabined by the purpose for which [they] issued." *Fiorito*, 640 F.3d at 347. It is clear from the attachments that the warrants authorized agents to search for and seize evidence related to the unlawful possession or transfer of machine guns and evidence of any false statements or conspiracy to unlawfully acquire machine guns. "Considered in light of the

illustrative list of items to be seized and the overarching purpose of the search," *id.*, these warrants were sufficiently particularized. *See United States v. Dockter*, 58 F.3d 1284, 1289 (8th Cir. 1995) (holding warrant was sufficiently particular where it "outlined several specific statutes" and "the particular items described in the warrant were narrowly tailored to the particular types of crimes [the target] was suspected of committing").

Williams' arguments to the contrary are unpersuasive. The warrants are not "defective" because they authorized a search without a date limitation. Williams Br. at 7. As an initial matter, the email and Facebook warrants authorized the seizure of items from January 2018 to the present. *See* GX 1 at Attachment B; GX 2 at Attachment B; GX 4 at Attachment B; GX 5 at Attachment B. Thus, it is not accurate to characterize them as lacking any date restriction. In any event, a temporal limitation is merely "*one indicia* of particularity," and "the complexity and duration of the alleged criminal activities may render a timeframe less significant than in a case that required a search for a small set of discrete items related to one or only a few dates." *United States v. Nejad*, 436 F. Supp. 3d 707, 729 (S.D.N.Y. 2020) (cleaned up). District courts in the Eighth Circuit have rejected the idea that "every warrant *must* include date restrictions in order to be facially valid." *United States v. Graham*, No. 08-251, 2009 WL 1066048, at *8 (D. Minn. Apr. 20, 2009).

As outlined in the indictment, this investigation concerned a pattern of Wendt and Williams unlawfully obtaining machine guns for years—in Wendt's case, as far back as 2018. The "degree of specificity required [in a warrant] necessarily depends

upon the circumstances of each particular case." *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985). When an investigation involves a prolonged scheme to defraud, the lack of a date restriction does not render a warrant insufficiently particular. *See Graham*, 2009 WL 1066048 at *8 (denying motion to suppress where warrant lacked date range and investigation involved "a multifaceted scheme of deception, forgery, and identity theft, lasting two years and involving several businesses"); *United States v. Burkhalter*, No. 4:18-CR-036, 2023 WL 2918775 (W.D. Mo. Apr. 12, 2023) ("Not all files on the LG [cell phone] are amenable to date-range limitations because this case involves a 'years-long drug conspiracy.'"); *see also United States v. Cobb*, 970 F.3d 319, 328-29 (4th Cir. 2020); *United States v. Palms*, 21 F.4th 689, 697-700 (10th Cir. 2021).

As part of his demand for greater particularity, Williams cites *Matter of Search of Info. Associated with Four Redacted Gmail Accounts*, 371 F. Supp. 3d 843 (D. Or. 2018). That decision, however, appears to be an outlier in its suggestion that law enforcement must ask service providers to filter materials for responsive records on the front end. Courts in the Second Circuit, for example, "have uniformly held that law enforcement need not rely upon an email host company or any other private party to sift through emails to determine what is relevant and that it may obtain a warrant to request all emails from an account." *United States v. Ray*, 541 F. Supp. 3d 355, 399 (S.D.N.Y. 2021) (collecting cases).

In the case of electronic evidence, there is a "practical need for law enforcement to exercise dominion over documents not within the scope of the warrant in order to

determine whether they fall within the warrant." *Id.* (quotation omitted). Expecting service providers to exercise this skill and discretion would impose an "enormous" burden on them "because duplicating the Government's efforts might require [the provider] to examine every email." *Id.* Additionally, service providers "would not be able to interpret the significance of particular emails without having been trained in the substance of the investigation." *Id.*; *see United States v. Burgess*, 576 F.3d 1078, 1094 (10th Cir. 2009) ("One would not ordinarily expect a warrant to search filing cabinets for evidence of drug activity to prospectively restrict the search to 'file cabinets in the basement' or to folders labeled 'Meth Lab' or 'Customers.'"). The Court should reject Williams' invitation to impose an impractical standard of particularity that exceeds any conception endorsed by the Supreme Court or Eighth Circuit.

