IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal No. 4:22-cr-199 |
| v. | ) |
| | ) GOVERNMENT'S RESPONSE |
| BRADLEY EUGENE WENDT, | ) TO WENDT'S MOTION TO |
| | ) DISMISS |
| Defendant. | ) |

The United States responds to Defendant Bradley Eugene Wendt's Motion to Dismiss. Dkt. 211.

**TABLE OF CONTENTS**

Introduction ...............................................................................................................1

Background ..............................................................................................................2

Argument ................................................................................................................. 3

   I.    Counts 1 through 19 do not implicate the Second Amendment ...............................3

   II.   The "dealer sales samples" regulation does not restrict the authority of a governmental entity to obtain and possess machine guns .......................................6

   III.  Section 922(o) does not violate the Second Amendment .........................................9

   IV.  The indictment does not misstate the law .............................................................12

   V.   Laws prohibiting false statements and banning machine guns are not ambiguous .....................................................................................................14

Conclusion ............................................................................................................. 15

**INTRODUCTION**

Wendt's motion seeks dismissal of the charges against him based on a strange brew of half-baked legal arguments. But Wendt's motion ignores the fundamental nature of those charges. With one exception, which we'll get to, the charges against Wendt are not based on his mere possession of machine guns. Importantly, Wendt stands accused of *lying* to the federal government to obtain, possess, and transfer

1

machine guns. Wendt cannot seriously claim that a statute, much less the Second Amendment, puts lies beyond the reach of the federal criminal law. With the charges properly understood, Wendt offers no sound reason to dismiss Counts 1 through 19 of the Indictment, each of which accuses him of making or conspiring to make false statements.

That brings us to Count 20, which charges Wendt with illegally possessing a single machine gun (a M60 registered to the City of Adair) on a single date (April 16, 2022). That is when Wendt invited members of the public to pay him money to shoot this machine gun, which belongs—on paper, at least—to the Adair Police Department. Wendt's argument, it seems, is that once a Chief of Police, always a Chief of Police. In other words, Wendt appears to claim that if he had the authority as Chief of Police to *acquire* this machine gun for the Police Department, then he had the authority to do whatever he wants *with* the machine gun. That's not the law. 18 U.S.C. § 922(o) authorizes possession of machine guns only "by or under the authority of" a government entity. And to the extent Wendt thinks he was acting under the authority of the City of Adair when he solicited money from private citizens to shoot the City's machine gun, that's a fact issue for the jury to decide. And even after *Bruen*, § 922(o)'s general prohibition on machine guns comports with the Second Amendment. The Court should deny Wendt's motion to dismiss.

## BACKGROUND

The Indictment charges Wendt with twenty crimes. Count 1 charges him with conspiring to make false statements to and defraud the ATF. Counts 2 through 19

charge Wendt with substantive false statements crimes. And Count 20 accuses him of illegally possessing a machine gun—the Adair Police Department's M60—on April 16, 2022.

The essence of the charges against Wendt in Counts 1 through 19 is that he repeatedly lied to the federal government so that he could obtain, possess, and transfer machine guns. *See* Indictment ¶¶ 3-4, 16. The Indictment alleges that Wendt made false statements to the government to facilitate his acquisition of machine guns (1) for his own use and enjoyment; (2) for personal profit; and (3) for transfer to other federal firearms licensees ("FFL"). *Id.* ¶¶ 17-24.

Count 20 of the Indictment charges Wendt with illegally possessing a machine gun, in violation of 18 U.S.C. § 922(o). Specifically, the Indictment alleges that Wendt unlawfully possessed a U.S. Ordnance M60 machine gun on April 16, 2022. Indictment ¶ 51. The Indictment alleges that this machine gun was registered to the Adair Police Department, and that Wendt made the Department's M60 machine gun available to private citizens on April 16, 2022, if they paid Wendt to shoot it. *Id.* ¶¶ 23, 31-32.

## ARGUMENT

### I.   Counts 1 through 19 do not implicate the Second Amendment.

Wendt's motion broadly seeks dismissal of "the charges" against him. Dkt. 211 at 1. In his brief, Wendt initially acknowledges the nature of the charges against him. *See* Wendt Br. (Dkt. 211-1) at 3-5. His argument, however, returns to talk of "[t]he

charges" being dismissed. *Id.* at 6, 17. Wendt's failure to grapple with what he is actually charged with is telling.

