IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA-1<br><br><br>**ORDER DENYING<br>MOTION TO DISMISS** |

The Government alleges that Defendant Bradley Eugene Wendt exploited his position as Chief of Police for the City of Adair, Iowa, by making false statements to the Bureau of Alcohol, Tobacco, and Firearms (ATF) to obtain machine guns. Wendt argues that any false statements he allegedly made are not material because the applicable federal regulation violates the Second Amendment and sometimes does not require any statements at all. The Court disagrees and holds that the Government can lawfully prosecute someone for allegedly making false statements about the intended purpose and transferee of machine guns. Thus, Wendt's Motion to Dismiss is DENIED.

## I.    BACKGROUND

When ruling on a motion to dismiss, the Court accepts the allegations in the Indictment as true. *United States v. McKee*, 68 F.4th 1100, 1102 (8th Cir. 2023). Since July 2, 2018, Wendt has been employed as the Chief of Police for the City of Adair, Iowa. (ECF 2, ¶ 1.) Approximately 800 people live in Adair, and the Adair Police Department employs two full-time police officers, including Wendt. (Id.) In addition to being the Chief of Police, Wendt owns and operates two firearms supply stores: BW Outfitters, Inc., and B Wout Fitters, Inc. (Id., ¶ 2.) B Wout Fitters, Inc., is a Federal Firearms License (FFL) with Special Occupational Tax (SOT). (Id.) Wendt and, by extension, the Government, refer to both stores collectively as "BW Outfitters." (Id., n.1.)

This case arises out of a federal statute criminalizing the possession and transportation of machine guns manufactured after May 19, 1986. *See* 18 U.S.C. § 922(o); 27 C.F.R. § 479.105(a). Federal law contains an exception, however, for use by the United States, any State, or any department, agency, or political subdivision thereof with prior approval by the ATF. *See* 18 U.S.C. § 922(o)(2)(A); 27 C.F.R. § 479.105(a). The parties agree that the City of Adair is a political

subdivision of the State of Iowa and that it (or, more precisely, its Police Department) can, through its Chief of Police, lawfully acquire and possess machine guns under section 922(o)(2)(A). (ECF 211-1, p. 9; ECF 223, p. 6.) The Indictment describes two methods that can be used for such acquisitions. (ECF 2, ¶¶ 8–10.) Wendt's alleged misuse of these two methods forms the basis for the first nineteen of the twenty charges against him in the Indictment.

Under the <u>first</u> method, a government agency (such as a police department) submits a "purchase law letter" seeking approval from ATF to make a direct purchase of a machine gun in the agency's name. (Id., ¶¶ 7–8, 10.) The agency "typically identifies the quantity, make, model, and cost of the machine gun it seeks to purchase. The agency further represents the machine gun is being acquired for the agency's official use and not for the purpose of resale or transfer." (Id., ¶ 11.) If the transaction is authorized and consummated, the agency becomes the registered owner of the machine gun.

Under the <u>second</u> method, the government agency submits a "demonstration law letter" to an FFL-SOT—i.e., a federal firearms licensee authorized to possess machine guns—stating that the agency has "a need for a particular machine gun or an interest in seeing a demonstration of a particular machine gun for potential future purchase." (Id., ¶¶ 2, 12.) The FFL-SOT then submits that letter to ATF as part of an application to acquire a machine gun "for use as a sample for demonstration to potential law enforcement agency purchasers." (Id., ¶ 9.) If the transaction is authorized and consummated, the FFL-SOT becomes the registered owner of the machine gun.

"Purchase law letters" and "demonstration law letters" are "drafted by a law enforcement official, in their official capacity as a law enforcement officer." (Id., ¶ 10.) The Indictment alleges that Wendt exploited his position as Chief of Police to unlawfully obtain machine guns through both types of letters. As to purchase law letters, the Indictment alleges that, between October 2019 and August 2021, Wendt drafted, signed, and transmitted letters to ATF "in which he falsely stated: (1) that the Adair Police Department was purchasing machine guns for the official responsibilities and duties of the Adair Police Department; (2) that the machine guns would be the property of the Adair Police Department; and (3) that the machine guns were not being acquired for the purpose of resale or transfer." (Id., ¶¶ 19, 26.) The Indictment alleges that Wendt used purchase law letters to acquire ten machine guns for the purported official use by the City of Adair. (Id., ¶ 26.) Wendt then allegedly sold six of those machine guns for personal profit. (Id., ¶¶ 26–28.)

