IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA-1<br><br><br>**ORDER SUSTAINING IN PART AND OVERRULING IN PART APPEAL FROM MAGISTRATE JUDGE ORDER** |

Defendant Bradley Eugene Wendt appeals (ECF 245) from Chief Magistrate Judge Helen Adams's Order dated July 5, 2023 (ECF 229), which largely denied Wendt's Motion to Compel Discovery and Request for Sanctions (ECF 128). Many of the issues in Wendt's original Motion have been resolved or become moot, but he identifies five categories of discovery materials for which ongoing disputes exist. The Court will consider each in turn.

<u>First</u>, Wendt seeks "All ATF NFA documents that specifically reference Wendt and his purchases or attempted purchases of machine guns under a law letter commencing during the time-frame of two years preceding the Government's commencement of their investigation of Wendt to present." (ECF 245, p. 2.) It appears to be undisputed that the Government has produced *some* materials responsive to this request, but Wendt argues that the Government has given vague signals about whether it has produced *everything*. The Court agrees.

The Government states, *inter alia*, that it has "disclosed relevant, discoverable communications between Wendt and NFA employees and, where appropriate, internal NFA correspondence." (ECF 252, p. 2.) The Court cannot tell if this means the Government is withholding some communications between Wendt and NFA employees that the Government has concluded are not relevant or discoverable. If so, the Government must produce those materials. If not, the Government must unambiguously communicate this to Wendt's counsel. Similarly, to the extent the Government is withholding internal NFA correspondence that specifically references Wendt, it must produce those documents. If not, it must unambiguously communicate this to Wendt's counsel. Either way, the Government's response is sufficiently vague that the Court SUSTAINS Wendt's Appeal of Magistrate Judge's Order as it relates to the first category of

1

discovery. Any responsive documents that have not previously been produced must be produced by August 31, 2023.

Second, Wendt seeks "ATF NFA Division written guidance and/or standard operating procedures in place during the last five years that relate to machine gun transfers, machine gun shoots, or the ability of police departments or law letter holders to allow others to fire the machine guns." (ECF 245, p. 2.) The Government reports that it disclosed some responsive materials in June 2023 (before Wendt even filed this Appeal) but has not yet received or produced written guidance on "the ability of police departments or law letter holders to allow others to fire the machine guns." (ECF 252, p. 2.) The Government must produce these materials by August 31, 2023.

The Government's Response states, in part, that "the ATF NFA Division's written guidance on 'the ability of . . . law letter holders to allow others to fire the machine guns' is not relevant nor exculpatory. Wendt is not charged with unlawfully allowing others to fire machine guns registered to BW Outfitters and the ATF NFA Division's stance on that does not bear on the facts of this case or the charges." (Id.) It is unclear whether the Government included this statement in its Response because it does not intend to produce such materials, or rather as a precautionary measure to make sure the Court understands the Government is not conceding the relevance of those materials for trial admissibility purposes. If the former, the Court orders the Government to produce the materials by August 31, 2023. Chief Judge Adams's Order required the Government to produce these materials, and the Government did not appeal.

Moreover, and in any event, the Court is unable to conclude at this juncture that "written guidance on 'the ability of . . . law letter holders to allow others to fire the machine guns'" is not relevant or exculpatory. The Government uses the phrase "law letter holders" to refer to FFL-SOTs, which, for present purposes, must obtain demonstration law letters from an appropriate governmental agency like a police department in order to obtain machine guns. The Illegal Possession charge in Count 20, by contrast, appears to be limited to a machine gun registered to the Adair Police Department, which would have acquired the gun through a *purchase* law letter and would not be considered a "law letter holder" under the Government's terminology. (Id., ¶¶ 32, 51.) Still, the Indictment alleges that the machine gun shoots involved guns registered to both the Adair Police Department *and* law letter holders (i.e., FFL-SOTs). (Id., ¶ 31 ("At that machine gun shoot, WENDT and WILLIAMS allowed patrons to shoot a number of machine guns

registered to the Adair Police Department, BW Outfitters, and Williams Contracting.").) If ATF written guidance allows private citizens to shoot machine guns that are registered to FFL-SOTs with valid law letters, it may be appropriate to allow the defense to present evidence to that effect at trial to ensure jurors are not confused or misled as to the legality of that portion of the public machine gun events. Similarly, the written guidance may affect how the Court instructs the jury.

Accordingly, the Court SUSTAINS Wendt's Appeal of Magistrate Judge's Order on this category of discovery. By August 31, 2023, the Government must produce ATF's written guidance as to the ability of both police departments and law letter holders to allow others to fire machine guns. In addition, to the extent there is other written guidance or SOPs that have not yet been produced, the Government also must produce those materials by August 31. The parties' filings are unclear and somewhat in conflict on this point. (*Compare* ECF 257, p. 4 (Wendt's Reply) (identifying "[m]issing guidance and SOPs" to include, *inter alia*, those "related to Forms 2, 5, and 6" and "machine gun shoots") *with* ECF 252, p. 2 (Government's Response) (addressing only "standard operating procedures related to machine gun transfers" and "written guidance on 'the ability of . . . law letter holders to allow others to fire the machine guns'").)

Third, Wendt seeks production of documents reflecting "The ATF NFA Division's approval of transfers of mini-guns, 50 caliber machine guns, belt-fed machine guns, and any other machine gun related to this case that th[e] Government claims was unsuitable for law enforcement." (ECF 245, p. 3.) The Government argues that these materials are not relevant or exculpatory because Wendt "is charged with materially false statements about his intent in acquiring these machine guns; he's not charged with acquiring machine guns unsuitable for law enforcement." (ECF 252, pp. 2–3.) The Government admits, however, that the "characteristics of the machine guns Wendt requested for these purported purposes are certainly evidence of the illegitimacy of the purchases and of Wendt's motive to acquire the machine guns . . . ." (Id., p. 3.)

The Government is splitting hairs. The Indictment expressly mentions "suitability" several times, including once in connection with a demonstration law letter for a minigun (ECF 2, ¶ 36) and once in connection with a demonstration law letter for a .50 caliber machine gun (id., ¶ 41).[1] In both places, the Indictment treats the suitability (or lack thereof) of the weapons as evidence of the falsity of Wendt's statements that the Adair Police Department was interested in a

---

[1] Suitability is also raised in connection with Wendt's sale of two machine guns registered to the Adair Police Department to an FFL-SOT in Alabama. (Id., ¶ 43.)

demonstration of the weapons. (Id.) In other words, the Indictment implies that the Adair Police Department could not have been interested in such weapons because they were not suitable for use by a local law enforcement agency. (Id.) Similarly, but more generally, one of the overarching themes of the Indictment is that a two- or three-person police department in a small rural community could not possibly need dozens of machine guns, and thus Wendt must have been lying when he claimed the Adair Police Department was interested in so many of those weapons. (E.g., id., ¶¶ 1, 4, 20.)

Against this backdrop, the Court agrees with Wendt that evidence of the ATF NFA Division's approval of transfers of mini-guns, .50 caliber machine guns, and belt fed machine guns might be relevant and exculpatory. The Court also concludes, however, that Wendt's request is overbroad insofar as it contains no apparent limitation on such records; i.e., Wendt appears to want every record of every approval of the transfer of such weapons anywhere in the country at any time. This is far more than necessary or appropriate. Thus, the Court SUSTAINS IN PART Wendt's Appeal of Magistrate Judge's Order and orders the Government to produce the following by August 31, 2023: all of the ATF NFA Division's approvals in the last three years (i.e., dating to August 17, 2020) in the State of Iowa for mini-guns, .50 caliber machine guns, and belt-fed machine guns. In addition, if the ATF NFA Division maintains summary data on the number of approvals of such weapons nationwide (as might be found in an annual report or some other year-end-type summary), it must produce this information as well.[2]

The Court's ruling should not be interpreted as a conclusive determination as to the admissibility of such evidence at trial. The case is principally about whether Wendt made false statements in connection with his position as Police Chief for the City of Adair, not the circumstances surrounding the acquisition of machine guns by other law enforcement agencies. Still, if—as appears to be the case—the Government intends to prove its case in part by presenting evidence or argument that Wendt wrote law letters for more machine guns than the City of Adair possibly could have needed, the Court may give Wendt latitude to present evidence regarding machine gun ownership and usage by comparable police departments.

---

[2] To be clear, the ATF NFA Division is not required to create a report or document that does not already exist. So, for example, if the ATF NFA Division theoretically could mine its data to create a report showing the total number of approvals but has not previously done so for the time period in question, no disclosure is required.

4

      <u>Fourth</u>, Wendt seeks "the ATF NFA Division's records regarding machine gun ownership by law enforcement in the State of Iowa within the last five years." (ECF 245, p. 3.) As with the transfer records the Court just addressed, the Government contests the relevance of this information. The Government all but conceded the relevance, however, when Special Agent Etnier contacted other law enforcement agencies in the State of Iowa to determine whether they possess machine guns and, if so, how many. Moreover, again, the Court concludes that this information might be relevant given the Government's apparent intention to present testimony and argument that the Adair Police Department would not have needed the number or type of machine guns Wendt was trying to acquire. The Court therefore SUSTAINS IN PART Wendt's Appeal of Magistrate Judge's Order. By August 31, 2023, the ATF NFA Division must produce records in its possession showing which law enforcement agencies in Iowa had machine guns in the past five years and the number of machine guns each such agency possessed. The Court OVERRULES IN PART Wendt's Appeal of Magistrate Judge's Order to the extent it seeks additional records on this topic.

      <u>Fifth</u>, Wendt seeks records from "[t]he ATF NFA Division's denials of machine gun transfers to law enforcement agencies based on suitability of use for law enforcement use, the size of the town, the number of officers, or any other condition the Government has objected to in this case." (Id.) The Government objects because, again, it contends the case is about whether Wendt lied when he said the machine guns were for use by or demonstration for the City of Adair, not whether they were suitable for law enforcement purposes. (ECF 252, p. 3.) As explained above, the Government's position cannot be reconciled with the allegations of the Indictment, which appear to consider suitability relevant to the truth or falsity of Wendt's statements. Accordingly, the Court SUSTAINS IN PART Wendt's Appeal of Magistrate Judge's Order. By August 31, 2023, the Government must produce records reflecting the ATF NFA Division's denials of machine gun transfers to law enforcement agencies in the State of Iowa during the past five years based on suitability (or lack thereof) for law enforcement use, the size of the town, or the number of officers in the police department. This is intentionally narrower than Wendt's request, which the Court concludes is overbroad. Wendt's appeal is OVERRULED IN PART to the extent it seeks records beyond what the Court has ordered in this paragraph.

      Wendt's Appeal from Magistrate Judge's Order raises other issues, including concerns about the Government's compliance with its discovery obligations (ECF 245, p. 2) and a request

for the Court to "make a finding of the [discovery] violations and take those violations into account as this case moves forward" (id., p. 4). The Court has concluded above that some of the records Wendt is seeking might be relevant and exculpatory and therefore must be produced. The Court does not, however, conclude that the record reflects bad faith on the Government's part; rather, there simply appears to be a dispute about the scope of the Government's *Brady* obligations in the unique circumstances presented here. Other than this dispute, most of Wendt's complaints about discovery violations are based on his belief that the Government should go above and beyond what federal law and precedent require in terms of discovery. In other words, Wendt wants to force the Government to adhere to his view of what discovery obligations *should be* instead of what federal law says they *are*. There is no basis for sanctions in these circumstances.

IT IS SO ORDERED.

Dated: August 17, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE