# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>    Defendant. | Case No.: 4:22-cr-199<br><br><br>**DEFENDANT'S MOTION IN LIMINE** |

Defendant Bradley Eugene Wendt ("Wendt") objects to and moves in limine to exclude evidence, testimony, and argument at trial relating to the following:

1. **<u>Jury Emotions, Fear, Danger of Guns, and Politics</u>**. The Government should be precluded and instructed to avoid any evidence, testimony, or argument with the intention or effect of appealing to the jury's emotions, fear, danger of guns, or politics. Any such evidence, testimony, or argument has no relevance and would be highly prejudicial. *See* Fed. R. Evid. 401-403. This case already involves an issue that is much debated with strong feelings. In addition, this State just experienced its first-in-the-nation caucuses and there have been a lot of political advertisements and discussions. Also, just recently there was a school shooting in Perry, Iowa and, just shortly thereafter, the Department of Justice released its report on the Uvalde school shooting. Moreover, this case has received extensive coverage in the media. It will be impossible to avoid jurors' feelings on this issue or their political beliefs. However, there should be great sensitivity provided to these issues to avoid an unfair trial. In particular, the Government should not be permitted to introduce such matters as: (1) anything designed to demonstrate the power or danger of the guns at issue; (2) images of machine guns that are not the actual machine guns alleged in the counts; (3) images of any weapon or associated item that is not the subject of a

1

count; (4) cumulative evidence of the use of those machine guns; (5) the Trump flag; (6) any speculation as to what could be or might be done with the machine guns; (7) the need to have a regulatory scheme to prevent the acquisition of machine guns; (8) what may happen to the machine guns after they are acquired, including ending up in the wrong hands; and (9) any mention or emphasis on these topics in the Government's closing argument.[1] Under the law, a machine gun is a machine gun and there is no relevant distinction regarding the type of machine gun. Further, the suitability of a particular machine gun for law enforcement is immaterial to whether a law enforcement agency may acquire it.

      Wendt is at a disadvantage here already in that the Government will be submitting evidence of numerous machine guns. While that evidence may be relevant and admissible, that does not mean it doesn't present a real and significant likelihood of appealing to jurors' fears and emotions – which is not a permissible basis for a verdict. Further, it is Wendt – not the Government – that has a constitutional right to a fair trial. As such, it may be necessary for Wendt to respond to these fears and emotions in a way that is not necessary for the Government to ameliorate any unfair inference or impact.

      In addition, Wendt requests that the Court address these issues and allow the parties extra time to address these issues in voir dire. In particular, Wendt requests that the Court inquire about (1) media coverage of this case; and (2) whether there are any jurors who might find it difficult to render a fair verdict based on the allegation of the acquisition of a machine gun. Also, Wendt respectfully requests that the Court not attempt to rehabilitate any jurors who express prior knowledge or a bias against guns. The Court has considerable power and authority and it is the natural tendency of any potential juror to go along with what the Court wants from the juror.

---

[1] This is not intended to be an exhaustive list but rather an illustrative list of examples.

Further, simply erring on the side of forcing Wendt to exercise a preemptory strike on the juror deprives Wendt of that preemptory strike.

Lastly, Wendt requests that these issues be addressed in instructions from the Court to the extent necessary to prevent the jury from reaching a verdict based on an improper basis.

2. **<u>Exculpatory, Impeachment, or Prior Statements Discovery</u>**. The Government should not be allowed to introduce any evidence where relevant exculpatory, impeachment, and prior statement discovery has not been produced. Wendt has made ample record regarding his attempts to obtain access to discovery in this case.

Wendt is entitled to the following discovery: (1) any information that is exculpatory or in any way inconsistent with the Government's case, *see Brady v. Maryland*, 373 U.S. 83 (1963); (2) any information that could be used to impeach a law enforcement officer or other Government witnesses, *see Giglio v. United States*, 405 U.S. 150 (1972); (3) any prior statements of a Government witness, *see* Jencks Act, 18 U.S.C. § 3500. The Government is required to produce any of the above discovery that is in the possession, custody, <u>or</u> control of the entire <u>prosecution team</u> – including the ATF. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). It is important to note that the timing of the disclosure of discovery is important not just to be able to admit evidence at trial or cross-examine a witness, but also for purposes of crafting a trial strategy, pretrial filings, an opening statement, the examination of witnesses, deciding what witnesses to call, and many other matters.

In particular, Wendt believes there may be discovery issues regarding matters such as the following:

a. Approval of law letters with similar language, circumstances, interpretations, and/or explanations as those alleged to be false and/or material in this case;

b.       Approval of transfers of machine guns to dealers as "sales samples" similar to those at issue in this case;

c.       ATF practices and interpretations of regulations and guidance different from that portrayed in this case;

d.       Other ATF actions that would support positions contrary to the positions taken by the Government in this case; and

e.       Internal ATF communications regarding Wendt.

Accordingly, the Court should prohibit the Government from seeking to introduce or comment on any evidence concerning which exculpatory or potential impeachment discovery has not been produced.

3.       **Character Evidence or Evidence of Other Crimes, Wrongs, or Acts**. The Government should not be allowed to introduce any evidence of alleged prior bad acts or other actions by Wendt that occurred prior to or outside of the conduct alleged in the Indictment. "Evidence of any other crimes, wrongs, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Further, in criminal cases, defendants are entitled to written notice of any such evidence and the basis for its admissibility. *Id*. It is not incumbent upon a defendant to request this notice. Nonetheless, because he had not received any such notice, Wendt filed a request for such notice by January 15, 2024, so he could address such matters in his motion in limine and trial preparation. ECF 286. The Government never responded. The deadline for motions in limine has now come without any such notice by the Government and it is too late to incorporate such matters into trial preparation.

Accordingly, the Government should not be allowed to introduce any evidence of alleged prior bad acts or other actions by Wendt that occurred prior to or outside of the conduct specifically alleged in the Indictment

4. **Statements by Third Parties or Alleged Co-Conspirators**. The Government should be excluded from introducing evidence regarding statements of third parties or alleged co-conspirators. Such statements are hearsay. *See, e.g.*, *Bevill v. Home Depot U.S.A., Inc.*, 753 F. Supp. 2d 816, 831 (S.D. Iowa 2009). The Government must prove that Wendt and the declarant were both part of a conspiracy before admitting the statement. *See United States v. O'Neil*, 839 F. Supp. 2d 1030, 1037 (S.D. Iowa 2011).

5. **Completeness of Wendt's Statements**. The Government should not be permitted to present a "distorted and misleading" impression of Wendt's statements by selectively editing out the context in which they were made. *See* Fed. R. Evid. 106; *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986). The context in which Wendt's prior statements were made is central to a jury's determination of their evidentiary value. These statements cannot fairly be presented by the Government in a piecemeal fashion. They should be admitted in their complete form—less any redactions required by *Bruton v. United States*, 391 U.S. 1234 (1968). *See* Fed. R. Evid. 106; *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988) ("[Rule 106] simply speaks the obvious notion that parties should not be able to lift selected portions out of context.").

"Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of ***distorted and misleading trials***, and creates difficulties for both litigants and the trial court." *United States*

*v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) (emphasis added); *see also United States v. Adams*, 722 F.3d 788, 826 n.31 (6th Cir. 2013) (collecting consistent authorities and scholarship); *United States v. Lopez-Medina*, 596 F.3d 716, 735–36 (10th Cir. 2010); *United States v. Paladino*, 401 F.3d 471, 476 (7th Cir. 2005) (ruling the government's "misleading deletions" violated Rule 106); *United States v. Glover*, 101 F.3d 1183, 1192 (7th Cir. 1996); *United States v. Houlihan*, 92 F.3d 1271, 1283 (1st Cir. 1996); *United States v. Quinones-Chavez*, 641 F. App'x 722, 729–30 (9th Cir. 2016) (Fisher, J., concurring).

6. **Testimonial Statements in Violation of *Crawford* & the Confrontation Clause**. The Government cannot submit evidence of statements that are testimonial in nature. *Crawford v. Washington*, 541 U.S. 36 (2004) (holding that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination"). Accordingly, the Government should be precluded from introducing any statements that are testimonial in nature.

7. **Authority of the ATF to Define Terms, Unlawful Interpretations of the Law, and Unlawful Practice by ATF**. The Government should be precluded from submitting evidence or making any argument that the ATF has the authority to define the terms at issue. The Government should also be precluded from any evidence or argument that is inconsistent with the jury instructions and/or not supported by the law. As previously set forth, the Court should provide any instructions on the law as set forth in the relevant statutes and regulations. While testimony in this case will necessarily encompass that law, the Government should not be able to give the jury the impression that the law is different or that the ATF has the authority to vary from that law.

8. **Amendment of or Variance from the Indictment**. The Government should not be allowed to introduce evidence or make arguments that would be different from that alleged in the Indictment. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." U.S. Const. amend. V. The indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1); *see also Apprendi v. New Jersey*, 530 U.S. 466, 501 (2000) (Thomas, J. concurring) (stating the indictment must include "every fact that is by law a basis for imposing or increasing punishment"). The Fifth Amendment is violated when the Government is allowed to constructively amend the indictment or vary from it at trial. "A constructive amendment occurs 'when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them.'" *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014) (citation omitted).

A variance "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id*. at 1189 (citation omitted). Put simply, "[a] variance involves a divergence between the allegations set forth in the indictment and the proof offered at trial." *Id*. at 1189. Variance can prejudice the defendant when he is "unable to present his case and taken surprise by the evidence offered at trial." *United States v. Mize*, 814 F.3d 401, 411 (2016) (quotations and citation omitted). Also, prejudice from variance can occur "where the defendant is convicted for substantive offense committed by another" or "guilt transference." *Id*. (quotations and citations omitted).

In particular, the Government must be precluded from introducing or attempting to rely upon the following:

    a.      Alleged false statements that do not form the basis of one of the counts;

    b.      Alleged false statements that are not specifically alleged to be material;

    c.      Any alleged omissions by Wendt;

    d.      Any alleged fraud or misrepresentations not specifically alleged in the Indictment;

    e.      Any notion that somehow the ATF did not have the ability to make inquiries of Wendt, the Adair City Council, or others in making its determinations;

    f.      Any transactions that are not alleged in the Indictment; or

    g.      Any possession of a machine gun to form the basis of the new Count 15 other than the alleged possession of the identified gun on April 16, 2022, by Wendt and the undercover law enforcement agent identified by the Government.[2]

    9.      **<u>Limits on Conspiracy Charge</u>**. The Government's conspiracy count presents a multitude of problems:

First, the conspiracy charge runs afoul of the protections afforded in the Gun Control Act. The Government may not use "information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with" the statutes and regulations at issue in this case, except in a prosecution "with respect to the furnishing of false information." 26 U.S.C. § 5848. A conspiracy charge would allow the jury to convict Wendt without finding that he furnished false information.

---

[2] Wendt is accused of aiding and abetting the illegal possession of a machine gun. He must be entitled to be informed of who he is alleged to have aided and abetted in this regard. *United States v. Scrushy*, No. CR-03-BE-530-S, 2004 WL 483264, at *7 (N.D. Ala. Mar. 3, 2004) ("the Government agrees that defendant is entitled to a bill of particulars to name the co-conspirators and "aiders and abetters" alleged in the indictment"). Accordingly, Wendt requested those details from the Government and the Government provided the information attached as **Exhibit A**. The reports identified by the Government in its email are attached as **Exhibit B**.

8

Second, a conspiracy to defraud the ATF charge should not be submitted to the jury, because it is too vague. *See Ciminelli v. United States*, 598 U.S. 306 (2023) (rejecting right to control theory of federal fraud); *Percoco v. United States*, 598 U.S. 319 (2023) (holding that a private person could not be convicted of defrauding the public of its right to "honest services" who dominated and controlled government business and had a special relationship with government because it was too vague); *Skilling v. United States*, 561 U.S. 358, 401 (2010) (limiting honest services fraud to the "core" conduct of bribes and kickbacks). Here, the Government simply alleges Wendt defrauded the ATF by generally obstructing its functions – and does so without any allegation of a bribe or kickback. Such a theory runs afoul of the Supreme Court's limitations on conspiracies to defraud.

Third, there is a real danger of confusion were the Government to move forward under both clauses of Section 371. *See United States v. Manarik*, 875 F.2d 1186 (6th Cir. 1989); U.S. Dep't of Just., Criminal Tax Manual (updated 2016), https://www.justice.gov/usdoj-media/tax/media/1109851/dl?inline ("The Tax Division advises against charging a conspiracy to defraud and a conspiracy to commit substantive tax offenses in the same count or indictment. This is rarely necessary and tends to unduly complicate the trial, especially with respect to the jury instructions."). In particular, there is a significant risk in this case that the use of the defraud clause will simply lower the Government's burden of proof with respect to the substantive false statement counts.

Fourth, there is a significant risk of confusion presented by the possibility of multiple conspiracies. The only conspiracy Wendt believes has been alleged is with his now-dismissed co-defendant, Robert Allen Williams. See ECF 260 (wherein the Court describes the charge as follows: "The Indictment alleges in Count 1 that Wendt conspired with his now-dismissed co-

defendant, Robert Allen Williams, to make false statements and defraud ATF in violation of 18 U.S.C. §§ 371, 1001(a)(2). The Government should not be allowed to introduce evidence or argument, or otherwise attempt to prove or establish, a conspiracy between Wendt and anyone else in this case. To do so would amount to trial by ambush and be unconstitutional. *See supra*.

10. **<u>Vagueness</u>**. Any attempted criminal enforcement against Wendt based on the Regulation (479 C.F.R. § 105) or the Government's interpretation of it would violate his right to due process. *United States v. Johnson*, 937 F.2d 392, 399 (8th Cir. 1991) ("When the government has created an ambiguity upon which the defendant has reasonably relied in making his statement, the government will ordinarily be unable to negative the defendant's interpretation."). Not only does the Government misstate the law, but the requirements it now seeks to retroactively impose are ambiguous. For example, even if the law required a dealer purchase to require the interest of a law enforcement agency "for potential purchase," it is not clear what that means. Presumably, this would mean anything that could help inform the purchase of not just that machine gun, a similar machine gun, or no machine gun at all. The ATF has previously conceded that the make and model are not important. Nor is it clear how an interest in a demonstration would be different than an interest in a purchase under the Regulation. Neither the purchase nor the demonstration has to actually occur. And when a law enforcement agency does make a purchase, it typically does not purchase the machine gun acquired by the dealer for demonstration. It further does not make sense how the ATF could restrict the type of machine gun acquired by the dealer for purposes of purchase or demonstration while, at the same time, acknowledging the law enforcement agency can purchase any type of machine gun it wishes and as many as it wishes.

At a minimum, these requirements cannot be enforced in a criminal case against a police chief. *See United States v. Vest*, 448 F. Supp. 2d 1002, 1008 (S.D. Ill. 2006) (holding 18 U.S.C. § 922(o) unconstitutionally vague as applied to a police officer and firearm instructor because "a police officer such as Vest is not only unable to determine *how* to properly acquire proper authority in order to place his conduct within the law enforcement exception, but is also subjected to possible arbitrary enforcement for non-conforming behavior") (emphasis in original)).

In *United States v. Vest*, the court found that § 922(o) was unconstitutionally vague, among other reasons, because it allowed arbitrary enforcement:

> When arguing its position, the Assistant United States Attorney ("AUSA") recounted the hypothetical proposed as to whether police officers who fired the machine gun at issue during range qualification training also unlawfully possessed the weapon in violation of § 922(o), or whether they would have proper "authority" under the law enforcement exception, if they believed Vest, as the lead rifle instructor, had authority to allow them to fire the machine gun in the first place. In response to this hypothetical, the AUSA stated the following to explain why it would not prosecute those officers under § 922(o): "Those [police officers] are under a reasonable belief that the person handing them that weapon, an instructor, is imbued with the authority to have that weapon and to provide it to them. They don't have to question that person. They're not acquiring it in the fashion that this defendant did. . . ." [. . .]
>
> The fact that the Government has to clarify a subset of police officers who would not be prosecuted under this statute bolsters the assertion that § 922(o)(2)(A) allows for arbitrary enforcement because it allows the prosecution to essentially define the criminal behavior. The AUSA's argument cited above presents the idea that for the police officers handling the machine gun, Vest's apparent or perceived authority is adequate to place them within the parameters of the law enforcement exception, so that such possession is not criminal. Yet, nowhere in § 922(o) is there so much as even a brief mention of this "apparent authority," as proffered by the Government. Compare that with the agent's theory of who is in violation of the statute even when that apparent authority still exists. This, too, is indicative of § 922(o)'s potential for arbitrary enforcement. Similarly, because there is not a statutory definition of authority for Vest, it will be left to the jury to ultimately determine what type of authority is proper and whether Vest therefore had the proper authority in order for the law enforcement exception to exonerate him.

*United States v. Vest*, 448 F. Supp. 2d 1002, 1012-13 (S.D. Ill. 2006).

The Indictment does not allege that Wendt was acting outside the scope of his authority as Police Chief. It does not allege some sort of honest services fraud wherein Wendt took advantage of his position because that would require a bribe or kickback. *See Skilling v. United States*, 561 U.S. 358, 363 (2010). The City is the ultimate arbiter of what it wants to authorize and/or acquire when it comes to machine guns. Regardless of anything else, unless the Government can prove Wendt acted outside the authority given to him by the City, it cannot prosecute him. Even if the Court upholds the Regulation, if Wendt was within his scope of authority, any purchase was de facto for "official use." And because Wendt had the authority as Police Chief to purchase any type of machine gun he wanted to purchase, any authorization was per se connected to a potential purchase.

Lastly, Wendt should be immune for any actions he took under his authority as Police Chief unless the Government can demonstrate that Wendt acted outside his authority and/or took actions in violation of well-established legal precedent. Neither of which the Government can show. "Generally, government officials performing discretionary functions have qualified immunity, shielding them from civil liability. " *Daniels v. Iowa*, No. 4:04-CV-40420, 2005 WL 1398498, at *16 (S.D. Iowa May 23, 2005), *aff'd*, 170 F. App'x 446 (8th Cir. 2006). "Public officials are entitled to immunity from claims brought against them in their individual capacities if their actions did not violate clearly established law of which a reasonable person in the officials' position would be aware. " *Gerlich v. Leath*, 152 F. Supp. 3d 1152 (S.D. Iowa 2016), *aff'd*, 847 F.3d 1005 (8th Cir. 2017), and *aff'd*, 861 F.3d 697 (8th Cir. 2017). While Wendt understands these are civil cases, it makes no sense to allow the criminal prosecution of a police officer for actions that could not even be the subject of a civil lawsuit.

WHEREFORE, Wendt respectfully requests that the Court grant his motions in limine and order the Government to refrain from mentioning any of these matters in the presence of the jury. Specifically, the Government should be directed that no mention of these matters may be made in jury selection, its opening statement, examination of witnesses, testimony of witnesses, objections made in the jury's presence, or argument. Further, Wendt requests that the Government be advised to admonish its witnesses to avoid any statements or testimony regarding these matters.

Dated: January 22, 2024

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
*nick.klinefeldt@faegredrinker.com*
*rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR DEFENDANT WENDT***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of January, 2024, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Sandy Ellingson*