IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 4:22-cr-199 |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE |
| BRADLEY EUGENE WENDT, | ) | TO WENDT'S MOTION FOR |
| | ) | JUDGMENT OF ACQUITTAL |
| Defendant. | ) | AND/OR NEW TRIAL |

The United States responds to Defendant Bradley Eugene Wendt's Motion for

Judgment of Acquittal and/or New Trial (Dkt. 353).

## TABLE OF CONTENTS

Introduction .................................................................................................... 2

Legal Standard ............................................................................................... 2

Argument ........................................................................................................ 3

   I.    The Court correctly instructed the jury ......................................... 3

       A.   The Court correctly instructed the jury that lawful possession under § 922(o)(2)(A) is limited to official use .................. 4

       B.   The Court correctly instructed the jury on the "purchase law letter" counts ......................................................................... 7

       C.   The Court correctly instructed the jury on the "demonstration law letter" counts ............................................................. 9

  II.    The charges are not unconstitutionally vague ........................... 12

  III.   The evidence supports each of Wendt's convictions ................... 14

       A.   Sufficient evidence supports Wendt's conviction for conspiracy to defraud the ATF ......................................................... 15

       B.   Sufficient evidence supports Wendt's conviction on Count 3 ............... 16

       C.   Sufficient evidence supports Wendt's convictions on the demonstration law letter counts ............................................. 19

       D.   Sufficient evidence supports Wendt's conviction for illegal possession of a machine gun ................................................. 21

Conclusion ..................................................................................................... 22

## INTRODUCTION

A jury convicted Bradley Wendt of eleven crimes stemming from his use of law letters to obtain and possess machine guns: conspiracy to make false statements to the ATF (Count 1), false statements to the ATF (Counts 3, 6, 8-9, 13-16, and 18), and illegal possession of a machine gun (Count 20).[1] The jury found Wendt not guilty of four false statement counts (Counts 2, 4-5, and 7).

After trial, Wendt filed a motion for judgment of acquittal and/or new trial. *See* Dkt. 353. In the motion, Wendt raises a host of legal challenges to the charges against him, many of which (or variations of which) the Court already rejected. Wendt also argues that the evidence was insufficient to sustain his convictions.

None of Wendt's arguments warrant a judgment of acquittal or new trial. The Court properly instructed the jury, and the evidence was sufficient on each count of conviction. The Court should deny Wendt's motion.

## LEGAL STANDARD

The Court must grant a motion for judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gonzalez*, 826 F.3d 1122, 1126 (8th Cir. 2016) (quotation omitted). The Court must view the evidence in the light most favorable to the guilty

---

[1] Before trial, the government voluntarily dismissed Counts 10-12, 17, and 19 of the indictment, and the remaining counts were renumbered for purposes of trial only. *See* Dkt. 289, 294. In this filing, the government's references to specific counts refer to the original numbering in the indictment.

verdict, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences supported by the evidence. *Id.* "This standard is very strict, and the jury's verdict is not to be lightly overturned." *United States v. Wright*, 993 F.3d 1054, 1065 (8th Cir. 2021) (quotation omitted).

The Court may "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006) (cleaned up). The Court should exercise its authority to grant a new trial "sparingly and with caution." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (quotation omitted).

## ARGUMENT

### I.    The Court correctly instructed the jury.

Wendt first argues that "[a]ll the charges against [him] rely on inaccurate descriptions of the legal requirements at issue in this case." Wendt Br. (Dkt. 353-1) at 11.[2] None of Wendt's arguments have merit.[3] The Court correctly instructed the jury, and Wendt's complaints do not warrant a new trial.[4]

---

[2] The government's citations to Wendt's brief refer to the page numbers in the footer of the brief.

[3] Before proceeding to his argument, Wendt references his grievances about suppression issues, *Kastigar* proceedings, and discovery matters. Wendt Br. at 8-10 & n.5. The Court resolved these matters in various pretrial rulings and the government does not address them further in this filing.

[4] Wendt acknowledges that different legal standards govern motions for judgment of acquittal and motions for new trial. *See* Wendt Br. at 10-11. In advancing his arguments, however, Wendt does not differentiate between these standards or specify which of his arguments arise under which standard. To be clear, "[t]here is

### A.   The Court correctly instructed the jury that lawful possession under § 922(o)(2)(A) is limited to official use.

Wendt begins with the phrase "official use." Wendt Br. at 11-18. The law generally prohibits the transfer or possession of machine guns. *See* 18 U.S.C. § 922(o)(1). There is an exception, however, for the transfer to or possession "by or under the authority of . . . a State, or a department, agency, or political subdivision thereof." *Id.* § 922(o)(2)(A). In Wendt's view, there is no "official use" requirement inherent in this exception because the words "official use" don't appear in the statute. Wendt Br. at 12.

Possession "by or under the authority" of a governmental entity is necessarily limited to possession in an official capacity. Section 922(o)(2)(A) "is properly read to permit only lawful possession of machine guns by federal or state agents *acting in an official capacity*." *United States v. Warner*, 5 F.3d 1378, 1381 (10th Cir. 1993) (emphasis added). Indeed, "§ 922(o)(2)(A) was enacted so that military personnel and police officers, *when acting officially*, could utilize and possess machine guns." *Id.* (emphasis added). "Clear statutory language and Congressional intent limit[s] lawful transfer and possession of machine guns to authorized governmental personnel for use *in their official capacities*." *United States v. Neuner*, 535 F. App'x 373, 374 n.1 (5th Cir. 2013) (emphasis added). A contrary interpretation—one which authorized

---

only one ground for a motion for a judgment of acquittal. This is that 'the evidence is insufficient to sustain a conviction' of one or more of the offenses charged in the indictment or information." 2A Wright & Miller, Fed. Prac. & Proc. Crim. § 466 (4th ed.). To the extent Wendt's arguments go beyond sufficiency of the evidence, they must be addressed solely as a motion for a new trial. *See United States v. Huber*, 243 F. Supp. 2d 996, 998-99 (D.N.D. 2003).

law enforcement officers to possess machine guns beyond their official duties (*i.e.*, as private citizens)—would circumvent the clear limits of § 922(o). *Cf. Warner*, 5 F.3d at 1381 ("To read this subsection [§ 922(o)(2)(A)] to permit an exception for private citizens would essentially eliminate the federal prohibition entirely.").

Considering the plain language of § 922(o)(2)(A), and the case law applying it, the Court properly instructed the jury that the City of Adair may acquire and possess machine guns only "for official use." Final Jury Instruction No. 26. The Court likewise correctly instructed the jury that Wendt's authority to possess a machine gun was limited to possession that was "within the scope of his official duties."[5] Final Jury Instruction No. 29.

This conclusion is further supported by 27 C.F.R. § 479.105, which governs the transfer and possession of machine guns. Among other things, this regulation addresses the importation and manufacture of machine guns. *Id.* § 479.105(c). That section provides that "[t]he registration of such machine guns . . . and their subsequent transfer shall be conditioned upon and restricted to the sale or distribution of such weapons *for the official use* of Federal, State or local government entities." *Id.* (emphasis added). As this Court previously recognized, "[a]s used in 27 C.F.R. § 479.105(c), 'official use' does not simply mean that the machine gun is going

---

[5] The Court's instructions on the § 922(o) count (Count 20) are consistent with the district court's instructions in *United States v. Spicer*, No. 3:14-cr-52 (S.D. Ohio), which involved the prosecution of a former police officer under § 922(o). In *Spicer*, the court instructed the jury that "[t]he only persons who are lawfully authorized to possess machine guns are federal or state agents, such as police officers, *acting in an official capacity* at the time of possession of the machine gun." No. 3:14-cr-52 (S.D. Ohio) at Dkt. 33 p. 24 (emphasis added).

to be *registered* to a law enforcement agency, but also that the machine gun is genuinely for the *official use* of that agency." Dkt. 310 at 14 (emphasis in original).

Contrary to Wendt's arguments, (Wendt Br. at 14-15), there is nothing about this regulation that is inconsistent with § 922(o)(2)(A). The regulation acknowledges § 922(o)'s general prohibition on the possession of machine guns "except . . . possession by or under the authority of" certain governmental entities. 27 C.F.R. § 479.105(a). As noted above, § 922(o)(2)(A) "is properly read to permit only lawful possession of machine guns by federal or state agents acting in an official capacity." *Warner*, 5 F.3d at 1381. Thus, § 479.105(c)'s "official use" limitation is consistent with § 922(o)(2)(A).

Wendt also argues that his possession of a machine gun was "authorized" by Iowa law. *See* Wendt Br. at 17 (citing Iowa Code § 724.2(1)). Iowa law provides that an offensive weapon, including a machine gun, may be possessed by a peace officer only when his "*duties or lawful activities* require or permit such possession." Iowa Code §§ 724.1(1)(a), 724.2(1)(a) (emphasis added). By its terms, the Iowa statute provides that a peace officer's possession of a machine gun must be within his "duties or lawful activities." In other words, it is consistent with § 922(o)(2)(A) itself, which "permit[s] only lawful possession of machine guns by federal or state agents acting in an official capacity." *Warner*, 5 F.3d at 1381.

### B.    The Court correctly instructed the jury on the "purchase law letter" counts.

The jury convicted Wendt of Count 3, which charged him with making false statements in a "purchase law letter."[6] *See* Final Jury Instruction No. 16. Specifically, the Indictment alleged that Wendt falsely stated in this letter: (1) that the machine guns would be used to carry out the official duties and responsibilities of the Adair Police Department; and (2) that the machine guns were not being acquired for the purpose of resale or transfer. *Id.*; *see* GX 251 at 1 (purchase law letter stating MP7A2 machine guns were "not being acquired for the purpose of resale or transfer" and "will be used to carry out [the] official responsibilities and duties" of the Adair Police Department).

Wendt contends that the Court's instructions, including Instruction Nos. 16 and 24, should not have used the terms "official use" and "not for resale." Wendt Br. at 18. Wendt's argument, it seems, is that although he affirmatively made these statements in the purchase law letter, neither was legally required.[7] *See id.* at 21 (arguing that "not for resale" was a "nonexistent legal requirement").

These arguments are misplaced. As this Court has recognized, "section 1001(a)(2) is broad in scope and imposes criminal liability even for materially false

---

[6] Counts 2 and 3 charged Wendt with false statements in purchase law letters. The jury convicted Wendt of Count 3 but found him not guilty of Count 2. *See* Dkt. 340 at 3.

[7] To the extent Wendt objects to the very concept of a "purchase law letter," the Court rejected this argument in ruling on Wendt's motion to dismiss. *See* Dkt. 260 at 8-11. And the Court's jury instructions made clear that the requisite transfer paperwork could come in the form of a purchase law letter, purchase order, or some other submission to establish that a purchase was for the agency's official use. *See* Final Jury Instruction No. 24.

statements that are *not* required by law or regulation." Dkt. 260 at 11 (emphasis in original). 18 U.S.C. § 1001, which was the basis for each of the false statement charges against Wendt, "forbids falsification of any . . . statement, whether or not legally required, made to a federal agency." *United States v. Arcadipane*, 41 F.3d 1, 5 (1st Cir. 1994). In short, "the existence of a legal requirement that a statement be made is irrelevant for purposes of 18 U.S.C. § 1001." *United States v. Kingston*, 971 F.2d 481, 490 (10th Cir. 1992); *see also United States v. Dick*, 744 F.2d 546, 553 (7th Cir. 1984) ("That a statement was not required to be made to the agency does not make the statement any less material."); *United States v. Diaz*, 690 F.2d 1352, 1358 (11th Cir. 1982) (explaining that section 1001 "prohibits false statements generally, and not just those required by law or regulation").

Thus, even if Wendt were correct that his statements regarding "official use" and "not for resale" were not legally required, those statements are still a proper basis for a false statement conviction under § 1001.[8] One of the government's expert witnesses, Austin Funk of the ATF Imports Branch, testified to the materiality of Wendt's statements. Specifically, Funk testified that Wendt's statements regarding official use and not for resale could have impacted the ATF's decision whether to approve the importation of the machine guns at issue. *See United States v. Benton*, 890 F.3d 697, 712 (8th Cir. 2018) ("A false statement is material if it has a natural

---

[8] As discussed earlier, the "official use" requirement is consistent with § 922(o)(2)(A) itself, which authorizes possession only "by or under the authority" of a government entity, as well as 27 C.F.R. § 479.105(c). And if a machine gun *is* being acquired for the purpose of resale, it is necessarily *not* being acquired for the "official use" of a law enforcement agency.

tendency to influence or was capable of influencing the government agency or official to which it was addressed.").

### C. The Court correctly instructed the jury on the "demonstration law letter" counts.

In Counts 6, 8-9, 13-16, and 18, Wendt was convicted of making false statements in demonstration law letters. *See* Final Jury Instruction No. 17. Specifically, the jury found that Wendt falsely stated in these letters that certain machine guns were being requested for demonstration for future potential purchase by the Adair Police Department. *Id.*

Wendt argues that the Court erred in instructing the jury on these counts. Wendt suggests, seemingly for the first time, that the entire concept of a demonstration law letter is "illegal." *See* Wendt Br. at 24. And without this "illegal law letter system," Wendt contends, "the law letters that formed the basis of the prosecution would never have existed." *Id.*

Wendt's argument lacks merit. Section 922(o)(2)(A) authorizes the possession of machine guns "by or under the authority" of certain governmental entities. The demonstration law letter procedure outlined in 27 C.F.R. § 479.105(d) facilitates this narrow exception. That section authorizes the transfer of machine guns to qualified firearms dealers "if it is established by specific information *the expected governmental customers* who would require a demonstration of the weapon." 27 C.F.R. § 479.105(d) (emphasis added). The regulation further requires "letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon." *Id.* As these provisions demonstrate, a dealer's acquisition

9

and possession of a machine gun pursuant to this regulation is inherently "under the authority" of the requesting government agency (*i.e.*, the "expected governmental customer"). There is nothing illegal about the demonstration law letter process outlined in 27 C.F.R. § 479.105(d).

Additionally, Wendt's argument again overlooks that "section 1001(a)(2) is broad in scope and imposes criminal liability even for materially false statements that are *not* required by law or regulation." Dkt. 260 at 11 (emphasis in original). The false statement statute "forbids falsification of any . . . statement, *whether or not legally required*, made to a federal agency." *Arcadipane*, 41 F.3d at 5 (emphasis added). Thus, even if Wendt were correct that the demonstration law letter process is somehow "illegal," his statements in those law letters are nonetheless proper grounds for false statement charges under § 1001.

*Arcadipane* is instructive. In that case, the defendant was convicted of supplying false information to the Department of Labor. *Arcadipane*, 41 F.3d at 4. The defendant argued, much like Wendt, that the DOL "had no authority to request the information that it now asserts appellant falsely supplied." *Id.* The Court of Appeals deemed this argument "irrelevant" to the validity of the § 1001 convictions. *Id.* at 5. The Court explained that § 1001 was "*in and of itself* . . . a blanket proscription against the making of false statements to federal agencies." *Id.* (emphasis in original). As such, the statute prohibits even false statements that are not legally required. *Id.* Thus, even if the demonstration law letter process were

"illegal," as Wendt contends, his false statements in those law letters are nonetheless a valid basis for his false statement convictions.

Wendt also argues that the Court's instructions—specifically Instruction Nos. 17 and 24—were incorrect. Wendt Br. at 25. In Wendt's view, these instructions erroneously stated that a demonstration law letter must request a machine gun for "future potential purchase" or "future possible purchase." *Id.* Wendt claims these limitations are inconsistent with 27 C.F.R. § 479.105(d). *Id.*

The Court has already rejected these arguments. As the Court explained, "ATF cannot lawfully approve an application for a machine gun transfer if the gun (a) will not be for the official use of a local law enforcement agency; and (b) is not of interest to the local law enforcement agency *for possible purchase.*" Dkt. 310 at 17 (emphasis added). This conclusion is consistent with § 479.105(d), which is titled "Dealer sales samples." 27 C.F.R. § 479.105(d). The regulation further explains that machine guns may be transferred to licensed dealers for demonstration to "expected governmental *customers,*" and it requires information about "the availability of the machine gun to fill *subsequent orders.*" *Id.* (emphasis added) In other words, the regulation speaks to "sales samples," "expected governmental customers," and "subsequent orders." Considering this language, the Court correctly concluded that the purpose of a demonstration law letter must be to evaluate a machine gun for future purchase.[9] *See Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020) (explaining that a

---

[9] The government thoroughly discussed this issue in its response to Defendant Robert Williams' motion to dismiss, which Wendt joined. *See* Dkt. 189; Dkt. 260 at 5 n.1.

statute must be interpreted by "reading the whole statutory text" and "considering the purpose and context of the statute"); *see also FCC v. AT&T Inc.*, 562 U.S. 397, 404 (2011) ("The construction of statutory language often turns on context."). The Court's instructions—including Instruction Nos. 17 and 24—accurately set forth the law.

## II. The charges are not unconstitutionally vague.

Wendt also argues that "the charges" against him are unconstitutionally vague. Wendt Br. at 26. Wendt claims that the only court to have dealt with "these issues" dismissed the case as unconstitutionally vague. *Id.* (citing *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006)). Wendt fails to mention, however, that *Vest* did not involve false statement charges under 18 U.S.C. § 1001 or any similar statute prohibiting false statements. *See Vest*, 448 F. Supp. 2d at 1004. Instead, the defendant in *Vest* was charged with illegally possessing a machine gun under 18 U.S.C. § 922(o) and related machine gun possession charges. *Id.*

As to the conspiracy and false statement charges against Wendt, *Vest* offers no support to Wendt's claim that those charges are unconstitutionally vague. Indeed, this Court already held as much. In considering Wendt's earlier motion to dismiss, the Court addressed Wendt's claim that "the Indictment should be dismissed because the law is ambiguous." Dkt. 260 at 13. The Court rejected that argument, holding that § 1001 is "not ambiguous." *Id.* The Court observed that § 1001 "makes it a criminal offense to lie to the federal government on a material matter," including statements about the intended use and possession of machine guns, and that "[t]here

is no ambiguity or void-for-vagueness problem in these circumstances." *Id.* (citing *United States v. Theunick*, 651 F.3d 578, 585-87 (6th Cir. 2011)).

Later, in ruling on motions in limine, the Court similarly observed that "there is nothing ambiguous or vague—and certainly not to the level of constitutional infirmity—about the statutes and regulations governing the acquisition and transfer of machine guns." Dkt. 310 at 7. Wendt offers no reason for the Court to revisit these rulings as to the conspiracy and false statement charges. *See Theunick*, 651 F.3d at 585-87 (rejecting vagueness challenge in case alleging the acquisition of machine guns for personal use); *see also United States v. Gibson*, 409 F.3d 325, 334 (6th Cir. 2005) (explaining that § 1001 "is not so indefinite as to be void for vagueness").

The relevance of *Vest* is limited to Count 20, which charged Wendt with illegally possessing an M60 machine on April 16, 2022. *Vest* involved a § 922(o) prosecution of an Illinois State Trooper who served as the lead rifle instructor and equipment officer. 448 F. Supp. 2d at 1004. The Court in *Vest* declared § 922(o)(2)(A) unconstitutionally vague as applied to that trooper "in his capacity as a police officer, equipment officer and/or lead rifle instructor for the Illinois State Police." *Id.* at 1014. In *Vest*, however, the Court emphasized "the important fact" that the government had "*no* evidence Vest ever used the machine gun" for "anything but law enforcement purposes." *Id.* at 1004. Indeed, the Court cited this fact twice, emphasizing that "there is no evidence to support the notion that Vest ever possessed or used the machine gun at issue in this case for anything other than law enforcement purposes." *Id.* at 1011-12.

This case is distinguishable from *Vest*. In *Vest*, the government *admitted* it had no evidence that the officer ever used the machine gun for anything but law enforcement purposes. *Id.* at 1004. In this case, however, that was the very essence of the § 922(o) charge. Wendt was charged with illegally possessing the M60 during a machine gun shoot that was open to the public and where private citizens could pay to shoot machine guns. Wendt publicly advertised that shoot as being "sponsored" and "hosted" by his privately-owned gun shop, BW Outfitters, and he advertised the M60—which belonged to the Adair Police Department—as among the guns available at the shoot. *See* GX 405; GX 407. The evidence showed that Wendt was not acting in his capacity as the Adair Chief of Police during this shoot. Wendt was not in uniform at the time, and he was not performing work for the City of Adair. *See* GX 601 (video of Wendt at shoot); GX 555 (City of Adair payroll records). The undercover officers who attended the shoot testified that there was no indication that the shoot was a law enforcement function. These facts distinguish this case from *Vest*. *See Theunick*, 651 F.3d at 587 (distinguishing *Vest* where, among other things, defendants possessed machine guns "in a personal capacity").

### III.   The evidence supports each of Wendt's convictions.

Wendt also argues that the evidence was insufficient to support the jury's guilty verdicts. *See* Wendt Br. at 30-38. Wendt's arguments lack merit. The evidence was sufficient as to each count of conviction, and the Court should deny Wendt's motions for a judgment of acquittal or new trial.

###### A. Sufficient evidence supports Wendt's conviction for conspiracy to defraud the ATF.

The jury convicted Wendt of conspiracy to make false statements to the ATF. *See* Dkt. 340 at 2. The jury found that Wendt conspired to do so with both Johnathan Marcum and Robert Williams. *Id.*

Regarding his conspiracy conviction, Wendt states that Johnathan Marcum testified that he didn't think he or Wendt made false statements or broke the law. Wendt Br. at 34. The jury was free, of course, to dismiss any legal conclusions Marcum offered about the legality of his conduct. The jury was also free to credit Marcum's testimony that Wendt signed law letters—written entirely by Marcum—to facilitate the transfer of machine guns to Marcum's FFL-SOT, which Marcum intended to resell and share a portion of the profits with the Adair Police Department. Marcum testified that the machine guns referenced in these letters were never demonstrated to the Adair Police Department, and that Wendt never expressed an interest in purchasing those machine guns for the Adair Police Department. The jury also saw text messages between Wendt and Marcum. *See* GX 501. In those messages, Marcum told Wendt that he had "ideas how to make some good money for both of us," (GX 501 at 5), and Marcum asked Wendt to write law letters. *Id.* Wendt agreed to do so, stating, "I'm sure it will benefit us both." *Id.* at 6. This evidence was sufficient to support a conviction on the conspiracy count.

Wendt also complains that Robert Williams did not testify. Wendt Br. at 35. There is, of course, no requirement that every co-conspirator take the stand. At trial, the government presented evidence that Williams purchased machine guns of his own

accord and then, after the fact, solicited and received false demonstration law letters from Wendt to transfer those machine guns to Williams' FFL-SOT. *See* GX 239, 247, 303, 304. Indeed, Wendt told Williams he was acquiring so many machine guns via law letters that Wendt didn't know "which is which now." GX 304. This evidence was sufficient to establish that Wendt conspired with Williams to make false statements to the ATF.

Wendt also contends that he never received or intended to receive any "improper benefit" from the demonstration letters he wrote to Marcum or Williams. Wendt Br. at 35. That's irrelevant. Wendt's conspiracy conviction did not require proof that he received any benefit at all—improper or otherwise. *See* Final Jury Instruction No. 10 (conspiracy elements).

Finally, Wendt argues that the underlying false statement charges are unconstitutionally vague. Wendt Br. at 35. As discussed above, there is nothing unconstitutionally vague about false statement charges under 18 U.S.C. § 1001. Wendt's vagueness argument provides no basis to disturb his conspiracy conviction.

### B.   Sufficient evidence supports Wendt's conviction on Count 3.

The jury convicted Wendt of Count 3, which charged him with false statements in a purchase law letter to acquire three H&K MP7A2 machine guns. *See* Dkt. 340 at 3; GX 251. In that purchase law letter, Wendt stated that these machine guns would be used to carry out the official duties of the Adair Police Department, and that they were not being acquired for the purpose of resale or transfer. *See* GX 251. The evidence at trial showed that Wendt ordered these three MP7A2 machine guns after

selling three other MP7A2 machine guns, which were also purportedly acquired for the Adair Police Department. *See* GX 222, 223, 251.

In contesting this conviction, Wendt argues that he had the authority to purchase machine guns as the Chief of Police. Wendt Br. at 35. Relatedly, Wendt contends that the Adair City Council gave him authority to purchase machine guns. *Id.* These contentions are irrelevant. Wendt's authority (or lack thereof) to acquire machine guns was not an element of Count 3, which charged him with making false statements in a specific purchase law letter. *See* Final Jury Instruction No. 16 (elements of Count 3). The jury found that Wendt made false statements in that letter. That finding was supported by sufficient evidence, including Wendt's sale of three MP7A2 machine guns at a significant profit followed by his immediate efforts to acquire three more MP7A2 machine guns. *See* GX 222, 223, 251, 302, 533, 534, 536.

Wendt also argues that he was "attempting to replace machine guns he had sold to get the versions he wanted in the first place—which were different." Wendt Br. at 35. The only evidence to support this claim was Wendt's own testimony, which the jury was free to reject. Wendt's testimony on this front was undermined by the underlying transactions, which reflected Wendt's repeated purchase of three MP7A2 machine guns after he sold three other MP7A2 machine guns at a windfall profit. *See* GX 222, 223, 251, 302, 533, 534, 536, 703.

Wendt also contends that all the machine guns he bought "for" the Adair Police Department came to City Hall, were "actually used," and were found where they were

supposed to be at the time of the search warrants. *See* Wendt Br. at 35. These arguments ignore, of course, that Wendt *sold* three MP7A2 machine guns and promptly ordered three more. Notably, Wendt advertised at least one of the MP7A2s that he sold as "NEW IN BOX," and he affirmatively told the buyer that the gun was "brand new in the box." GX 302 at 1, 4. The evidence showed that Wendt waited over a year to receive these imported machine guns, began selling them about six months later, and then ordered three more. *See* GX 222, 223, 251, 504B, 532, 533. This evidence was sufficient to support Wendt's conviction on Count 3.

Wendt also claims there was no evidence he was acquiring these machine guns for the purpose of reselling them. Wendt Br. at 35. This claim is meritless. The jury saw Wendt's own communications, in which Wendt declared that "[m]achine guns are worth bank money," and could be sold at a significant profit. GX 401 at 1. Wendt told a coconspirator that he had "figure[d] out how to get rich" by acquiring machine guns and was going to be "machine gun Joe lol." *Id.* at 2. Wendt told another individual that he (Wendt) was retiring soon and was "buying [as] many machine guns as I can" before "bailing." GX 402 at 3. Against this backdrop, the jury heard evidence that Wendt acquired MP7A2 machine guns for approximately $2,000 each, sold each of them for tens of thousands of dollars, and then bought three more for about $2,400 each. *See* GX 222, 223, 251, 534, 536, 703. From this evidence, a reasonable jury could find that Wendt intended to resell these machine guns and that he falsely stated otherwise.

18

C.   **Sufficient evidence supports Wendt's convictions on the demonstration law letter counts.**

The jury convicted Wendt of Counts 6, 8-9, 13-16, and 18, each of which charged him with making a false statement in a demonstration law letter. *See* Dkt. 340 at 3. As to each of these counts, the jury found that Wendt falsely stated that the purpose of the alleged demonstration was to determine if the machine gun at issue was suitable for future purchase by the Adair Police Department. *See* Final Jury Instruction No. 17.

In challenging these convictions, Wendt contends that he was in a "truly unique position" because he was both an FFL-SOT and a Chief of Police. Wendt Br. at 36. Wendt contends this fact was disclosed to the ATF in the law letters themselves, and he claims that he discussed it with the NFA Branch Chief. *Id.*

These arguments are misplaced. None of the false statement charges were based on Wendt's status as both an FFL-SOT and a Chief of Police. Regarding the demonstration law letters, the sole false statement at issue was Wendt's assertion that the alleged demonstration was for the purpose of determining whether the Adair Police Department was interested in purchasing the machine guns. *See* Final Jury Instruction No. 17. Wendt's status as both a police chief and an FFL-SOT is irrelevant to the sufficiency of the evidence on these counts.

Wendt also argues that "the Government confused 'potential' with 'possible.'" Wendt Br. at 36. Wendt contends that none of the demonstration letters used the phrase "potential purchase." *Id.* Wendt ignores, however, that many of the letters didn't use the term "possible," either.  The Ma Deuce letter, for example, simply stated

19

that the purpose of the demonstration was to determine if the gun was "suitable for future purchase." GX 225. Other letters used the same phrase—"suitable for future purchase"—with no mention of whether a future purchase was "potential" or even "possible." *See* GX 214 at 4; GX 223 at 11; GX 247 at 1; GX 253 at 1. Considering the varied language in the letters themselves, the Court's instruction accurately captured the essence of these counts: Were these legitimate demonstration requests to evaluate a purchase or were they simply a guise to obtain machine guns for Wendt and his co-conspirators. *See* Final Jury Instruction No. 17.

Wendt also declares it "impossible" that the demonstration law letter counts are not unconstitutionally vague as applied to him. Wendt Br. at 37. The basis for this argument isn't clear, but Wendt does contend that "he should have been given the *Harra* ambiguity instruction." *Id.*

The Court addressed this issue in ruling on the parties' motions in limine. *See* Dkt. 310 at 22-23. The Court explained that "the issue of ambiguity arises in fraud cases only when the allegedly false statements are 'facially ambiguous' or 'subject to multiple reasonable interpretations.'" *Id.* (quoting *United States v. Parker*, 364 F.3d 934, 945 (8th Cir. 2004)). In this case, Wendt's statements in the demonstration law letters are neither facially ambiguous nor subject to multiple reasonable interpretations. Wendt stated in each letter that the Adair Police Department wanted a demonstration of a specific machine gun to determine if it was suitable for future purchase (or sometimes "possible" purchase). These statements are not ambiguous— they are a plain statement of the purpose for the demonstration: to determine if the

Department wants to buy the machine gun. There is no other reasonable interpretation, so an ambiguity instruction was not warranted.

### D.     Sufficient evidence supports Wendt's conviction for illegal possession of a machine gun.

The jury convicted Wendt of Count 20. That count charged Wendt with illegally possessing the M60 machine gun, which was registered to the Adair Police Department, when he hosted a public machine gun shoot on April 16, 2020. Wendt makes several arguments in seeking to undo this conviction.

Wendt first argues that he had the authority to possess any machine gun under state or federal law. Wendt Br. at 38. As discussed earlier, however, the Court correctly instructed the jury that lawful possession under 18 U.S.C. § 922(o)(2)(A) is limited to possession within the scope of an officer's "official duties." Instruction No. 29. Thus, the crux of the issue for the jury in Count 20 was whether Wendt was acting within his official duties during the machine gun shoot, or whether he was acting in a personal capacity. The jury found the latter, and there is sufficient evidence to support that finding.

Wendt advertised the machine gun shoot on his personal Facebook page. GX 406. In doing so, Wendt posted a video of his girlfriend shooting an MP7—registered to the Adair Police Department—and invited the public to "[c]ome shoot mp7" on April 16, 2022. *Id.* Wendt sent messages regarding the shoot and which machine guns would be available. *See* GX 405. Among those machine guns were several registered to the Adair Police Department, including the MP7, an HK416, an HK G36, and the M60. GX 405; GX 701. The machine gun shoot was advertised as the "2nd Annual"

shoot hosted by BW Outfitters and Williams Contracting, the FFL-SOTs that belonged to Wendt and his coconspirator Robert Williams. *See* GX 407.

Undercover officers attended the machine gun shoot and observed multiple machine guns registered to the Adair Police Department, including the M60. These officers observed Wendt—who was not in a police uniform—dressed in camouflage and standing on top of his personally-owned Humvee with the Ma Deuce .50 caliber machine gun attached to it. *See* GX 601. The current Mayor of Adair, Joanne Byars, testified that she did not authorize Wendt to host a machine gun shoot or use any machine guns registered to the City at such an event. The government also admitted City of Adair payroll records showing that Wendt performed no work for the City of Adair on April 16, 2022. *See* GX 555. This evidence is sufficient to support Wendt's conviction on Count 20.

Wendt's arguments regarding his § 922(o) conviction also overlook a critical point. Under Eighth Circuit precedent, the law enforcement exception in § 922(o)(2)(A) is an affirmative defense. *United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996). Thus, as the Court correctly instructed the jury , it was *Wendt's* burden to establish that the government authority defense applied. *See* Final Instruction No. 29. Considering the evidence discussed above, a reasonable jury could find that Wendt did not satisfy his burden.

## CONCLUSION

For these reasons, the Court should deny Wendt's motion for judgment of acquittal and/or new trial (Dkt. 353).

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:     /s/ *Ryan W. Leemkuil*
          Mikaela J. Shotwell
          Ryan W. Leemkuil
          Shai D. Gonzales
          Assistant United States Attorneys

          210 Walnut Street, Suite 455
          Des Moines, Iowa 50309
          Tel: (515) 473-9300
          Fax: (515) 473-9292
          Email: Mikaela.Shotwell@usdoj.gov
                 Ryan.Leemkuil@usdoj.gov
                 Shai.Gonzales@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2024, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

____U.S. Mail _____ Fax _____Hand Delivery

__X__ECF/Electronic filing ____Other means

UNITED STATES ATTORNEY

By: */s/ Ryan W. Leemkuil*

23