IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 4:22-cr-199 |
| Plaintiff, | |
| vs. | **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL** |
| BRADLEY EUGENE WENDT, | |
| Defendant. | |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 2

II.   THE LAW WAS WRONG ................................................................................. 2

    A. The Government's Evolving Legal Standard ................................................... 2

    B. The "Official Use" Requirement ..................................................................... 4

    C. Inconsistency with Use of Sales Samples ....................................................... 6

    D. The Phrase "Under the Authority Of" ............................................................. 7

III.   THE CHARGES WERE UNCONSTITUTIONALLY VAGUE AND THE STATEMENTS WERE AMBIGUOUS ................................................................. 7

    A. Vagueness ......................................................................................................... 7

    B. Ambiguity ......................................................................................................... 9

IV.   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS ............... 10

    A. Conspiracy ..................................................................................................... 10

    B. False Statements ............................................................................................. 11

    C. Illegal Possession of a Machine Gun ............................................................ 12

V.   CONCLUSION ................................................................................................. 13

I.      **INTRODUCTION**

Bradley Eugene Wendt ("Wendt") submits this reply in support of his Motion for Judgment of Acquittal and/or New Trial. The Government has continued to execute an evolving legal standard in an attempt to regulate by prosecution. This has resulted in vague charges, the prosecution of ambiguous statements, and insufficient evidence to support a crime. Accordingly, the Court should issue a judgment of acquittal on all charges or, at minimum, grant a new trial.

II.     **THE LAW WAS WRONG**

A.      **The Government's Evolving Legal Standard**

The Government has attempted to subvert Congress's authority and sidestep the proper rulemaking process. As part of the Gun Control Act, Congress has enacted a statute that specifically addresses alleged false statements in machine gun transfers. *See* 18 U.S.C. § 5861. The ATF promulgated a regulation, through the normal rulemaking process, that specifically addressed what must be included in an application to transfer a machine gun. *See* 27 C.F.R. 479.105. In fact, although it does not have the effect of law, the ATF subsequently issued guidance on the transfers of a machine gun. *See* Def.'s Ex. 1029. However, the Government did not charge Wendt with violating that statute and has not alleged Wendt violated either the regulation or the guidance that was in place at the time. Rather, the Government side-stepped Congress and the regulation and, instead, used broad criminal statutes to add to the law – *to make up its own pseudo requirement*.

While the Government may get to pick what charges to brings, it cannot define what is legal and what is illegal. The power to define what constitutes a criminal offense belongs solely to the legislature. *See United States v. Boston & M. R.R.*, 380 U.S. 157, 160 (1965). In *Brogan v. United States*, 522 U.S. 398, 408 (1998), Justice Ginsburg concurred but wrote separately "to call attention to the extraordinary authority Congress, perhaps unwittingly, has conferred on

prosecutors to manufacture crimes." *Id*. at 408 (Ginsburg, J., concurring). She noted that the Solicitor General himself observed that § 1001 could be used to "escalate completely innocent conduct into a felony" and how far § 1001 had expanded since previously being limited to "cheating the Government out of property or money" (which was an expansion itself from the original limitations). *Id.* at 412 (citing *United States v. Cohn,* 270 U.S. 339, 346 (1926)). Justice Ginsberg's concern is illustrated in this case.

The Government tries to avoid using the term "requirement" and instead rest on the standard of "materiality."  Instead, the Government tries to camouflage its efforts by saying things like what people "typically" do and what "could have" impacted the ATF's decision. The effect is the same – to add to and change the definition of criminal conduct beyond which the legislature has specifically set forth. This attempt only highlights the vagueness and constitutional defects even more. The Government was essentially allowed to determine – after the fact – what it did not like and then have an ATF witness take the stand and say it "could have" impacted ATF's decision. The ATF did not have anyone who was involved in the review of the transfers testify in this case. In fact, Wendt was not allowed to challenge materiality here because he was neither permitted discovery on this issue nor permitted to introduce and cross-examine the ATF witnesses on the current guidance. Nor was the defense permitted to bring in the ATF's subsequent guidance letter issued afterwards, which showed a change in the ATF's guidance on this subject. Def.'s Ex. 1026. The only "notice" Wendt received of the ATF's idiosyncratic definitions of its new requirements was a "sample letter" at the back of a long ATF manual that was not mandatory anyway.

The Government has continued to execute an evolving legal standard in this case and, even now, after trial is over, continues to backslide on definitions and purported requirements.

### B.     The "Official Use" Requirement

The Government's case rests heavily – if not exclusively – on the vague concept of "official use." Beginning with the simple fact that the statute does not even hint at, let alone require, the "official use" of a machinegun in order to come within the "under the authority of" protection of Section 922(o)(2), Wendt set forth a comprehensive argument demonstrating that the propriety of his possession of the M60 at the machinegun shoot must be judged solely by his undeniable authority as Chief of Police to possess a machinegun registered to the police department and not by the purpose of his possession.  ECF 353 at 11-17. Rather than addressing Wendt's arguments, however, the Government's response is nothing but a thinly veiled attempt to confuse, distract from, and obfuscate this fact.

First, the Government cites *United States v. Warner*, 5 F.3d 1378 (10th Cir. 1993), for the unremarkable propositions that machineguns can only be possessed by law enforcement representatives in an "official capacity" and that creating an exception for "private citizens" would "essentially eliminate" the prohibition on machinegun possession. ECF 356 at 4-5. *Warner*, however, has no bearing on the matter at hand, because the context of the case is so far afield from anything at issue here as to render it utterly meaningless. There is no discussion, analysis, or even mention of anyone's "use" of a machinegun, whether official or otherwise, in *Warner*. Warner was a private individual, not a Chief of Police, in possession of a homemade, unregistered machinegun, not a machinegun duly registered to a police department. He challenged his conviction under Section 922(o) by ridiculously claiming that a Utah statute permitting a firearm in a motor vehicle somehow constituted "authority" from the state for him to possess an illegal machinegun since the gun happened to be in his car when it was found by the police. *Warner*, 5 F.3d at 1380. So, of course, is the Government's reliance on *Warner.*

4

The Government next responds to Wendt's detailed and thorough legal analysis of the nonexistent "official use" requirement in Section 922(o)(2) by citing the unpublished decision in *United States v. Neuner*, 535 F. Appx. 373 (5th Cir. 2013). *Neuner*, however, is even more inapplicable to Wendt's argument than *Warner*. Neuner was a gang member who was convicted of manufacturing illegal machineguns. While there was overwhelming evidence that Neuner was eager to provide illegal machineguns to a drug dealer who would use them against the police, Neuner comically raised an entrapment defense based on his testimony that he made the machineguns at the behest of a higher-ranking gang member with gang "authority" over him who was working as an police informant and an undercover federal agent posing as the drug dealer. *Id.* at 375. Thus, in Neuner's world, he somehow had double, secret governmental "authority" within the meaning of § 922(o)(2) to make illegal machineguns to kill police officers.

Again, fortunately, the court did not buy Neuner's argument:

> Neuner also argues that he should be given, as the target of an undercover government operation, the exemption afforded to those acting under the authority of the government to legally possess a machinegun. That argument is rejected as utterly meritless. Clear statutory language and Congressional intent limited lawful transfer and possession of machineguns to authorized governmental personnel for use in their official capacities. [citation omitted].  The statute and legislative history do not except unwary targets of undercover operations, like Neuner, from criminal liability for possessing machineguns. There is no official capacity use of such weapons when the declared purpose, as explained to Neuner, is to harm law enforcement personnel. To find otherwise would be absurd.

*Id.* at 371 n.1 (emphasis added). Thus, even though the Government's own "quote" from *Neuner* is noticeably lacking any mention of "official use" under Section 922(o)(2), a fuller and fairer recitation of *Neuner* easily reveals the weakness of the Government's arguments.

The Government's final response to Wendt's detailed arguments regarding the nonexistent Section 922(o) requirement of "official use" is an incomplete quote based on an unchallenged jury instruction in *United States v. Spicer*, No. 3:14-cr-52 (S.D. Ohio); 656 Fed.

Appx. 154, 160 n.1 (6th Cir. 2016). Spicer was a former Sheriff's deputy and was indicted under Section 922(o) for the illegal possession of a machinegun after he acquired a machinegun registered to the Sheriff's office without the knowledge of the Sheriff by forging the Sheriff's signature on the purchase documents and keeping the gun at home. *Id.* at 157.

In sum, there was no legitimate contention that Spicer, Warner, and Neuner were not authorized to possess machineguns on behalf of a law enforcement agency. Even so, "capacity" is not "use," and there is no "official use" requirement in Section 922(o)(2) to come within the statutory protection regarding the possession of a machinegun registered to a police department by a Chief of Police "under the authority" of the police department. That is all that is required, nothing more, and the Court erred in concluding otherwise.

### C.     Inconsistency with Use of Sales Samples

In addition, the Government's entire concept of some ongoing use restriction applied to machine guns purchased by a governmental entity is not consistent with how sales samples are treated. The ATF has been clear in that post-1986 machine guns purchased as so-called "sales samples" and, according to the Government meant to be limited to potential future sales to a law enforcement agency. However, the ATF has been clear that once a dealer purchases such a machine gun it can do whatever it wants with it so long as it does not amount to a transfer. In fact, there is a nationwide industry built on this very guidance that allows these machine guns to be rented out to anyone who is not otherwise in violation of the law. *See* Def.'s Proposed Ex. 1022 (produced in discovery by the Government). These individuals and this use do not have to be connected in any way, shape, or form with a future government purchase.

    **D.**    **The Phrase "Under the Authority Of"**

The Government finally recognizes "under the authority of" language in Section 922(o) and still gets its wrong. The Government claims that language gave ATF authority to authorize transfers of machine guns. However, that is not what that statute says – the phrase "under the authority of" only permits a governmental entity to possession or authorize the possession of machine guns. 18 U.S.C. § 922(o). It does not permit a governmental entity to authorize transfers. As Wendt previously explained, this is consistent with what the State of Iowa did in implementing its possession statute – and the State specifically did not quibble with on-duty/off-duty or other such technicalities. Iowa Code § 724.1.

**III.**    **THE CHARGES WERE UNCONSTITUTIONALLY VAGUE AND THE STATEMENTS WERE AMBIGUOUS**

    **A.**    **Vagueness**

The Government all but concedes that the Illegal Possession of a Machine Gun charge must be considered vague in light of the evidence. The Government's only response is that the Court noted that there was no allegation of non-enforcement use. However, the Vest court explicitly rejected the government's argument that the law enforcement exception was only meant to apply to law enforcement officers *in the performance of their official duties*. *United States v. Vest*, 448 F. Supp. 2d 1002, 1012 (S.D. Ill. 2006). Further, as explained in Wendt's opening brief, the truly unique circumstances in this case render it a much stronger argument for vagueness than *Vest*.

The vagueness problem here, though, is not limited to the Illegal Possession of a Machine Gun. Under the Government's theory, all the charges rely on this vague concept of "official use" — and thus all the charges are vague: the Conspiracy to Make False Statements charge required the jury to find Wendt knowingly intended to make a false statement in the "demonstration law

letters." The evidence was limited to the demonstration law letters Wendt wrote to Marcum and Williams. As such, they are derivative of the False Statements charges. Then, the False Statements charges required jury to find Wendt made the following statements, that they were factually false, that he knew they were false at the time he made them, and they were material: (1) "the machine guns would be used to carry out the official duties and responsibilities of the Adair Police Department" and "were not being acquired for the purpose of resale or transfer"; and (2) "the machine gun(s) were requested for demonstration for future potential purchase by the Adair Police Department." The former is really one requirement because if they were used to carry out the official duties and responsibilities, then they would not purchase for the purpose of resale. Lastly, the Illegal Possession of a Machine Gun charge required the jury that Wendt had to prove his possession was "within the scope of his . . . official duties."

The Government has taken the position that the jury can rely on the "essence" of the terms and has proceed to conflate them. The Government equates official duties and responsibilities with official duties, official use, official capacity, "when acting officially," and even with "duties or lawful activities [that] require or permit such possession." "Official capacity" generally refers to actions taken by a public official under the color of law, often in the context of allegations of misconduct by public officials. *See Marmorato v. Holder*, 376 F. App'x 380, 385 (5th Cir. 2010); *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009). To qualify as an "official duty," a public official must make a decision or take an action on a question, matter, cause, suit, proceeding, or controversy that involves the formal exercise of governmental power. *See United States v. Fernandez*, No. 19-15044, 2022 WL 3581793, at *3 (11th Cir. Aug. 22, 2022) ("[I]nterchangeable use of 'official act' and 'official duty' is wrong. 'To the extent possible, the rules of statutory construction require courts to give meaning to

every word and clause in a statute.'"); *McDonnell v. United States*, 579 U.S. 550 (2016). Finally, while the courts have not adopted a standard definition for "official use," at least one has found that it is a matter of "administrative discretion." *Felton v. E.E.O.C*, 820 F.2d 391, 394 (Fed. Cir. 1987). Finally, the term "duties or *lawful activities* [that] require *or permit such possession*," as used in the Iowa law, clearly sets forth an entire new echelon of activity – specifically, police officers may possess machine guns, period.

### B.     Ambiguity

Similarly, just as the charges were vague, the alleged false statements were ambiguous. The concepts of vagueness and ambiguity are related in that vagueness relates to criminal charges and ambiguity relates to alleged false statements. If the statements are ambiguous, then this would result in an unconstitutionally vague criminal charge. A criminal statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also United States v. Johnson*, 937 F.2d 392, 399 (8th Cir. 1991) ("When the government has created an ambiguity upon which the defendant has reasonably relied in making his statement, the government will ordinarily be unable to negative the defendant's interpretation."). Here, the Government created an ambiguity by way of its sample letter distributed to the industry and used to inform Wendt's law letters. Indeed, the Government's entire case rests on the notion that Wendt's alleged false statements were ATF requirements.

Likewise, the Government conflates the terms "possible," "potential," and "suitable" in the False Statement charges. The letters related to counts 6, 9, and 10 all use the "possible purchase" or "possible future purchase" language. *See* Gov't Exs. 211, 235, 249. The letters

related to courts 8, 11, 12, 13, and 14 all use the "determine if it is suitable for future purchase" language. *See* Gov't Exs. 225, 223, 214, 253, 247.

"Possible" refers to merely something that is able to be done or within the capacity of someone or something (i.e., merely the author of the demonstration letter having the authority to purchase the machine gun). *See Possible*, Oxford English Dictionary ("that is capable of being; that may or can exist, be done, or happen"). "Potential" identifies something that is likely to happen (i.e., a future purchase). *See Potential*, Oxford English Dictionary ("having or showing the capacity to develop into something in the future"). "Suitable" means appropriate or fitting for a particular purpose or situation. *See Suitable*, Oxford English Dictionary ("Appropriate or fit for, or suited to, a purpose, occasion, person, etc."). Because they all carry distinct meanings, that conflation renders the charges vague and the statements ambiguous.

## IV.     THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS

The truly unique facts in this case bare out these constitutional problems. The jury clearly struggled in this case and the only explanation is that struggle was based on this vague concept of "official use" and what Wendt was allowed to get machine guns for and what he could do with them after he obtained them.

### A.     Conspiracy

The Government does not dispute that Jonathan Marcum testified that neither he nor Wendt thought they were making a false statement or intended to do so. Likewise, the Government does not dispute that Wendt never received or intended to receive any improper benefit. Rather, in addition to some off-hand, out-of-context text messages, the Government rests solely on the following: (1) Marcum's purported intention to sell the machine guns and share a portion of the profits with the Adair Police Department; (2) Marcum never demonstrated the machine guns; and (3) Wendt never expressed an interest in purchasing those machine guns for

the Adair Police Department. As Marcum and Wendt's testimony made clear, the reason they were never demonstrated to Wendt is because the ATF began investigating Marcum. In fact, as established by the testimony, they had plans for Marcum to come out and demonstration them. Further, not only was Wendt interested in these machine guns but, because the ATF's investigation prevented the demonstration, Wendt went out and purchased them for his own gun store for demonstration purposes. Wendt then did purchase some of these machine guns for the police department.

Regarding Williams (who did not testify), the Government rests solely on the following: (1) Williams purchased the machine guns and then solicited and received the law letters; and (2) Wendt expressed confusion at one point as to the machine guns at issue. The latter means nothing and was out of context. The former was how it was supposed to work. As Wendt explained in his testimony, he and Williams talked all the time at Wendt's gun store and discussed the particular machine guns. Williams would then ask him for the law letter if he was able to buy one. As others explained at trial: you send your money to the seller and then the transaction is not completed until the ATF approves it (whereupon if it is not approved, the sale does not get completed and you get your money back because you never received the item).

### B.     False Statements

The Government contends the evidence was sufficient on the sole count of conviction regarding so-called "Purchase Law Letters," because Wendt sought to purchase three MP7s to replace MP7s he just sold and from which he made a substantial profit. However, as Wendt explained, the new MP7s he was purchasing were different versions and the versions he initially wanted but that were not yet available. Further, Wendt had these for a long time before selling them. There was no evidence about how much they were worth on the secondary market when

he purchased. And there is nothing illegal or improper about him selling them even one was
purportedly still new.

Regarding the "Demonstration Law Letter" false statement counts, the Government
concedes that it did not even prove Wendt made the statement he was charged with making.
Rather, the Government relies on what it describes as the "essence" of the counts: "Were these
legitimate demonstration requests to evaluate a purchase or were they simply a guise to obtain
machine guns for Wendt and his co-conspirators." ECF 356 at 20. The Government's proposition
not only insufficient but wrong. The Government must prove the statement as alleged in the
Indictment and the jury instructions. When the Government, like here, endeavors to allege the
exact false statement that a defendant made, it must prove the falsity as specifically alleged.
*Stevens v. United States*, 206 F.2d 64, 66 (6th Cir. 1953) (citing *Braatelien v. United States*, 147
F.2d 888 (8th Cir. 1945); *Bryan v. United States*, 175 F.2d 223 (5th Cir. 1949), *aff'd*, 338 U.S.
552 (1950); *Land v. United States*, 177 F.2d 346 (4th Cir. 1949); *United States v. McKay*, 45 F.
Supp. 1001 (E.D. Mich. 1942). Put simply, the Government failed to prove that Wendt made the
false statement alleged.

### C.    Illegal Possession of a Machine Gun

The Government states that the "crux of the issue for the jury in [this count] was whether
Wendt was acting within his official duties during the machine gun shoot, or whether he was
acting in a personal capacity." ECF 356 at 21. For the reasons previously set forth, that is not
accurate. In any event, the Government relies on Wendt not being in uniform, not seeking
reimbursement from the city for his time, and the out-of-state officers investigating it not
realizing other officers were there – however, there were other police officers there, who also
viewed it as training and were not in uniform or charging their employers for their time. In

addition, as the extensive testimony at trial demonstrated, it is impossible to draw a clear line on what is official vs. unofficial in these circumstances. Moreover, as the Mayor who hired Wendt and authorized the machine gun purchase with Wendt's personal funds testified to, as Police Chief Wendt was always "on-duty."

## V.      CONCLUSION

In conclusion, the Court should grant an order of acquittal or, at a minimum, a new trial on all counts of conviction.

Dated: April 19, 2024                                   **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
Email: *rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR DEFENDANT WENDT***

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April 2024, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Paulette Ohnemus*

13