IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:22-cr-199 |
| v. | ) | |
| BRADLEY EUGENE WENDT, | ) | |
| Defendant. | ) | |

COMES NOW the United States and responds to Defendants Rule 43 motion. (ECF. 438).

1. As a threshold matter, the Government notes Defendant Wendt has no standing to obtain the return of the firearms owned by the City of Adair. (ECF. 438, pp. 3, 4, 7, 35). Plaintiff concedes some of the machine guns at issue belong to the City of Adair. (ECF. 438, pp.6-7). "Generally, a motion for return of property is properly denied (1) if the defendant is not entitled to lawful possession of the seized property, (2) if the property is contraband or subject to forfeiture, or (3) if the government has a continuing evidentiary need for the property." *United States v. Willson*, 8 F. App'x 593, 594 (8th Cir. 2001).[1] In forfeiture parlance, "a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to

[1]Though the Government asserts the Civil Asset Forfeiture Reform Act does not apply here, a recent district court case under CAFRA provides guidance on the issue of standing to contest an administrative forfeiture: "Because a movant seeking to set aside a declaration of forfeiture under Section 983(e) may only do so "with respect to [their] interest in the property," they must necessarily have an interest in the property. *United States v. Burkhow,* No. 19-CR-59-CJW-MAR, 2025 WL 2409200, at *10 (N.D. Iowa Aug. 20, 2025), aff'd, No. 25-3002, 2026 WL 1395803 (8th Cir. May 19, 2026).

create a case or controversy." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). To have standing, "[t]he claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property." *Id. See, United States v. U.S. Currency, in the amount of $124,279.00,* No. 25-2001, 2026 WL 1478151, at *2 (8th Cir. May 27, 2026). Defendant has no standing for the return of firearms that belonged to the City. To the extent firearm # 8 was criminally forfeited, Defendant has no standing to obtain its return.

2. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was the seizing agency in this case, and it reports the current status of the items that Defendant seeks to have returned to him (ECF. 438, pp. 2 – 36):

A. Items 1, 2, 5 and 8 are firearms that were criminally forfeited.

B. Items 3, 4, 6, 7, 10-23 are firearms that were administratively forfeited, and Defendant has no claim for their return, as discussed herein.

C. Item 9 is a firearm that ATF reports has already been returned. ATF is in possession of a signed receipt from an FFL.

D. Items 24-25 are boxes of ammunition that can be returned to a lawful designee.

E. Item 27 consists of tax documents that can be returned.

F. Item 28 are the law letters Defendant used to commit the crime. First, insofar as they were written in his capacity as the Adair Chief of Police, they belong to the Adair Police Department, and Defendant has no right to their return. Second, these letters arguably constitute contraband or derivative contraband by virtue of their use to accomplish crimes for which Defendant has been convicted.

G. Item 29 consists of financial documents that can be returned.

H. Item 30 consists of firearm parts, apparently three firearm barrels seized from BW Outfitters. As long as they are not actually firearms and are only parts, there are no prohibitions on Defendant's possession of them and these can be returned.

I. Item 31 apparently consists of paperwork related to a licensed federal firearms licensee. ATF is investigating the status of the FFL entity and whether these can be returned to it.

J. Items 32-33 are a computer and hard drive and can be returned.

K. Items 35-36 are documents belonging to the Adair Police Department and do not belong to the Defendant and he has no claim for their return. If Defendant can prove this is his personal paperwork, it can be returned.

3. As to the firearms that were administratively forfeited, Defendant misunderstands the applicable statutory scheme.

4. Defendant seeks the return of numerous firearms, but three (3) belong to the Adair Police Department (# 3, 4, 7) and one was criminally forfeited (# 8). The other firearms (# 9 – 23) were listed on an October 4, 2022 notice of forfeiture that was sent to Defendant Wendt. (Attached hereto as Exhibit A). He does not claim the notice was sent to the wrong address. Indeed, he filed a response. The document partially listed the incorrect forfeiture authority.

On November 23, 2022, ATF sent a corrected notice of forfeiture to the same address. (Attached hereto as Exhibit B). The firearms at issue were still included. The new notice listed part of the forfeiture authority as 26 U.S.C. § 5872, which was not in the original notice. The new notice provided notice of the correct- and different – time deadline to contest the forfeiture and a bond requirement. Defendant Wendt ignored this notice. With a college degree in criminal justice, as the owner of two

federal firearms licenses (PSR, ECF. 379, p. 6, 23) and as a long-time law enforcement officer, Defendant cannot seriously claim to be confused about the importance of reading legal documents sent to him by government entities.

ATF issued numerous Declarations of Administrative Forfeiture, but the pertinent one is attached hereto as Exhibit C. It was issued over three (3) years ago.

Defendant argues the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983 applies to this forfeiture. He is wrong.

CAFRA's procedural rules in § 983 apply to proceedings "under a civil forfeiture statute." That term specifically excludes "the Internal Revenue Code of 1986" (18 U.S.C. § 983(i)(2)(B)). The National Firearms Act (NFA), under which the firearms were forfeited, is Chapter 53 of the Internal Revenue Code. NFA firearms are forfeited under 26 U.S.C. § 5872, which applies Internal Revenue Code forfeiture procedures. Those procedures in turn rely on the customs laws.

Under the customs laws, the agency must publish notice for three weeks and send written notice to each known interested party. The statute sets no deadline for sending that notice (19 U.S.C. § 1607). A claimant must file a claim and cost bond within 20 days of the first publication (19 U.S.C. § 1608).[2]

Two U.S. Courts of Appeals have held that § 983 doesn't apply to NFA forfeitures under § 5872. *United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial*

[2] DOJ's Part 8 forfeiture regulations exclude the § 983(i)(2) statutes (28 C.F.R. § 8.1). The 2012 rulemaking that consolidated those regulations explained that NFA forfeitures are governed by customs laws (77 Fed. Reg., Sept. 12, 2012).

*593006*, 447 F.3d 686, 688, fn. 3 (9th Cir. 2006); *United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 418 (6th Cir. 2006).

The length of time it took ATF to send the corrected notice was not illegal or unreasonable. *United States v. Eighteen Thousand Five Hundred & Five Dollars & Ten Cents,* 739 F.2d 354 (8th Cir. 1984). In *Eighteen Thousand Five Hundred & Five Dollars & Ten Cents*, the Eighth Circuit applied the balancing test of *Barker v. Wingo*, 407 U.S. 514 (1972) to assess the timeliness of a civil forfeiture. The *Barker* test includes a weighing of four factors: length of delay, the reason for the delay, the claimant's assertion of his rights, and prejudice to the defendant. 407 U.S. at 530. Applying this standard to the notice of administrative forfeiture here, about 12 weeks passed between the seizure and the NFA notice, and the claimant already had notice of the GCA proceeding. The corrected notice was sent to Defendant. The timing here does not come close to a due process violation.

If the NFA administrative forfeiture notice was defective, arguably the Government still has a right to attempt a civil forfeiture of the firearms.

Defendant makes much ado about the fact there were parallel criminal and administrative forfeitures of some of the property. There is nothing improper about the Government doing so. This can be a protective measure. If an administrative forfeiture goes awry for some reason, the Government can rely on the criminal forfeiture to resolve the matter, and vice versa. For example, a defendant may be found not guilty by proof beyond a reasonable doubt – or die or flee - and a criminal forfeit decision never reached, but the Government can still pursue its public interest

in forfeiting crime proceeds and facilitating property by administrative or civil forfeiture. It is a common practice in this District and elsewhere.

WHEREFORE, the Government objects to the return to Defendant of the forfeited property, contraband or derivative contraband, and property that does not belong to Defendant.

Respectfully Submitted,

David C. Waterman
United States Attorney

By: */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
Neal Smith Federal Building
210 Walnut Street, #455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

________U.S. Mail _____Fax _____Hand Delivery __X__ECF/Electronic filing
Other means

UNITED STATES ATTORNEY
By: */s/ Alisha Rankin*
Paralegal Specialist