## II.   The execution of the Facebook and email warrants did not violate the Fourth Amendment.

Williams also takes issue with the execution of the search warrants, specifically: the use of the routine two-step procedure, authorized by Federal Rule of Criminal Procedure 41(e)(2)(B), in executing the email and Facebook search warrants and the retention of non-responsive items after step two of the two-step procedure is complete. *See* Williams Br. at 5–10. These arguments fail.

As discussed below, Rule 41(e)(2)(B) expressly authorizes the government's use of the two-step procedure in executing the email and Facebook search warrants, and that process is constitutional. Williams' arguments about the retention of non-responsive items – in addition to being impractical – are premature. The government has not completed step two of the execution of the email or Facebook search warrants.

The email warrant execution has been stalled to facilitate the review of the account for potentially privileged materials. The timeliness of the government's review of the information it received from Facebook is still well within the confines of what is constitutionally reasonable.

### A. The government's use of the two-step execution procedure is proper under Rule 41.

Within Williams' meandering and conflated arguments challenging the breadth of and probable cause supporting the search warrants, he includes a general grievance against the use of the two-step procedure in executing the email and Facebook search warrants. The two-step execution procedure utilized here was proper under Rule 41(e)(2)(B). Further, the use of the two-step execution procedure is not constitutionally unreasonable.

Rule 41 was amended to set forth this "two-step" warrant process "to address an ever-present issue in our modern legal field—technology." *United States v. Moulder*, No. CR202327JRTBRT, 2022 WL 3644893, at *4 (D. Minn. Aug. 24, 2022); *see also* Fed. R. Crim. P. 41(e)(2)(B). The rule seeks to account for the fact that electronically stored records typically feature large amounts of data and information, which often makes it "impractical for law enforcement to review all of the information during execution of the warrant at the search location." *Matter of Search of Info. Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp. 3d 157, 165 (D.D.C. 2014) (internal quotation marks omitted) (quoting Fed. R. Crim. P. 41(e)(2)(B) advisory committee's note). To address these practical difficulties, Rule 41 permits "officers [to] seize or copy the *entire* storage

medium" at the outset and then engage in subsequent review. Fed. R. Crim. P. 41 advisory committee's notes (emphasis added).

That's exactly what has been done in this case. The email and Facebook warrants have been executed under the two-step procedure authorized by Rule 41(e)(2)(B). Section I of each Attachment B details the information to be disclosed by the service provider in the first step of the execution. GX 1, pp. 6–8; GX 2, pp. 6–8. Section II of each Attachment B details the information to be seized by the government in the second step of the execution. GX 1, pp. 8–10; GX 2, pp. 8–10.

It's not clear whether the defendants suggest the government has simply failed to comply with Rule 41(e)(2)(B)'s second step, or whether they contend two-step warrants are unconstitutional altogether. To the extent it's the latter, they are wrong. Whether a method of warrant execution is constitutional is a question of reasonableness. *United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness which governs [the] Fourth Amendment analysis . . . governs the method of execution of the warrant."). "'Two-step' search warrants are not per se unconstitutional." *Moulder*, 2022 WL 3644893 at *4. Notably, the Eighth Circuit has implicitly approved of the use of a two-step procedure under Rule 41, though it did not do so in response to a constitutional challenge to the procedure. *Id.* (citing *United State v. Beckmen*, 786 F.3d 672, 680 n.6 (8th Cir. 2015)).

And several courts that have explicitly considered the constitutionality of this two-step procedure have deemed it reasonable "provided that there is a valid warrant supported by probable cause." *See, e.g.*, *Matter of Search of Info. Associated with*

*[redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp. 3d 157, 165 (D.D.C. 2014); *United States v. Schesso*, 730 F.3d 1040, 1046 (9th Cir. 2013) (upholding government's seizure of electronic data for a subsequent off-site search where there was a fair probability that evidence would be found on the defendant's personal computer and other electronic devices); *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) ("The federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack." (cleaned up)).

Williams argues the government is "not doing step [two]." Williams Br. at 9. Correct: for several of these warrants, the government isn't currently doing step two. Because of concerns over privileged attorney-client communications, the government never looked at Williams' emails or a phone seized from Wendt in January 2023. It stopped looking at Wendt's emails and Facebook account. Yet, the defendants simultaneously accuse the government of failing to review the materials from the warrants while demanding it not review the materials from the warrants. As to Williams' Facebook account, the only pertinent warrant not subject to a privilege protocol, the government *is* currently executing step two. And, as explained below, the time it's taken to review this 20,000-page document and thousands of associated media files is well within constitutional bounds.

Finally, Williams contends the government should have gotten a "proper warrant for a remote access search" of the emails. Williams Br. at 9. It's unclear what Williams is talking about.[4] Williams asserts the government had the ability "to gain remote access to a relevant portion of the email account," search it "remotely," and seize the responsive items without seizing the entire email account data provided by Yahoo. *Id.* at 6. Despite the government's repeated explanation that the emails are not provided in this manner, Williams continues to misunderstand and misrepresent the way the information is produced in response to the search warrant. The government has no "remote access" to the information that is produced nor is the government able to search the information "remotely."

### B.   The government's current retention of materials from the email and Facebook search warrants is not unreasonable.

Williams argues the government is unconstitutionally retaining documents that are outside the scope of the email and Facebook warrants. Williams Br. at 9–10. Williams' argument fails on several fronts. First, Williams' argument is based entirely on the false assertion that execution of the search warrants is complete. *See id.* at 10. Second, at this juncture, any "delay" in executing the search warrants, which produced large amounts of electronic data and several of which are subject to a privilege review, is well within the confines of what is constitutionally reasonable.

---

[4] If Williams is talking about the remote search contemplated by Rule 41(b)(6)(A), it's inapplicable. That provision contemplates remote search of electronically stored information when the location is concealed through technological means. Here, the information sought was stored by Yahoo at a known location.

As explained above, the government stopped (or never started) step two of the warrant execution for Williams' email account and Wendt's Facebook and email account. The defendants are, of course, aware that the government is not reviewing those materials because they have specifically asked the government not to. The defendants cannot simultaneously ask the government not to review the information seized and to return non-responsive information. As discussed above, the second step is underway for Williams' Facebook account and the government has not unconstitutionally delayed that review.

"In the electronic data context, courts have consistently allowed "some delay," particularly due to the complexity of computer searches, and "they often restrict their analysis of the delay in executing . . . warrants [to] consider[ing] only whether the delay rendered the warrants stale." *See United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (citing *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)). As recognized in the 2009 Advisory Committee's notes to Rule 41(e)(2)(B), "[a] substantial amount of time can be involved in the forensic imaging and review of information." Fed. R. Crim. P. 41(e)(2)(B), 2009 advisory committee notes. Thus, "there is no basis for a 'one size fits all' presumptive period" of time for subsequent off-site review of electronically stored information. *Id.* "[T]here is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of a warrant." *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012); *see also United States v. Mutschelknaus*, 564 F.Supp.2d 1072 (D.N.D.

2008) ("Neither Fed. R. Crim. P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a government forensic examination after it has been seized pursuant to a search warrant."). Rather, the government need only "complete its review, i.e., execute the warrant within a 'reasonable' period of time." *Metter*, 860 F. Supp. 2d at 215.

Here, the government received the records responsive to Williams' Facebook warrant on December 21, 2022, *see* GX 2, p. 3, less than five months before this motion was filed. Williams' Facebook search warrant produced over 20,000 pages worth of records and thousands of media files. The government's continued review of those materials – and therefore continued retention of even materials that may not be responsive to the warrant – is reasonable. *See Metter*, 860 F. Supp. 2d at 215 ("Numerous cases hold that a delay of several months between the seizure of electronic evidence and the completion of the government's review of that evidence as to whether it falls within the scope of the warrant is reasonable."*); see also United States v. Burns*, 2008 WL 4542990, at \*5 (N.D. Ill. Apr. 29, 2008) (finding a ten-month delay for the completion of the government's review reasonable); *United States v. Sosa*, 379 F.Supp.3d 217, 222 (S.D.N.Y. 2019) (finding a fifteen-month and ten-month delay in reviewing the data extracted from two cellphones "within the bounds of reason," in light of "resource allocation"); *United States v. Gorrell*, 360 F.Supp.2d 48,

55 n.5 (D.D.C.2004) (finding a delay of ten months to be lengthy, but not so long as to "take the data outside the scope of the warrant such that it needs to be suppressed").[5]

The government's retention of the Facebook and email records pending a privilege protocol and within the reasonable time allowed for execution of the search warrants is not unconstitutional.

### III.    The Facebook and email search warrants authorized the disclosure and seizure of contents of communications.

The defendants argue the results from the Facebook and email search warrants should be suppressed because the records produced went beyond that authorized by the search warrant. Williams Br. at 1-2. Specifically, they argue that because the search warrants include a reference to § 2703(c)(1)(A) – the provision requiring disclosure of subscriber information – the warrants *only* authorize the disclosure and seizure of that information.[6]  *Id.* They are wrong.

Typically, Rule 41 permits district courts to issue search warrants only for property located in the issuing district. However, the Stored Communications Act specifically authorizes district courts who have jurisdiction over the offense being investigated to issue search warrants for property located in another district, in the

---

[5] The government recognizes that an ongoing, extensive delay where the government has "no plans whatsoever to begin review of th[e] data" has been found unreasonable. *See Metter*, 860 F.Supp.2d at 215. In this case, however, the government fully intends to review the Facebook and email productions and would be doing so right now if not for the need to conduct a privilege review on some of those materials.

[6] The defendants don't argue the government can't obtain, and the service provider can't be ordered to produce, contents of communications. Indeed, it's explicitly authorized by statute. 18 U.S.C. § 2703(b)(1)(A).

possession of a service provider covered by the Act. 18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(1)(A), and 2711(3). On each of the challenged warrants, the reference to § 2703(c)(1)(A) follows an asterisk (*) after the location of the property to be searched. It served only as an explanation—on the face of the warrant—of the court's jurisdiction to issue the search warrant for property outside the Southern District of Iowa, as a "court of competent jurisdiction." 18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(1)(A), and 2711(3). But this authority exists regardless of whether it's denoted on the warrant itself. The court was authorized by law to issue a warrant requiring the service providers to disclose contents of communications, and the reference to § 2703(c)(1)(A) did not cabin that authority.

The defendants' argument appears premised on the belief that the warrants do not include or incorporate Attachment B. But, as explained above, that belief is wrong. *See* Section I.B.1. And here, the warrants – when read in their entirety – clearly authorize the disclosure and seizure of contents of communications, in addition to subscriber information. Attachment B to the email search warrants describe the information to be disclosed by the service providers to include "contents of all emails associated with the Target Account, including stored or preserved copies of emails, text messages, or other communications sent to and from the account." GX 1, p. 7; GX 5, p. 7. Attachment B to the Facebook search warrants describe the information to be disclosed to include "all other records and contents of communications and messages made or received by the user." GX 2, p. 7 ¶ (f); GX 4, p. 7 ¶ (f). Both the email and Facebook search warrants authorize the government to

seize content, including communications pertaining to, among other things, machine guns and law letters. GX 1, p. 9; GX 2, p. 9 ¶ II.a.i; GX 4, p. 9 ¶ II.a.i; GX 5, p. 9.  Each affidavit specifically notes the statutes that authorize the Court's order of this information and the service providers' obligation to produce it with a search warrant, to include both § 2703(b)(1)(A) and § 2703(c)(1)(A). GX 3, p. 20 ¶ 53; GX 6, p. 57 ¶ 134. And each affidavit clearly requests a search warrant to require disclosure of contents of communications.[7] GX 3, p. 2 ¶ 4; GX 6, p. 2 ¶ 4.

In sum, the warrants made an unnecessary and incomplete reference to the jurisdictional authority for warrants issued under the Stored Communications Act. However, the government is not aware of any authority that requires a warrant itself to include the specific statute under which its issued. The warrants, taken in their entirety, plainly authorized the disclosure and seizure of communications and the court had the statutory authority to require that disclosure. They are valid.

## IV.    Williams' Facebook warrant was supported by probable cause.

Williams argues that the Facebook search warrant lacked probable cause.[8] Probable cause "is not a high bar," and only "requires a showing of facts that create a fair probability that evidence of a crime will be found in the place to be searched."

---

[7] As a practical matter, if all the government wanted or the court intended to authorize was the disclosure of subscriber information pursuant to § 2703(c)(1), the government would not have requested a search warrant. Subscriber information is routinely obtained with a grand jury or administrative subpoena. 18 U.S.C. § 2703(c)(2).

[8] Williams' probable cause argument straddles the line between actually challenging the probable cause to issue the warrant and challenging the particularity of the search warrant. The government has responded to the best of its ability based on the lack of clarity in Williams' brief.

*United States v. James*, 3 F.4th 1102, 1104 (8th Cir. 2021) (cleaned up). The "fair probability" standard does not require "even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (cleaned up). The probable cause assessment is based on the totality of the circumstances and requires an evaluation that is "commonsense" and "practical," rather than "hypertechnical." *Illinois v. Gates*, 462 U.S. 213, 230 (1983); *United States v. O'Dell*, 766 F.3d 870, 873-74 (8th Cir. 2014).

Williams claims there was not probable cause for his Facebook account because the "only specific nexus" to his Facebook account was "a single posting concerning a gun shoot that was being sponsored." Williams Br. at 8. Williams' recitation of that post in his motion is predictably minimal, but the import to the investigation was significant. The April 2022 posting advertised a machine gun shoot hosted by Williams Contracting, Williams' FFL, and BW Outfitters, Wendt's FFL. GX 3, p. 9 ¶ 20. It also indicated that cash and credit cards would be accepted from patrons wanting to shoot machine guns. *Id*. In a later post—which Williams does not discuss at all in his motion—Williams posted a photo of multiple machine guns to his Facebook account, asking "who's ready for some fun?!" *Id*. Based on the totality of the affidavit, appendix, and allegations, this post went to the heart of Williams' culpability: obtaining machine guns through false statements for his own personal use and enjoyment. Because Williams advertised the machine gun shoot on his Facebook account and solicited participation through that same account, there was a

fair probability that the account would include other evidence of his knowledge of and participation in that machine gun shoot.

Williams' argument, of course, also conveniently forgets the other evidence on the Facebook account. The affidavit states that a warrant was obtained on Wendt's Facebook account, and the affiant reviewed messages between Wendt and Williams. GX 3, p. 9 ¶ 21. In February 2019, Williams asked Wendt if he had "[f]igure[d] out how to get rich yet?" *Id.* Wendt responded, "Oh ya just bought 2 more mp5sd." *Id.* Wendt then told Williams, "Goin be machine gun Joe lol." *Id.* As explained in the affidavit, in this conversation, Wendt and Williams were discussing Wendt getting machine guns through (false) law letters and profiting from their eventual sale. *Id.* In other words, the affidavit documented a conversation between Wendt and Williams —on their Facebook accounts—about the exact scheme the government was investigating.

Williams also argues that there was no probable cause for the time frame requested (dating back to 2018) because Williams did not obtain his FFL until September 2020.[9] Williams Br. at 7-8. But again, Williams ignores the information contained in the affidavit. The affidavit stated that Wendt began lying to the ATF to obtain machine guns in 2018. GX 3, p. 3 ¶¶ 5-6. It also noted that Wendt had used law letters to transfer machine guns to other federal firearms licensees, including Williams, and that Wendt and Williams are friends. *Id.* at ¶ 7. The affidavit

---

[9] The fact that Williams obtained his FFL in August 2020 and began getting machine guns in September 2020 was disclosed in the affidavit. GX 3, p. 4 ¶ 9.

incorporated by reference a prior affidavit that detailed—across seventy-plus pages—Wendt's machine gun scheme dating back to 2018.[10] *Id.* at ¶ 8. The affidavit also described email and Facebook communications between Wendt and Williams about machine guns dating back to at least February 2019, when Wendt discussed his recent acquisition of two more machine guns. *Id.* at ¶¶ 10, 21. Although Williams himself may not have started getting machine guns on false law letters until September 2020, his conversation with Wendt in February 2019 is evidence of his knowledge of Wendt's scheme and probative of Williams' intent in joining the conspiracy.

The affidavit chronicled Williams' practice of advertising and communicating about machine guns on his Facebook account. There was a fair probability that evidence of that activity would be on his Facebook account; indeed, it already was.

## V.   Even if there are defects in the search warrants, good faith applies.

Finally, even if the search warrants contain defects, the good faith exception would apply. *See United States v. Leon*, 468 U.S. 897 (1984). Under that exception, even if a search warrant is defective or invalid, suppression is not warranted "if an officer (1) obtains a search warrant (2) that appears properly issued on its face and

---

[10] Williams says the affidavit only "seeks to incorporate" the prior affidavit. Williams Br. at 7 n.6. It didn't "seek" to do anything—it just did it. GX 3 at ¶ 8. Williams also says he's "not willing" to "interpre[t]" the warrant materials provided to him by the government in discovery. Williams Br. at 7-8 n.6. At Williams' request, the Court recently ordered the Clerk of Court to give Williams' counsel copies of all filings in various cases associated with these search warrants. Dkts. 143, 165. If Williams unearths something in those filings that he thinks is relevant to his motion, he can of course bring it to the Court's attention.

(3) executes it within its scope and with objective good faith reliance on the warrant's validity." *United States v. Eggerson*, 999 F.3d 1121, 1124 (8th Cir. 2021).

Each of those requirements is met here. The agents obtained these search warrants from a judge, and each is in proper form. Even if there were flaws with the particularity or statutory reference, none of the warrants were "so facially deficient that no police officer could reasonably presume the warrant is valid." *Eggerson*, 999 F.3d at 1124–26 (applying good faith exception despite defendant's claim that warrants to seize and search phone were impermissible general warrants); *see also Moulder*, 2022 WL 3644893, at *6 (finding that although "step-one" of the warrant execution was overbroad, a reasonably well-trained officer would not have known the warrant was invalid when "step-two" contained requisite particularity); *United States v. Good Voice*, 602 F. Supp. 3d 1150, 1171 (D.S.D. 2022) ("[E]ven if the search into the defendant's social media accounts was overbroad, law enforcement relied upon the issuing judge's warrants in good faith and thus evidence seized from [defendant's] Snapchat and Facebook accounts are not subject to suppression."); *United States v. Szczerba*, 897 F.3d 929, 939 (8th Cir. 2018) (finding the good faith exception applied where the warrant described the places to be searched and referred to the supporting affidavit which described the items to be seized); *United States v. Nejad*, 436 F. Supp. 3d 707, 732 (S.D.N.Y. 2020) (applying good faith even where an email search warrant contained no time limitation) *United States v. Burkhalter*, No. 4:18-CR-00036-1-BCW, 2023 WL 2918775, at *8 (W.D. Mo. Apr. 12, 2023) (finding the warrant authorizing the full extraction of phone data and describing the items to be seized,

without any date-range limitations, was sufficiently particular and, even if it was not, the good faith exception applied); *United States v. Palms*, 21 F.4th 689, 700 n.11 (10th Cir. 2021) (noting that even if the warrant's authorization to extract all cell phone data was unreasonable, it would affirm the district court's denial of the motion to suppress based on the good faith exception).

The Facebook and email search warrants weren't defective. But even if they were, they were not so obviously deficient that it would have been "entirely unreasonable" for the executing agent to rely on it. *See United States v. Ross*, 487 F.3d 1120, 1122-23 (8th Cir. 2007) ('Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." (cleaned up)). Accordingly, the good faith exception to the exclusionary rule would apply. *See Eggerson*, 999 F.3d at 1125-26.

### VI. The government has not recklessly and callously disregarded Williams' attorney-client privilege by not reviewing his email account and asking the Court to approve a filter review protocol.

Williams accuses the government of additional "folly" because it obtained a search warrant for his emails after the government knew he was represented by counsel. Williams Br. at 11. In doing so, Williams makes numerous statements that seem to have no legal significance. He says, for example, that "the Government has actually produced the emails in its discovery file." *Id.* That is correct. The government gave Williams in discovery the records provided by Yahoo in response to the search

warrant. The government's compliance with its discovery obligations is not evidence of a reckless and callous disregard for Williams' rights. It's the opposite.

Williams complains that the government has not engaged with his demands for the names of "all persons who have had access to the emails or how many copies have circulated and to whom." *Id.* The government has told Williams' counsel—repeatedly and for months—that *nobody* has reviewed the contents of his email account. That's why the government filed a motion asking the Court to approve a filter protocol—so that the government could *remove* any potentially privileged material before the prosecution team begins to review the account. *See* Dkt. 115 at 2; Dkt 111 at 1-2; Dkt 111-1.

The government has repeatedly told Williams' counsel that the Yahoo records were (1) produced to him in discovery and (2) provided to DOJ's Litigation Technology Service Center in South Carolina to be loaded into the review platform Relativity. If the Court approves the government's proposed filter protocol, or some other measures to facilitate this process, the government intends to use the Relativity platform to identify and exclude any potentially privileged materials. After that process is complete, the remaining items in the account would be made available to the prosecution team to review and identify materials responsive to the warrant. There is nothing unusual or nefarious about this relatively routine process. And at the end of the day, "so long as privileged material is actually kept from the investigative team, it doesn't matter whether the government's process for accomplishing that is

effective, ineffective, or somewhere in between: what matters is the result." *United States v. Manzi*, No. 4:19-CR-3094, 2021 WL 3206829, at *2 (D. Neb. July 29, 2021).[11]

## EVIDENTIARY HEARING

Williams has indicated he wants an extensive evidentiary hearing. There is no basis for an evidentiary hearing. The motion to suppress challenges the validity, particularity, and scope of search warrants. These are legal arguments, which do not require the Court to hear evidence.[12] *See United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) ("When the issuing judge relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." (cleaned up)); *United States v. Bryant*, 2021 WL 2533456, *4 (E.D. Ark. 2021) (denying a request for an evidentiary hearing where the motion to suppress challenged a search warrant's particularity).

Williams has indicated in prior correspondence, pleadings, and in the May 17 hearing before Judge Adams that he believes the issuing judge on his Facebook and

---

[11] Williams' brief includes a lengthy citation to *Harbor Healthcare System, L.P. v. United States*, 5 F.4th 593 (5th Cir. 2021) (per curiam). That case involved the government's pre-indictment retention of "thousands of privileged documents" for more than four years. *Id.* at 600. Here, of course, the government obtained the Yahoo production several months ago and has not reviewed it in any way pending the Court's approval of a filter protocol or some other judicially authorized review process. That's a far cry from the "callous disregard" the Court observed in *Harbor Healthcare*.

[12] Wendt acknowledged as much at the May 17 hearing on the privilege protocol and, while he joins Williams' arguments about the validity of the search warrants, Wendt did not appear to join the request for an evidentiary hearing.

email search warrants simply "rubber-stamped them," Dkt. 134, p. 5.[13]  Specifically, Williams has alleged that the issuing judge did not read or review the warrants. As a result, Williams appears to contend that *Leon* good faith would not apply because the issuing judge abandoned her neutral and detached role in issuing them. *Id.* So, to preemptively rebut this Court's reliance on good faith, Williams believes he is entitled to an evidentiary hearing on the circumstances of the issuing judge's review.

Williams has no good faith basis for this incredible allegation. There is no evidence in the record that would cast any doubt on whether the issuing judge reviewed the warrants prior to signing and Williams has provided no legal authority for the proposition that an unsupported accusation entitles him to an evidentiary hearing. *Cf. United States v. Sager*, 743 F.2d 1261, 1266 (8th Cir. 1984) (rejecting the defendants' contention that they should have an opportunity to show the issuing judge abandoned his neutral and detached role where there was no evidence of that); *United States v. Grant*, 490 F.3d 627, 633–34 (8th Cir. 2007) (rejecting the defendant's argument that the good-faith exception should not apply because the judge acted as a "rubber stamp" where defendant "presented no evidence" to suggest that the judge issued the search warrant "without appropriately performing his judicial role"); *United States v. Koerth*, 312 F.3d 862, 868-69 (7th Cir. 2002) (affirming a good faith finding where the defendant "failed to submit a shred of evidence . . . to substantiate his bold and speculative accusation" that the issuing judge did not review the search

---

[13] Although he joined Williams' motion, Wendt does not appear to join in Williams' belief that the issuing judge served as a rubber stamp for law enforcement.

warrant). It's difficult to fathom that Williams would be required to make a *prima facie* showing to challenge the veracity of the affiant's statements in the search warrant, *see Franks v. Delaware*, 484 U.S. 154 (1978), but need not make any such showing about the issuing judge's neutrality.

Williams' contention appears to be simply that the warrants were so defective that the issuing judge must not have reviewed them or else she wouldn't have signed them. But that argument has already been rejected:

> [The defendants] argue simply that the affidavit was so insufficient that any magistrate who would have acted upon it favorably must have been a rubber stamp. This is only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable, an argument that we have already rejected.

*Sager*, 743 F.2d at 1267. The Court should deny an evidentiary hearing on this baseless claim.

Finally, Williams has intimated that he wants an evidentiary hearing to investigate who has had "access" to his privileged attorney-client emails. The government has repeatedly said—to Williams' counsel and to the Court—that it has not reviewed Williams' emails and that no one from the prosecution team has been exposed to privileged emails. And, as explained above, Williams' privilege is not violated simply because his emails exist on a government server. It hardly seems a good use of time to parade witness after witness before the Court to confirm that they have not looked at Williams' emails. And more importantly, Williams makes no legal showing that this evidence is necessary to resolve any pending motion.

## CONCLUSION

The Court should deny the Motion to Quash, to Return, and to Suppress, without an evidentiary hearing.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:    /s/  *Mikaela J. Shotwell*
Mikaela J. Shotwell
Ryan W. Leemkuil
Assistant United States Attorneys

Shai D. Gonzales
Special Assistant U.S. Attorney

U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Mikaela.Shotwell@usdoj.gov
Ryan.Leemkuil@usdoj.gov
Shai.Gonzales@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

__X__ECF/Electronic filing ____Other means

UNITED STATES ATTORNEY

By: _ /s/ Mikaela Shotwell_____