Nineteen of the twenty charges against Wendt are not gun crimes. Except for Count 20, Wendt is not accused of unlawfully possessing a machine gun or doing anything with any firearm, for that matter. Wendt is charged almost entirely with false statement crimes. He is accused in Counts 1 through 19 of repeatedly lying to the federal government. That the object of Wendt's false statement crimes happened to be machine guns does not turn those crimes into "gun crimes" for purposes of the Second Amendment.

Wendt was not exercising Second Amendment rights when he made false statements to the government. The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. It does not protect a right to make false statements to and defraud the government. Because Wendt's conduct at issue in Counts 1 through 19 is not covered by the "plain text" of the Second Amendment, that conduct does not implicate Second Amendment analysis. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

A district court recently addressed a similar motion to dismiss. *See United States v. Scheidt*, No. 1:22-CR-49-HAB, 2023 WL 2865349 (N.D. Ind. Apr. 10, 2023). The defendant in *Scheidt* was charged with making false statements on federal firearm forms and to ATF agents, in violation of 18 U.S.C. §§ 922(a)(6) and 1001(a). *Id.* at *1. The defendant moved to dismiss those charges based on *Bruen* and a district

court decision purporting to apply *Bruen*.[1] *Id.* at 1. The court denied the motion to dismiss, explaining that the defendant in *Scheidt* was charged with crimes under "truthful information statutes" and not "firearms statutes." *Id.* at *3. In other words, the defendant was not "being prosecuted for possessing a firearm" but instead for "*lying* in the acquisition of the firearm." *Id.* (quotation omitted). Wendt's "right to bear arms is not addressed, much less infringed, by [18 U.S.C. §§ 371 and 1001], so the statute[s] cannot be unconstitutional under *Bruen*." *Id.* (collecting cases).

Numerous courts have made similar points about the interplay—and more precisely, the lack of one—between the Second Amendment and criminal laws prohibiting false statements. *See United States v. Soto*, No. SA-22-CR-JKP, 2023 WL 1087886, at *3 (W.D. Tex. Jan. 27, 2023) (holding that making false statements "falls outside the conduct protected by the Second Amendment"); *United States v. Gonzalez*, No. 1:22-cr-054, 2022 WL 17583769, at *2 (D. Utah Dec. 12, 2022) (holding Second Amendment did not protect "false statements to acquire firearms, the repeated transfer of firearms without a license, and proceeds derived from those activities"); *United States v. Tilotta*, No. 3:19-cr-04768-GPC, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022) (explaining that "the natural reading of 'keep and bear arms' does not include the ability to sell or transfer firearms unrestricted"). Because the Second Amendment is not implicated by the conduct and statutes at issue in Counts 1

---

[1] The district court decision referenced in *Scheidt* was later reversed by the Seventh Circuit. *See United States v. Holden*, No. 22-3160, 2023 WL 4039607, at *2 (June 16, 2023) (Easterbrook, J.) ("Indeed, one might think that the very act of lying to obtain a firearm implies a risk that the weapon will be misused.").

through 19 of the Indictment, the government need not show that those statutes are consistent with this country's historical tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2126; *see Gonzalez*, 2022 WL 17583769, at *2; *Tilotta*, 2022 WL 3924282, at *6.

## II. The "dealer sales samples" regulation does not restrict the authority of a governmental entity to obtain and possess machine guns.

Wendt complains at length about an ATF regulation, 27 C.F.R. § 479.105(d), which governs the transfer of so-called "dealer sales samples" to certain FFLs.[2] The relevance of this discussion is not apparent. Wendt says the regulation somehow "restricts" a government entity's rights under § 922(o)(2)(A) to obtain and possess machine guns. *See* Wendt Br. 6-7. But Wendt never really explains how. There is no dispute that the City of Adair is a "political subdivision" under Iowa law. *See id.* at 7. There is no dispute that the City of Adair can acquire and possess machine guns under § 922(o)(2)(A). *See id.* There is no dispute that a municipality acts through its authorized agents. *See id.*

Again, the allegations against Wendt—or at least 19 out of 20 of them—are that he made false statements. Wendt is not charged with failing to comply with an ATF regulation. He's accused of *lying* in the process of *using* that regulation. Wendt does not explain how an ATF regulation governing "dealer sales samples"—with or

---

[2] Wendt's motion joins a separate motion to dismiss filed by his codefendant Robert Williams. *See* Wendt Br. at 17; Dkt. 177. The government previously responded to Williams' motion and incorporates that response for purposes of Wendt's motion. *See* Dkt. 189.

without *Chevron* deference—speaks to the truth or falsity of his statements to the ATF.

To the extent the Court needs to address Wendt's complaints about the ATF regulation, those complaints lack merit. The regulation does not "restrict" a governmental entity's statutory right to obtain and possess machine guns. The regulation governs only FFLs. That's clear from the text of the regulation, which provides that machine guns may be transferred "*to dealers* qualified under this part" if certain conditions are met. 27 C.F.R. § 479.105(d) (emphasis added). The regulation says nothing about a city's ability to obtain and possess machine guns under § 922(o)(2)(A). Government entities remain free to obtain and possess machine guns, regardless of what § 479.105(d) says.

And rather than somehow "restrict" the statute, the ATF regulation *expands* the right to obtain and possess machine guns beyond those expressly covered by § 922(o)(2)(A). The statute generally prohibits the possession of machine guns but carves out a narrow exception for transfer and possession "by or under the authority of" a government entity. 18 U.S.C. § 922(o). The ATF regulation expands the universe of entities authorized to obtain, possess, and transfer machine guns to include certain FFLs—a category notably absent from § 922(o). And the whole point of allowing FFLs to do so, of course, is to assist "expected governmental customers," 27 C.F.R. § 479.105(d), with *exercising* their right under § 922(o) to obtain and possess machine guns. The ATF did not violate § 922(o)—which limits the transfer and possession of machine guns to governmental entities—by authorizing a broader class of entities

(*i.e.*, certain FFLs) to transfer and possess machine guns and placing conditions on their doing so. *Cf. Tilotta*, 2022 WL 3924282, at *6 (explaining that "the natural reading of 'keep and bear arms' does not include the ability to sell or transfer firearms unrestricted").

Wendt also says the ATF regulation should not be given *Chevron* deference. Wendt Br. at 7-10. In doing so, Wendt quotes at length from decisions regarding the regulation of so-called "bump stocks." *See id.* at 7-10 (citing *Hardin v. ATF*, 65 F.4th 895 (6th Cir. 2023) (declining to apply *Chevron* deference to ATF regulation banning bump stocks) and *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021) (equally divided court affirming district court's *Chevron* deference to ATF's interpretation of "automatically").

The relevance of this discussion isn't clear. This case does not involve bump stocks or any other novel conception of a machine gun. There's no dispute that the machine guns at issue are machine guns in the traditional sense. *See, e.g.,* Indictment ¶ 6 (defining "machine guns" to mean "fully automatic machine guns manufactured after May 19, 1986); *id.* ¶¶ 27-30 (discussing Wendt's acquisition, possession, and sale of H&K MP7 and MP5 machine guns); *id.* at ¶ 34 (discussing Wendt's acquisition of a .50 caliber belt-fed machine gun). The weapons at issue fall comfortably within the statutory definition of a "machine gun," 18 U.S.C. § 921(a)(24); 26 U.S.C. § 5845(b), and Wendt doesn't suggest otherwise.

To the extent Wendt is citing these cases more for general principles regarding *Chevron* deference, it's not clear how *Chevron* is implicated here. As noted above, it

is undisputed that § 922(o)(2)(A) authorizes governmental entities to transfer and possess machine guns. Wendt does not contend the statute is ambiguous. Indeed, the section heading of his brief says the opposite. Wendt. Br. at 7. *Chevron* deference is not implicated by an unambiguous statute that all parties agree authorizes governmental entities to transfer and possess machine guns. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018) ("[T]he Court need not resort to *Chevron* deference . . . for Congress has supplied a clear and unambiguous answer to the interpretive question at hand.")

### III. Section 922(o) does not violate the Second Amendment.

The only charge that could conceivably be subject to a Second Amendment challenge is Count 20, which alleges illegal possession of a machine gun. But even that argument lacks merit.

In *Bruen*, the Supreme Court held that firearms regulations comply with the Second Amendment only if they are "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. *Bruen* rejected the kind of means-end scrutiny that many courts applied to Second Amendment challenges after the Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Id.* at 2127.

In *Heller*, the Court held that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. *Heller* expressly noted that this approach was faithful to "the historical understanding of the scope of the right." *Id. Heller* explained that the Second Amendment is limited to the kinds of weapons "in common use at the

9

time." *Id.* at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). This limitation, which *Heller* called an "important limitation on the right to keep and carry arms," is "supported by the historical tradition of prohibiting 'dangerous and unusual weapons.'" *Id.* (quotations omitted). Indeed, *Heller* deemed it "startling" to suggest that Supreme Court precedent would preclude restrictions on machine guns. *Id.* at 624 (discussing *Miller*).

Relying on *Heller*, the Eighth Circuit previously rejected a Second Amendment challenge to § 922(o)'s prohibition on the possession of machine guns. *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008). "Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *Id.* at 874.

Nothing in *Bruen* undermines this aspect of *Heller* or the Eighth Circuit's application of it in *Fincher*. On the contrary, *Bruen* quoted language in *Heller* stating that the Second Amendment right "is not unlimited" and is "not a right to keep and carry any weapon whatsoever and in any manner whatsoever and for whatever purpose." *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626). *Bruen*, like *Heller*, acknowledged a historical basis for banning "dangerous and unusual weapons." 142 S. Ct. at 2143; *see also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (highlighting the narrow issue in *Bruen* and stating that its holding did not address "anything about the kinds of weapons that people may possess"); *id.* at 2161

10

(Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations").

Wendt tries to distinguish *Fincher* on the ground that it was limited to "the right of an **individual** to possess a machine gun." Wendt Br. at 12 (emphasis in original). Relatedly, Wendt likens his work as a police officer to that of a "well regulated Militia" under the Second Amendment. *Id.*

The Indictment, of course, alleges that Wendt *exploited* his position as Chief of Police by making false statements to obtain machine guns for his *personal* gain. *See* Indictment ¶ 3 (alleging that Wendt "falsely stated . . . that . . . the machine gun(s) were being purchased for the official use of the Adair Police Department"); *id.* at ¶ 17 (alleging that Wendt obtained machine guns for his own "use and enjoyment" and "personal profit"). In other words, the Indictment alleges that Wendt was acting *as an individual* and not as Chief of Police when he engaged in a yearslong pattern of making false statements to obtain machine guns, including guns that he sold at considerable personal profit. That's also the case with Count 20, which charges Wendt with possessing a machine gun that—again, on paper—belonged to the Adair Police Department, and making that weapon available to private citizens in exchange for money. *See* Indictment ¶¶ 23, 31-32, 51. "In essence, the question presented in this case is whether [Wendt] used the authority of [his] office as a pretext for the personal use of automatic weapons." *United States v. Theunick*, 651 F.3d 578, 585 (6th Cir. 2011). Contrary to Wendt's apparent belief, he cannot shroud his criminal conduct under the Second Amendment by simply invoking his title of Chief of Police.

This case involves fully automatic machine guns. Wendt does not suggest that such weapons are in "common use" today or are the kind of weapon "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625; *cf. Bruen*, 142 S. Ct. at 2143 (noting that handguns "are indisputably in 'common use' for self-defense today"). Under *Heller* and *Bruen*, it is lawful under the Second Amendment to prohibit the possession of "dangerous and unusual weapons." And as the Eighth Circuit held in *Fincher*, machine guns fall within that category. Accordingly, the Court should deny Wendt's motion to dismiss Count 20, or any other charge in the Indictment, based on the Second Amendment.

IV. **The Indictment does not misstate the law.**

Wendt contends that the Indictment misstates the law by referring to "purchase law letters." Wendt Br. at 17-18. Wendt notes first that the "dealer sales samples" regulation "does not cover the purchase of machine guns by a law enforcement agency." *Id.* at 17. That's correct, but irrelevant. The government did not, as Wendt claims, "attempt to equate law enforcement purchases (via a so-called 'purchase law letter' requirement) with dealer purchases." *Id.* On the contrary, the indictment specifically used different phrases—"purchase law letter" and "demonstration law letter"—to highlight the differing rules that govern the transfer of machine guns in either scenario.

The Indictment made clear that a so-called "purchase law letter" simply required the purchasing agency to identify the quantity, make, model, and cost of machine guns it sought to purchase. *See* Indictment ¶ 11. For "demonstration law

letters," on the other hand, the Indictment explained additional hoops an FFL would have to jump through to transfer a machine gun. *See id.* at ¶¶ 12-13.

Wendt says this alleged "misstatement" is important for two reasons: (1) it imposes a requirement that does not exist under the law; and (2) it "devalues and understates" the authority of law enforcement.[3] Wendt Br. at 17. Regarding the former, the authority for requiring a law enforcement agency to document a machine gun transfer is 18 U.S.C. § 922(o) itself. The statute generally *bans* machine guns and then carves out a narrow exception for governmental entities. Requiring a law enforcement agency to establish that a machine gun transfer falls within this narrow exception—whether through a "purchase law letter" or some other documentation—is simply a means of enforcing § 922(o) itself. Without such a requirement, there would be no way to confirm whether a transfer fell within the exception in § 922(o)(2)(A) or within the general prohibition. The Indictment used the colloquial phrase "purchase law letter" because that is exactly what Wendt used to buy machine guns purportedly for the Adair Police Department. *See* GX 1 (letter from Wendt placing order for three MP7A2 machine guns); GX 2 (same); *see also* Indictment ¶¶ 26-29. Wendt provides no authority that would support dismissal of the Indictment based on its use of the phrase "purchase law letter." *See* Wendt Br. at 17-18. The Court should decline to do so.

---

[3] Wendt cites no authority for this "devalue" proposition. It has no apparent basis in the law and does not entitle Wendt to any relief, much less dismissal of the indictment.

13

### V. Laws prohibiting false statements and banning machine guns are not ambiguous.

Finally, Wendt complains that the law is supposedly "ambiguous." Wendt Br. at 18. Wendt tells us that "[a]ny attempted criminal enforcement against [him] based on the [dealer sales sample] Regulation or the Government's interpretation of it would violate his right to due process." *Id.*

We'll end where we began. With one exception, Wendt is charged with lying and defrauding the government. He's not charged with violating any ATF regulations. And there's nothing ambiguous about laws prohibiting false statements. *See* 18 U.S.C. § 1001; *Theunick*, 651 F.3d at 585-86 (rejecting vagueness challenge to laws prohibiting false statements where prosecutors and law enforcement officer lied to transfer machine guns).

As for Count 20, Wendt is accused of violating § 922(o), which generally bans machine guns and creates an exception for possession of a machine gun "by or under the authority of" a governmental entity. The Indictment alleges that Wendt made an M60 machine gun registered to the Adair Police Department available to the general public to shoot in exchange for paying Wendt money. Indictment ¶¶ 31-32. The indictment alleges that Wendt advertised this event on his Facebook page. *Id.* at ¶ 31. A reasonable person would know that this conduct violates a law that prohibits possession of a machine gun except "by or under the authority of" a governmental entity. *See Theunick*, 651 F.3d at 585-86 (rejecting vagueness challenge to various false statement statutes); *United States v. Jackson*, 926 F. Supp. 2d 691, 712-14 (E.D.N.C. Feb. 4, 2013) (denying motion to dismiss as premature where defendants

14

claimed possession of firearms was "authorized" by the federal government); *cf. United States v. Vest*, 448 F. Supp. 2d 1002, 1012 (S.D. Ill. 2006) (holding § 922(o) unconstitutionally vague as applied to state police equipment officer where there was "no evidence . . . that [the officer] ever possessed or used the machine gun . . . for anything other than law enforcement purposes").

## CONCLUSION

For these reasons, the Court should deny Wendt's motion to dismiss (Dkt. 211).

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:   /s/ *Ryan W. Leemkuil*
Mikaela J. Shotwell
Ryan W. Leemkuil
Assistant United States Attorneys

Shai D. Gonzales
Special Assistant U.S. Attorney

U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Mikaela.Shotwell@usdoj.gov
         Ryan.Leemkuil@usdoj.gov
         Shai.Gonzales@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2023, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby

certify that a copy of this document was served on the parties or attorneys of record by:

\_\_\_\_U.S. Mail _____ Fax \_\_\_\_\_Hand Delivery

\_\_X\_\_ECF/Electronic filing \_\_\_Other means

UNITED STATES ATTORNEY

By: _/s/ Ryan W. Leemkuil_