2

For example, in December 2020, the Indictment alleges that Wendt submitted a purchase law letter(s) to acquire three H&K, MP7A2 machine guns for $2,080 each for the City of Adair, which he paid for with his own funds. (Id., ¶ 27.) In July 2021, he sold two of those guns to a Florida-based buyer for $50,000, which the buyer wired directly to Wendt's personal bank account. (Id.) In February 2022, Wendt sold the third MP7A2 machine gun and an H&K, MP5SD3 machine gun—similarly acquired for official use and paid for with $3,300 of Wendt's own funds—to an Alabama-based buyer for $34,500. (Id., ¶ 28.) The check for the second transaction was addressed to "Brad Wendt" and deposited into Wendt's BW Outfitters account. (Id.) Wendt allegedly made a personal profit of $74,960 from these transactions. (Id., ¶¶ 27–28.)

The Indictment also alleges that Wendt misused demonstration law letters. It alleges that, between July 2018 and August 2022, Wendt signed and transmitted demonstration law letters in which "Wendt wrote from himself as the Adair Chief of Police to himself as the owner of BW Outfitters [and] falsely stated that the Adair Police Department wanted a demonstration of the machine guns for potential future purchase." (Id., ¶ 20.) BW Outfitters submitted those letters to ATF and acquired thirteen machine guns purportedly for demonstration by the Adair Police Department. (Id., ¶ 33.)

For example, in a demonstration letter dated July 19, 2020, which resulted in BW Outfitters acquiring an FN, M2HB, .50 caliber, belt-fed machine gun for official demonstration to the Adair Police Department, Wendt stated that the belt-fed gun was "ideal" for the police department "based on its price and availability." (Id., ¶ 34.) He personally paid $17,896 for the gun and, after BW Outfitters received it, mounted it to his personally-owned, armored Humvee. (Id.) On April 16, 2022, Wendt then charged members of the public $5 per round of ammunition to shoot it. (Id.) (The public shooting event separately gives rise to Count 20 of the Indictment, which alleges illegal possession of a machine gun.) (Id., ¶¶ 34, 51.) Similarly, in a demonstration letter authored on November 29, 2021, in an attempt to acquire a M134 minigun, Wendt stated the Adair Police Department wanted the gun for official demonstration "for possible future purchase and use of our officers in the performance of their official duties" because the minigun was "suitable for engagements and suppressive fire." (Id, ¶ 36.) ATF disapproved the transfer because the minigun was "not suitable for law enforcement use." (Id.)

Wendt allegedly submitted demonstration law letters to FFL-SOTs other than BW Outfitters, including Williams Contracting and others around the country. (Id., ¶¶ 37, 41–42.)

These letters allegedly contained similar false statements, including statements describing the requested machine gun as "particularly suitable for [Adair Police Department's] officers while conducting special operations and high-risk prisoner transportation details." (Id., ¶ 41.) In total, Wendt wrote twenty-two demonstration letters to these other FFL-SOTs requesting demonstrations "for potential future purchase" of fifty-two machine guns, twenty-seven of which were in fact transferred and acquired by those FFL-SOTs. (Id., ¶ 4.) The Indictment states that "the Adair Police Department was not interested in and was not considering purchasing the machine guns identified" in the letters. (Id., ¶ 20.)

Based on this conduct, the Indictment alleges in Count 1 that Wendt conspired with his now-dismissed co-defendant, Robert Allen Williams, to make false statements and defraud ATF in violation of 18 U.S.C. §§ 371, 1001(a)(2). (Id., ¶¶ 15–44.) In Counts 2 through 19, the Indictment alleges that Wendt made false statements to ATF via purchase law letters and demonstration law letters in violation of 18 U.S.C. § 1001(a)(2). (Id., ¶¶ 45–50.) Finally, in Count 20, the Indictment alleges Wendt illegally possessed and aided and abetted the possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2 when he hosted a public machine gun shoot on April 16, 2022. (Id., ¶¶ 31, 51.)

## II.  LEGAL ANALYSIS.

### A.  Motion to Dismiss Standard.

A motion to dismiss an indictment should be granted if, accepting the factual allegations as true, they cannot form the basis of the charged offense. *See United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir.) (citations omitted), *cert. denied*, 142 S. Ct. 262 (2021). The Indictment alleges Wendt committed two categories of offenses: conspiring to and making false statements (Counts 1–19) and illegally possessing a machine gun or aiding and abetting the same (Count 20).

Regarding Counts 1 through 19, 18 U.S.C. § 1001(a)(2) makes it a crime to, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . (2) make[] any materially false, fictitious, or fraudulent statement or representation." To establish a violation of section 1001(a)(2), the Government must prove: "(1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material." *United States v. Rice*, 449 F.3d 887, 892 (8th Cir. 2006) (quotation omitted). The materiality

4

element does not require the Government to show that the agency "actually relied" on the statement. *United States v. Hicks*, 619 F.2d 752, 754 (8th Cir. 1980). Rather, a statement is "material" if it "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *United States v. Cowden*, 677 F.2d 417, 419 (8th Cir. 1982) (quotation omitted).

As to Count 20, 18 U.S.C. § 922(o) makes it a crime to transfer or possess a machine gun. To establish a violation of section 922(o), the Government must prove the defendant possessed a machine gun or aided and abetted the possession of a machine gun. *United States v. Mann*, 701 F.3d 274, 286 (8th Cir. 2012); *see also* 18 U.S.C. § 921(a)(24) (defining "machine gun"). The exception for possession by federal, state, or local government agents is an affirmative defense, not an element that must be charged in the Indictment. *United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996).

Wendt[1] makes two primary arguments in support of his Motion to Dismiss. <u>First</u>, he argues that the Second Amendment provides law enforcement agencies with an unqualified right to possess machine guns, and thus ATF's regulation, 27 C.F.R. § 479.105, is unconstitutional in purporting to impose restrictions or conditions on the exercise of that right. (ECF 211-1, pp. 12–19.) If the regulation is unconstitutional, the argument continues, any false statements allegedly made by Wendt cannot be "material" for purposes of section 1001(a)(2). (ECF 234, p. 3.) <u>Second</u>, Wendt argues that the regulatory process he followed to acquire the machine guns either did not cover his conduct because "purchase law letters" are not actually required under the governing regulation or *should not* have covered his conduct because the regulatory requirement is inconsistent with the language of section 922(o)(2)(A). (Id., pp. 2–3; ECF 211-1, pp. 8–12, 19–20.) Again, this argument, if accepted, means his allegedly false statements could not have been material for purposes of section 1001(a)(2). (Id.)

B.   *Federal Laws and Regulations Governing the Acquisition and Possession of Machine Guns Do Not Violate the Second Amendment.*

Wendt concedes, as he must, that the Eighth Circuit has upheld the constitutionality of the federal statute prohibiting machine gun possession as it applies to individuals. *See United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (rejecting constitutional challenge to 18 U.S.C. §

---

[1] Wendt also joins the motion to dismiss filed by Williams, his former co-defendant, which raised many of the same arguments. (ECF 211; ECF 177.) To the extent Williams' motion advanced different arguments, those will be addressed as if raised by Wendt directly.

922(o)). He argues, however, that law enforcement officers like himself are in a different position for Second Amendment purposes than private citizens. The latter, he argues, only have the constitutional right to possess firearms "in common use," whereas the former have broader constitutional rights to possess unusually dangerous weapons like machine guns.

Wendt's argument revolves partly around *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which held that courts cannot engage in means-end scrutiny to determine the constitutionality of a firearm law or regulation. Instead, courts must engage in a two-step analysis: "<u>first</u>, courts must determine whether 'the Second Amendment's plain text covers an individual's conduct,' and, if so, <u>second</u>, the Government must provide historical evidence to show the regulation is sufficiently analogous to Founding-era [gun] restrictions." *United States v. Hammond*, --- F. Supp. 3d ----, 2023 WL 2319321, at *2 (S.D. Iowa Feb. 15, 2023) (quoting *Bruen*, 142 S. Ct. at 2129–30). Wendt argues that both steps are satisfied here because, in his view, the Second Amendment's plain text covers the possession of machine guns for law enforcement purposes, and there are no analogous Founding-era regulations that would allow the Government to prohibit such possession by law enforcement agencies.

Wendt's constitutional argument fails for multiple reasons, starting with the fact that it ignores the repeated allegations in the Indictment that he was acquiring the machine guns for himself *personally*, not the Adair Police Department. The Indictment alleges, for example, that Wendt acquired the machine guns "for his own personal profit and gain" (ECF 2, ¶ 19), "for his personal use, enjoyment, profit, and gain" (id., ¶ 20), and with the expectation that he would achieve "a significant personal profit" (id., ¶ 4). Indeed, the main thrust of the Indictment is that Wendt "exploited his position as the Adair Chief of Police" by lying repeatedly to ATF so he could acquire machine guns for his own benefit. (Id., ¶ 3.) For present purposes, the Court must accept these allegations as true. *See McKee*, 68 F.4th at 1102. It follows that the Court must evaluate the constitutionality of the relevant laws and regulations under the standards applicable to *individuals*, not *law enforcement agencies*. This means *United States v. Fincher* is governing, and Wendt's possession of machine guns "is not protected by the Second Amendment." 538 F.3d at 874. In other words, Wendt's constitutional argument fails at the first *Bruen* step.

One of the very first sentences of Wendt's Brief illustrates the problem when it asserts that "Wendt was actually purchasing machine guns for the use of the Adair Police Department." (ECF 211-1, p. 3.) The Indictment alleges the opposite: that Wendt was *lying* when he claimed to be

purchasing machine guns for the use of the Adair Police Department. The Government may or may not be able to prove this allegation beyond a reasonable doubt at trial, but Wendt offers no reason—much less any persuasive authority—why the Court would be permitted to ignore it on a motion to dismiss and accept his "facts" instead.

To the extent Wendt is arguing that *Fincher* is no longer good law in light of *Bruen*, the argument is similarly meritless. The Court must follow *Fincher* unless it has been "repudiated or undermined by later authority, such as a statute, an intervening Supreme Court decision, or en banc decision*." Dean v. Searcey*, 893 F.3d 504, 511 (8th Cir. 2018) (quoting Bryan A. Garner et al., The Law of Judicial Precedent 38 (West 2016)). In all material ways, the Court concludes *Fincher* was not undermined by *Bruen*. *Fincher* followed *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008), for the proposition that the Second Amendment only protects the possession of weapons "in common use," as opposed to unusually dangerous weapons like machine guns. *See Fincher*, 538 F.3d at 874. The Eighth Circuit has already recognized, post-*Bruen*, that this proposition remains good law. *See United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (citing *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.)). This Court must follow the Eighth Circuit's lead.

Moreover, *Fincher* did not engage in the sort of means-end scrutiny held by *Bruen* to be inappropriate. Instead, the Eighth Circuit did exactly what *Bruen* requires: it evaluated whether the defendant's conduct was covered by the text of the Second Amendment. *Compare Bruen*, 142 S. Ct. at 2129–30, *with Fincher*, 538 F.3d at 874. In that respect, *Fincher* is one of many Eighth Circuit cases that essentially foreshadowed *Bruen* by focusing on the text of the Second Amendment and Founding-era firearm regulations, rather than engaging in means-end scrutiny. *See, e.g.*, *United States v. Adams*, 914 F.3d 602, 605–07 (8th Cir. 2019); *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011). Since *Bruen* was decided last year, the Eighth Circuit has already twice affirmed pre-*Bruen* precedent upholding the constitutionality of other subsections of 18 U.S.C. § 922. *See Jackson*, 69 F.4th at 502 (re-affirming constitutionality of section 922(g)(1)); *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023) (re-affirming constitutionality of section 922(g)(5)). The Court is confident it will do the same as to section 922(o) and *Fincher*.

Wendt has not, in any event, cited a single case from anywhere in the country striking down section 922(o) or the relevant regulation, 27 C.F.R. § 479.105, on Second Amendment grounds. Nothing in *Bruen* or other governing authority suggests the Government is prohibited from

requiring a person to provide information prior to obtaining an unusual and dangerous weapon like a machine gun. To the contrary, *Bruen* kept intact the following language from *Heller*:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

> We also recognize another important limitation on the right to keep and carry arms. [*United States v.*] *Miller*[, 307 U.S. 174, 59 S.Ct. 816 (1939)] said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' 307 U.S., at 179, 59 S.Ct. 816. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'

*Heller*, 554 U.S. at 626–27. In concurring opinions in *Bruen*, three justices from the majority expressly reaffirmed the continuing vitality of this portion of *Heller*. *See Bruen*, 142 S. Ct. 2111, 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.). Accordingly, several courts have held post-*Bruen* that making false statements in connection with the acquisition or transfer of firearms falls outside the scope of the Second Amendment altogether. *See, e.g.*, *United States v. Scheidt*, No. 1:22-CR-49-HAB, 2023 WL 2865349, at *3 (N.D. Ind. Apr. 10, 2023); *United States v. Soto*, No. SA-22-CR-JKP, 2023 WL 1087886, at *3 (W.D. Tex. Jan. 27, 2023); *United States v. Gonzalez*, No. 1:22-cr-054, 2022 WL 17583769, at *2 (D. Utah Dec. 12, 2022). While this Court need not go that far today, it has no trouble concluding that the Second Amendment does not preclude the Government from prosecuting Wendt for allegedly making false statements that allowed him to obtain machine guns for his personal use and benefit.

   *C.   The Indictment Does Not Misstate the Law as It Relates to Purchase Law Letters.*

   With two exceptions (only one of which is relevant here), Congress has declared that "it shall be unlawful for any person to transfer or possess a machine gun." 18 U.S.C. § 922(o); *see also United States v. Pearson*, 8 F.3d 631, 633 (8th Cir. 1993) (recognizing that section 922(o) "adequately addresse[s] the relationship between the proliferation of machine guns, violent crime, and narcotics trafficking"). The relevant exception applies to machine guns transferred to or possessed by the United States, a State, or a department, agency, or political subdivision thereof.

*Id*. at § 922(o)(2)(A).[2] Congress delegated authority to the Attorney General to promulgate rules and regulations to enforce section 922(o) and other firearms laws. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 146 (3d Cir. 2022); *see also* 18 U.S.C. § 926(a); 26 U.S.C. § 7805(a). The Attorney General subdelegated this authority to the Director of ATF. *See Whitaker*, 42 F.4th at 146, fn. 2.

Pursuant to its delegated authority, ATF has promulgated rules regarding the "procedural and substantive requirements relative to the importation, manufacture, making, exportation, identification and registration of, and the dealing in, machine guns." 27 C.F.R. § 479.1. These rules include requirements that must be satisfied before ATF will approve the transfer or possession of a machine gun. 27 C.F.R. § 479.105. Two types of permissible transfers of machine guns are relevant here: (i) "the sale or distribution of such weapons for the official use of Federal, State or local governmental entities," *id.* § 479.105(c); and (ii) the transfer of machine guns to authorized dealers when "it is established by specific information the expected governmental customers who would require a demonstration of the weapon, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon," *id.* § 479.105(d). The parties have used the phrase "purchase law letters" to describe the first method and "demonstration law letters" to describe the second.

Wendt argues that section 479.105 "does not cover the purchase of machine guns by a law enforcement agency" and therefore the Indictment misstates the law every time it refers to a "purchase law letter" requirement. (ECF 211-1, p. 19.) Wendt's argument arises out of the contrast between section 479.105(d), which expressly mentions "letters" in connection with the demonstration of machine guns, and section 479.105(c), which does not mention "letters" in connection with the possession or use of machine guns by Federal, State, or local governmental entities. Wendt concedes that requiring "demonstration law letters" is consistent with the regulation but argues that requiring "purchase law letters" is not. (ECF 234, pp. 2–3.)

Wendt's position falls apart quickly when scrutinized. Federal law prohibits the transfer of machine guns unless a "written application" is filed with and approved by ATF. *See* 26 U.S.C. § 5812(a); *see also Whitaker*, 42 F.4th at 145–46 (explaining the interrelationship between 26 U.S.C. § 5812 and firearm laws and regulations set forth in 18 U.S.C. §§ 921–28 and 27 C.F.R. Chapter

---

[2] The second exception applies to the lawful transfer or possession of a machine gun before section 922(o) took effect in 1986. *Id*. at § 922(o)(2)(B); *see also* 27 C.F.R. § 479.105(b).

479). Unsurprisingly, federal law states that "[a]pplications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." 26 U.S.C. § 5812(a). This obviously would include a transfer that, if consummated, would place the transferee in violation of section 922(o). Thus, considered collectively, section 5812(a) and section 922(o) clearly envision that applicants will submit *something* in writing to ATF to establish that the proposed transferee of the firearm is a qualifying governmental entity. Whether one calls it a "purchase law letter" or something else is immaterial. The point is that it must enable ATF to discern whether the transferee can lawfully possess the machine gun.

Ironically, Wendt raises the issue of *Chevron*[3] deference in his Brief, arguing that it does not apply here. (ECF 211-1, pp. 9–12.) The Court agrees that it does not apply but has a very different view than Wendt for why this is so. Section 5812(a) is a federal statute—i.e., an Act of Congress—requiring an applicant to demonstrate, in writing, that the proposed transferee of a machine gun is entitled to lawfully possess it. Section 922(o) is likewise a federal statute prohibiting the transfer or possession of machine guns except in two circumstances. If, as Wendt argues, 27 C.F.R. § 479.105(c)—a federal *regulation*—does not require a person to submit anything in writing to ATF before transferring a machine gun, the regulation would appear to contradict the plain language of the statute. This is impermissible under *Chevron*. *See* 467 U.S. at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). In other words, it is *Wendt's* interpretation of the regulation, not the Government's, that creates *Chevron* problems. In these circumstances, the Court has little difficulty concluding that the Indictment does not misstate the law as it relates to "purchase law letters."

Wendt cites no cases holding otherwise, nor are any cited in his former co-defendant's motion to dismiss (ECF 177), which Wendt joins by reference. His position instead rests, as the Government argues, on "half-baked legal arguments" that analyze 27 C.F.R. § 479.105(c) and (d) in a vacuum and without the surrounding context provided by 26 U.S.C. § 5812(a) and 18 U.S.C. § 922(o). (ECF 223, pp. 1, 8–9.) Once the surrounding context is considered—as it must be— Wendt's argument fails. When someone wants to transfer a machine gun to a governmental entity, federal law clearly requires the submission of something in writing to ATF establishing that the

---

[3] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

proposed transferee is lawfully entitled to possess the firearm under 18 U.S.C. § 922(o)(2)(A). The Indictment does not misstate the law on this issue.

> D. *The Indictment Correctly Recognizes That It Is a Criminal Offense to Lie About the Purpose or Transferee of a Proposed Transfer of Machine Guns.*

Because federal law requires an applicant to affirm, in writing, that the proposed transferee of a machine gun is lawfully permitted to possess it, lying about the identity of the proposed transferee or purpose of the proposed transfer is clearly a criminal offense that can be prosecuted under section 1001(a)(2). *See United States v. Kelerchian*, 937 F.3d 895, 907–08 (7th Cir. 2019). Indeed, section 1001(a)(2) is broad in scope and imposes criminal liability even for materially false statements that are *not* required by law or regulation. *See Brogan v. United States*, 522 U.S. 398, 400 (1998) ("By its terms, 18 U.S.C. § 1001 covers 'any' false statement—that is, a false statement 'of whatever kind.'" (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *see also Cohen v. United States*, 201 F.2d 386, 391 (9th Cir. 1953) (rejecting defendant's argument that section 1001 is limited to statements "which were required to be made by some law or regulation"). Accordingly, the Court rejects Wendt's request for the Court to review grand jury proceedings to see if grand jurors were properly instructed on the law. *See United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir. 1986) (defendants face a "heavy burden" in overcoming the "strong presumption of regularity" in grand jury proceedings).

The Court likewise rejects Wendt's other arguments for dismissal, including his position that the allegedly false statements are not "material" as a matter of law. *See Hansmeier*, 988 F.3d at 436. A statement is material if it has a "natural tendency to influence or was capable of influencing" the government actor. *United States v. Benton*, 890 F.3d 697, 712 (8th Cir. 2018) (quotation omitted), *judgment corrected* (May 15, 2018). This standard is met even when the statement did not "succeed[] in doing so." *Id.* Under the facts alleged in the Indictment, this is not a close call: a reasonable juror could find Wendt's allegedly false statements to be material.

To understand why, it is again necessary to review section 922(o)(2)(A), which states that it "shall be unlawful" for a person to transfer or possess a machine gun except "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." 18 U.S.C. § 922(o)(2)(A). In turn, ATF is required, by statute, to "approve[] the transfer and registration of the firearm" before any proposed transaction may be consummated. 26 U.S.C. § 5812(b). "Applications shall be

denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." *Id.* § 5812(a).

Against this backdrop, Wendt allegedly submitted letters on City of Adair letterhead expressing an intent to buy machine guns "for the . . . Adair Police Department" and "not . . . for the purpose of resale or transfer." (ECF 2, ¶ 19; *see also* ECF 223-1.) Wendt also allegedly submitted letters on City of Adair letterhead to FFL-SOTs expressing the City's putative interest in the demonstration of firearms. The Government alleges that these statements were false, and that Wendt intended to acquire the machine guns for himself or for his personal benefit. If these allegations are proven, it would mean ATF approved the transfer of machine guns that ATF was forbidden by statute from approving. It is difficult to imagine a more clear-cut case for materiality.

The Eighth Circuit has repeatedly upheld the materiality of allegedly false statements in analogous circumstances. In *United States v. Kieffer*, for example, the Eighth Circuit affirmed a conviction under section 1001 when the defendant falsely claimed to be an attorney to gain admission to federal court. 621 F.3d 825, 833 (8th Cir. 2010). Similarly, *United States v. Henderson* affirmed the conviction of a pageant competitor who lied about her physical health to obtain social security benefits. 416 F.3d 686, 692 (8th Cir. 2005). Indeed, the Eighth Circuit has affirmed convictions under section 1001 in the context of far less consequential statements. *United States v. Benton* affirmed a conviction under section 1001 for false statements in a report to the Federal Election Commission because it was "possib[le]" the FEC "might have taken different action" if the report had been truthful. 890 F.3d at 712. *United States v. Robinson* held that a false statement to an FBI agent was "material" because it was designed to deflect suspicion from the defendant and therefore was "capable" of influencing the investigation. 809 F.3d 991, 1000 (8th Cir. 2016); *see also United States v. Mitchell*, 388 F.3d 1139, 1143 (8th Cir. 2004) (false statement to INS that defendant was raped was material because it influenced visa fraud investigation against alleged rapist despite not being "determinative" as to the outcome of that investigation); *United States v. Chmielewski*, 218 F.3d 840, 842–43 (8th Cir. 2000) (understating value of goods on export declaration form was material where customs officials considered it in determining which cargo to inspect and values were used for statistical purposes in trade negotiations with other countries). These cases overwhelmingly support the materiality of Wendt's statements regarding the intended purpose and transferee of the machine guns.

Ultimately, the jury will have to decide if Wendt's statements were material. *See United States v. Turner*, 189 F.3d 712, 722 (8th Cir. 1999) (citing *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995)). For purposes of determining whether the facts set forth in the Indictment could reasonably allow a juror to reach that conclusion, however, the allegations of the Indictment are clearly sufficient. *See Hansmeier*, 988 F.3d at 436.

    E.   *The Court Rejects Wendt's Remaining Arguments.*

Wendt's final arguments for dismissal are also meritless. He argues that he is entitled to qualified immunity because his decision to submit law letters was a discretionary function that did not violate clearly established law. (ECF 211-1, p. 21.) This argument is a non-starter because "[q]ualified immunity shields government officers from **civil** damages liability." *Kuessner v. Wooten*, 987 F.3d 752, 755 (8th Cir. 2021) (emphasis added). This is a criminal case. Moreover, the main thrust of the Indictment is that Wendt was *not* performing a discretionary function when he tried to acquire dozens of machine guns for a two- or three-person police department in a rural community, but rather was trying to enrich himself personally. It is clearly established that people cannot lie to federal agencies to make money. *See, e.g.*, *Henderson*, 416 F.3d at 692; *see also Kelerchian*, 937 F.3d at 907–08.

Similarly, the Court rejects Wendt's position that the Indictment should be dismissed because the law is ambiguous. (ECF 211-1, pp. 20–22.) It is difficult to tell from his Brief which "law" he is even referring to, which is reason enough to defeat his position. Section 1001(a) is, in any event, not ambiguous. It makes it a criminal offense to lie to the federal government on a material matter—here, *inter alia*, whether machine guns were for the possession and use of a law enforcement agency or Wendt personally. There is no ambiguity or void-for-vagueness problem in these circumstances. *See United States v. Theunick*, 651 F.3d 578, 585–87 (6th Cir. 2011) (rejecting void-for-vagueness challenge to laws regulating the possession and use of machine guns).

Finally, the Court rejects Wendt's challenge to the legal sufficiency of Count 20. Unlike Counts 1 through 19, which revolve around false statements, Count 20 charges Wendt with a straightforward violation of section 922(o), as well as aiding and abetting the same. Meaning: he is accused of possessing a machine gun in his personal capacity and aiding and abetting others to do the same. The Indictment provides context in paragraphs 23, 31, and 32, which allege that Wendt took money from private citizens at an event in Woodbine, Iowa, on April 16, 2022, in exchange for allowing the private citizens to shoot machine guns registered to the City of Adair. It

is not difficult, in context, to understand the Government's theory. On the aiding and abetting charge, a person generally must "possess" a gun, at least temporarily, in order to shoot it. Private citizens are usually not, however, understood as operating "by or under the authority of" a government agency. The Government's theory on Count 20 is thus that Wendt aided and abetted the unlawful possession of machine guns by private citizens—a theory that would be supported if the Government proves that the public event resulted in payments to Wendt (as opposed to the City of Adair) and occurred in a town other than Adair.

Count 20 is on somewhat shakier footing as it relates to Wendt's alleged *personal* possession of the machine gun. *See United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) (dismissing indictment and concluding that section 922(o)(2)(A) was unconstitutionally vague as applied to police officer who possessed machine gun). Still, the Indictment alleges enough to survive. The Government's theory appears to be that by taking money from private citizens in a town other than Adair in exchange for allowing them to shoot a machine gun, Wendt was treating the machine gun as his personal property rather than the City's. This theory is buttressed by surrounding allegations of the Indictment that Wendt lied to ATF when he said machine guns were being purchased by or for the City of Adair. Accepting these allegations as true, the Court cannot conclude that Count 20 fails as a matter of law as it pertains to Wendt's personal possession of the machine gun. *See Theunick*, 651 F.3d at 587 (rejecting void-for-vagueness challenge where "the Defendants appear to have possessed the weapons exclusively in a personal capacity, without any legitimate law enforcement purpose").

## III.   CONCLUSION

The Second Amendment does not prohibit Congress from making it a criminal offense to lie about the intended purpose and transferee of machine guns. Nor can those alleged lies, if proven, be deemed immaterial as a matter of law given their close relationship to federal restrictions on the possession and transfer of machine guns. Wendt's Motion to Dismiss (ECF 211) is therefore DENIED.

IT IS SO ORDERED.

Dated: August 17, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE